DOUGLAS J. MELTON, Bar No. 161353
SHANE M. CAHILL, Bar No. 227972
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:     (415) 397-2222
Facsimile:      (415) 397-6392
Email:          dmelton@longlevit.com
                scahill@longlevit.com

Attorneys for Plaintiff
GOLD CLUB SF, LLC

BRADLEY J. SHAFER (MI P36604)*
ZACHARY M. YOUNGSMA (MI P84148)*
SHAFER & ASSOCIATES, P.C.
3800 Capital City Blvd., Suite 2
Lansing, MI 48906
Telephone:     (517) 886-6560
Facsimile:      (517) 886-6565
Email:          Brad@BradShaferLaw.com
                Zack@BradShaferLaw.com

*Application for Admission Pro Hac Vice Forthcoming

Attorneys for Plaintiff
GOLD CLUB SF, LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD CLUB SF, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABEL CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; THE UNITED STATES OF AMERICA; THE SMALL BUSINESS ADMINISTRATION OFFICE OF HEARINGS AND APPEALS; and KIMBERLY MCLEOD, in her official capacities as the Assistant Administrator and Chief Hearing Officer of the Office of Hearings and Appeals. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION** <br><br> **[REQUEST FOR JURY TRIAL]** |

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Plaintiff Gold Club SF, LLC. ("Plaintiff") hereby files this Complaint and Petition for Review of the Orders of the Office of Hearings and Appeals ("OHA") denying Plaintiff's appeal of a Paycheck Protection Program ("PPP") loan review decision issued by the U.S. Small Business Administration ("SBA"), and state as follows:

## **OVERVIEW OF DISPUTE**

1.      In this Action, Plaintiff seeks, among other things, judicial review of SBA's decision to deny loan forgiveness of Plaintiff's second draw PPP loan ("2PPP Loan"), and both declaratory and injunctive relief to bring to an end the Defendants' continued and persistent mistreatment—as delineated in *exhaustive* detail below and documented through voluminous attached exhibits—of Plaintiff and others that the SBA *perceives* to be "affiliated" with it; most but not all of which engage in, present, and/or permit, one or more forms of lawful entertainment protected under the First Amendment to the United States Constitution (including such noncontroversial forms of entertainment as karaoke bars).

2.      Congress initially created the PPP as part of the Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. 116-136 (2020) (the "CARES Act"). Through the CARES Act and the subsequent Consolidated Appropriations Act, 2021, Pub. L. 116-260, § 311 (2020), which Congress referred to as the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Appropriations Act" or "EAA"), the PPP ultimately set up two series of loan programs (now referred to as "first draw" and "second draw" loans). These programs authorized certain banks, specifically approved by the United States Small Business Administration ("SBA"), to issue loans under the PPP that would be guaranteed by the SBA. The first and second draw loan programs were then further amended via the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. 117-2, § 5001 (Mar. 11, 2021).

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

3.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(i)(I) – (XI) and 15 U.S.C. § 636(a)(37)(J)(iii)(I) – (VIII) of the PPP, loans were to be used for, and forgiveness of such loans was to be granted by the Lending Bank and/or SBA if the loaned funds were specifically expended upon, among other things, payroll costs, certain group health care benefits, rent, mortgage interest, utility bills, interest on other pre-Pandemic debt, personal protective equipment, and covered supplier costs (collectively, "Permitted Uses"). If the loan is forgiven, the SBA then makes the lending bank whole.

4.     Plaintiff had both its first and second draw PPP loans *approved* by its lending bank and/or the SBA; received the full funds under those Loans; and used the amount requested via its loan forgiveness applications for the purposes specified in the PPP and in its loan documents.

5.     SBA has denied forgiveness of both Plaintiff's first and second draw PPP loans. Plaintiff timely appealed the denial of forgiveness for its first draw PPP loan and, thereafter, SBA withdrew that decision and has, as of the date of this filing, not issued a new decision on that loan. Plaintiff timely appealed the denial of forgiveness for its 2PPP Loan, twice. The last appeal resulted in the OHA affirming SBA's decision and Appellant now files this Complaint seeking, among other things, judicial review of that decision.

6.     Herein, Plaintiff seeks to provide the Court with examples of the improper actions SBA has taken against Plaintiff and others it claims are affiliated with Plaintiff.

7.     The OHA proceedings, which Plaintiff was compelled to undergo, have been bereft of due process. For example, with the exception of motions to extend deadlines, all contested motions filed by Plaintiff in the OHA have been denied, and all contested motions filed by the SBA have been granted. But the OHA normally does not even wait until receipt of the SBA's response to an OHA appellant's motion before ruling; rather, such motions are sometimes denied *within hours* of filing.  And, contested motions filed by the SBA in the OHA have been granted *within one*

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

3                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

*minute of the filing of the motion by the SBA*.

8.    If PPP loan forgiveness is denied, a loan recipient, such as Plaintiff, is then required to pay the loan proceeds back to its lending bank. However, and simply put, having used the loan proceeds in strict accordance with the PPP (only for the Permitted Uses for the amounts requested to be forgiven), Plaintiff is no longer in possession of the loan proceeds and have no lawful way to recover them in order to be able to pay them back—as demanded by the SBA—to its lending bank. The loan proceeds are, quite literally, in the hands of the Plaintiff's employees, utility providers, landlords, and the like.

9.    In addition, as further evidence of the SBA's mistreatment of Plaintiff and those that the Defendants believe to be "affiliated" with it, the SBA initiated, shortly before the filing of this suit, an investigation of a number of these entities, with them in regard to funds that such businesses, including Plaintiff, received, *as part of a federal court settlement following the initiation of litigation against some of these same Defendants for similar types of misconduct*, under another Pandemic-related funding program administered by the SBA (the Restaurant Revitalization Fund; "RRF"). These latest actions will be the subject of a separate proceeding in *that* federal court.

10.    The SBA's actions in denying Plaintiff's loan forgiveness requests are purportedly based upon, directly or indirectly, what Plaintiff will refer to herein as the "Prurience Regulation" found at 13 C.F.R. § 120.110(p).

11.    The dispute concerning the Prurience Regulation involves the question of whether Plaintiff present forms of entertainment, or sell products, of a "prurient sexual nature." The SBA contends that businesses that do are not eligible for PPP loans under 13 C.F.R. § 121.110(p).

12.    As a result of the above and as further described in detail below, Plaintiff challenges here as being unconstitutional under the First and Fifth Amendments to the United States Constitution: A) both facially and as applied by the Defendants to Plaintiff, the Prurience Regulation

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

(already enjoined by, among other courts, the Southern District of Texas, the Eastern District of Wisconsin, and the Eastern District of Michigan); and B) both facially and as applied by the Defendants to Plaintiff, the rules of the OHA, as discussed and defined, *infra*, *that apply specifically and exclusively to appeals emanating from PPP matters*,[1] which lack due process by, among other things, denying any and all forms of discovery whatsoever (13 C.F.R. § 134.1209(b)); requiring the appellant to file its appeal brief *before* it has even had an opportunity to *view* the "administrative record" that the SBA purports to have relied on in issuing the decision that is the subject of the appeal so that the appellant may respond accordingly (but which it is not even entitled to do as a matter of right) (13 C.F.R. §§ 134.1202, 134.1207); precluding any form of hearing or oral argument whatsoever to occur on the appeal (13 C.F.R. § 134.1209(b)); precluding the award of attorneys' fees and costs under the Equal Access to Justice Act (5 U.S.C. § 504 & 28 U.S.C. § 2412, the "EAJA") to appellants if otherwise eligible under that Act (13 C.F.R. § 134.1213); and permitting the SBA to "submit" administrative records to the OHA for *its* consideration of the appeal that have been so heavily *redacted* that the appellant cannot in the OHA proceeding fully understand and respond (even if permitted, in the complete and absolute discretion of the OHA) to the supposed reasoning of the SBA in denying loan or forgiveness eligibility—and thereby significantly limiting Plaintiff's ability to adjudicate these claims in a court of law. Plaintiff also challenges the legality of the SBA having enacted the various challenged regulations.

13.  Plaintiff is one of the Plaintiffs in an action pending in the Northern District of Texas captioned as <u>Dallas Food & Beverage, LLC v. Small Business Administration</u>, No.: 3:24-cv-01151, wherein those plaintiffs challenge, similar to Plaintiff here, SBA's actions and a number of SBA's

---

[1] Plaintiff does *not* challenge the "normal" appellate rules of the OHA that apply to all other appeals except for PPP matters. Those, in contrast to the rules challenged here that pertain *only* to PPP decisions, actually provide some semblance of due process.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

regulations.

## **PARTIES**

14.    Plaintiff Gold Club, LLC is a California Limited Liability Company with its principal business office located in San Fransisco, California. Plaintiff operates as a gentlemen's club located at 650 Howard St., San Francisco, California 94105.

15.    Defendant United States Small Business Administration ("SBA") is a federal agency created pursuant to 15 U.S.C. § 633, *et seq*. Under the CARES Act, SBA administers the PPP.

16.    Defendant Isabel Casillas Guzman ("Guzman," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only as the Administrator of the SBA.

17.    Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

18.    Defendant Office of Hearings and Appeals ("OHA") is an independent office of the United States Small Business Administration in 1983 and which has an office in Washington, D.C., but maintains an email address for any internet user to email from anywhere in the world where there is access to the world wide web.

19.    Defendant Kimberly McLeod ("McLeod) is the Assistant Administrator for the OHA and is the Chief Hearing Officer for the OHA.

20.    Defendant United States of America is a sovereign nation dedicated to the protection of life, liberty, and property as set forth in the Bill of Rights and other provisions of and amendments to the Constitution of the United States.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

21.     The SBA, the Administrator, the OHA, McLeod, and the United States of America are referred to collectively hereinafter as the "Defendants."

**VENUE AND JURISDICTION**

22.     This action arises out of the arbitrary, capricious, and clear error of facts and law in the SBA's Decision, and the OHA's May 15, 2024, order affirming that decision.

23.     Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented herein by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), and (4); 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1361; and 28 U.S.C. § 2201.

24.     Jurisdiction is conferred on this Court for resolution of all relevant questions of law, the interpretation of constitutional and statutory provisions, the determination of the meaning or applicability of the terms of the SBA's actions as discussed herein, and over Plaintiff's facial and as applied challenges to the SBA's regulations, by virtue of 5 U.S.C. §§ 702 and 706.

25.     Jurisdiction is conferred on this Court for Plaintiff's claim(s) for attorneys' fees and costs by virtue of 5 U.S.C. § 504 and 28 U.S.C. § 2412.

26.     Jurisdiction is also proper under 15 U.S.C. § 634(b)(1).

27.     No other action, civil or criminal, is pending in any state court involving the Plaintiff regarding the activities and events discussed herein.

28.     This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fifth Amendments to the United States Constitution.

29.     Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391 as the PPP Loan's proceeds were remitted to locations within this District and Plaintiff maintains its principal place of business within this District.

**FACTS RELATED TO PLAINTIFF**

30.     Plaintiff Gold Club is a licensed food and alcohol serving restaurant/nightclub open

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

7                                                           Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

to the consenting adult public, which presents on its premises a variety of non-obscene, constitutionally protected female performance dance entertainment.

31.     Plaintiff has never been charged with, let alone convicted of, any crimes of obscenity. Similarly, none of the entertainers who have performed on Plaintiff's premises have ever been charged with, let alone convicted of, any crimes of obscenity related to their performances at the facility owned and operated by Plaintiff.

32.     Plaintiff does not present any live performances, depictions or displays, or sell any products or services, of a prurient sexual nature or that otherwise appeal to a shameful, morbid, prurient, or unhealthy interest in sex.

33.     Plaintiff operates its restaurant/nightclub pursuant to, and in accordance with, among others, the following licenses/permits, which it maintains:

    a.     Alcoholic Beverage License issued by the State of California's Department of Alcoholic Beverage Control agency; and

    b.     A Class/Permit Number H26/32781 License Certificate issued by the City of San Francisco that describes Gold Club as an H26 Restaurant Over 2,000 SQ issued to Alternative Entertainment, Inc., a wholly owned subsidiary of Plaintiff.

34.     As a consequence of the Pandemic, Plaintiff was subject to various governmental closures orders imposed to mitigate the effects and spread of the COVID-19 virus. As a direct and proximate result thereof, the lingering effects of the Pandemic, and the supply chain disruptions related thereto, Plaintiff suffered, as did a large percentage of businesses throughout the United States, devastating and catastrophic financial losses.

35.     In order to mitigate the financial impact caused to Plaintiff by the Pandemic and the consequences thereof, including but not limited to its ability to retain and pay its employees, Plaintiff submitted an application to its lending bank for a first draw PPP loan on or about April 14, 2020, and

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

8                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

for a second draw PPP loan in March of 2021. At all times relevant hereto, Plaintiff's lending bank operated as a delegate of the SBA in processing and approving/disapproving of the first and second draw PPP loans sought by Plaintiff.

36.    Because Plaintiff operates a licensed food and alcohol-serving nightclub under the licenses/permits identified above, it is, for purposes of the PPP and SBA's rules regarding affiliation, a NAICS code 72 business. Since at least 2016, Plaintiff has claimed NAICS code 722410 as its "business code number" on its federal income tax returns, and claimed NAICS code 722410 on its second draw PPP loan application, its second draw PPP loan forgiveness application, and its SBA Form 3511.

37.    At all times related to the relevant period for its first draw PPP loan, Plaintiff had no more than 176 persons employed at its physical location.

38.    At all times related to the relevant period for its second draw PPP loan, Plaintiff had no more than 155 persons employed at its physical location.

39.    Under the PPP, Plaintiff was eligible to obtain its first draw Loan and it received its first draw Loan.

40.    Under the PPP, Plaintiff was eligible to obtain its second draw Loan and it received its second draw Loan.

41.    Plaintiff used the amounts of loan forgiveness it applied for both its first and second draw PPP loans exclusively for Permitted Uses in full accordance with the PPP and its promissory notes/loan agreements. Consequently, it no longer possesses any of the loan proceeds from its first and second draw loan.

42.    On or about November 12, 2021, Plaintiff applied for forgiveness of its first draw PPP loan. At all times during that forgiveness application process, Plaintiff's lending bank operated as a delegate of the SBA in processing and approving/disapproving of forgiveness of Plaintiff's first draw

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

PPP loan, and issued a forgiveness decision to SBA approving Plaintiff's loan forgiveness application in the amount of $262,664.96.

43.     On or about April 22, 2022, Plaintiff applied for forgiveness of its 2PPP Loan. At all times during that forgiveness application process, Plaintiff's lending bank operated as a delegate of the SBA in processing and approving/disapproving of forgiveness of Plaintiff's 2PPP Loan, and issued a forgiveness decision to SBA approving Plaintiff's loan forgiveness application in the amount of $0.00. Plaintiff, however, had applied for and qualified for forgiveness in the amount of $1,993,233.75.

44.     While Plaintiff was eligible for forgiveness of its first draw PPP loan, the SBA conducted a review of Gold Club's Loan and denied forgiveness in decision dated October 31, 2023.

45.     While Plaintiff was eligible for forgiveness of its 2PPP Loan, the SBA conducted a review of Plaintiff's 2PPP Loan and denied forgiveness in an decision dated October 31, 2023. The claimed bases for the denial were due to alleged "size issues" based on SBA's application of its affiliation rules despite Plaintiff's obvious qualification for affiliation rules for the PPP exception found in at  15 U.S.C. § 636(a)(36)(D)(iii)(I) and 15 U.S.C. § 636(a)(36)(D)(iv)(I) for first draw loans and 15 U.S.C. § 636(a)(37)(D) and (E) for second draw loans (collectively, the "Affiliation Exemption Provisions"), and alleged ineligibility due to SBA's application of the Prurience Regulation. Plaintiff timely appealed that decision to the OHA and SBA withdrew that decision and OHA dismissed the appeal.

46.     On January 30, 2024, SBA issued Plaintiff a second FLRD for its second draw loan, this time denying forgiveness based on alleged ineligibility due to SBA's application of the Prurience Regulation as the sole basis for the denial. Plaintiff timely appealed that second denial decision on February 29, 2024. Ultimately, the OHA affirmed SBA's denial decision and Plaintiff now brings this timely petition for judicial review of that final decision.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

47.    If forced to repay its second draw (and first draw) PPP loan(s), and because of the precarious financial condition in which it finds itself still as a result of the lingering impact of the Pandemic and the consequences thereof, Plaintiff may be forced to file for reorganization through bankruptcy, which may preclude the Plaintiff from presenting First Amendment protected entertainment in the future.

### PLAINTIFF'S SECOND DRAW PPP LOAN

48.    In or about March of 2021, Plaintiff applied for a 2PPP Loan through its lender, via Bank of America's PPP portal.

49.    On or about March 20, 2021, SBA and/or its agent, Bank of America via delegated authority, 15 U.S.C. § 636(a)(36)(F)(ii), approved Plaintiff's application and granted Plaintiff a $2,000,000.00 2PPP loan under Loan No. 5803788607 (the 2PPP Loan"), which was disbursed on or about March 22, 2021.

50.    After spending the majority of the 2PPP Loan on eligible expenses found in 15 U.SC. § 636(a)(36)(F)(i), namely, payroll, Plaintiff, on or about April 22, 2022, timely applied for loan forgiveness through Bank of America's online portal seeking forgiveness for $1,993,233.75 of the 2PPP Loan.

### PLAINTIFF'S APPEAL TO THE OHA OF SBA'S DENIAL OF FORGIVENESS ON ITS FIRST DRAW PPP LOAN

51.    On October 31, 2023, SBA issued Plaintiff a Final Loan Review Decision ("FLRD"), with the referenced FLRD being the First FLRD) denying Plaintiff's forgiveness application for the first draw PPP Loan because SBA had concluded that Plaintiff was ineligible for the first draw PPP Loan for two reasons: 1) Plaintiff was allegedly an ineligible business providing prurient sexual material and 2) Plaintiff, together with its alleged affiliates, exceeded the maximum allowable number of employees and the SBA small business size standards. A true and accurate

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

11                                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

copy of the First FLRD is attached hereto as **Exhibit A**.

52.    Plaintiff timely filed an appeal of the First FLRD with the OHA on or about November 30, 2023. A true and accurate copy of that appeal petition is attached hereto as **Exhibit B**.[2]

53.    On December 11, 2023, the OHA published a scheduling order for the appeal.

54.    The next day, on December 12, 2023, Plaintiff filed a motion for discovery seeking necessary discovery in the form of document requests; a Fed. R. Civ. P. 30(b)(6) deposition of the SBA; a deposition of Eric Benderson, SBA's Associate General Counsel for Litigation who had, in previous litigation, provided a declaration regarding how determinations are made under the Prurience Regulation; and the depositions of that person or those persons who made, or participated in any fashion in making, the decision to deny Plaintiff's loan forgiveness application. A true and accurate copy of that motion is attached hereto as **Exhibit C**.

55.    At that time, no attorney for the SBA had yet filed an appearance.

56.    The following day, December 13, 2023, without a response from SBA, the OHA denied the aforementioned discovery motion stating that "OHA's authority is limited to reviewing whether a loan forgiveness decision is based on clear error." A true and accurate copy of this order is attached hereto as **Exhibit D**.

57.    On January 2, 2024, SBA filed the 5,967-page Administrative Record ("AR") in that appeal. Plaintiff and its staff, as well as its attorneys and accountants, began reviewing the AR to determine whether objections thereto were necessary and, if so, to prepare the same, which, pursuant to 13 C.F.R. § 134.1207, are due within 10 calendar days of filing the AR.

58.    Plaintiff requested and was granted three extensions to file objections to the AR, all

_____

[2] Plaintiff does not include herein all exhibits attached to the OHA appeals referenced herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

of which were unopposed by SBA.

59.    On February 27, 2024, SBA filed a motion to dismiss the appeal because it had, apparently, on February 20, 2024, withdrawn the decision that was on appeal because it had determined that it was necessary to complete a further review of the loan. A true and accurate copy of SBA's motion with the accompanying declaration is attached hereto as **Exhibit E**.

60.    That same day, the OHA granted the SBA's motion and dismissed the appeal.

### FIRST APPEAL TO THE OHA OF SBA'S DENIAL OF FORGIVENESS ON ITS 2PPP LOAN

61.    On October 31, 2023, SBA issued a FLRD denying Plaintiff's forgiveness request of its 2PPP Loan (the "First FLRD"). A true and accurate copy of the First FLRD is attached hereto as **Exhibit F**. The basis for the First FLRD was that SBA concluded that Plaintiff "is an ineligible borrower providing Prurient Sexual Material and" that Plaintiff "together with its [alleged] affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards."

62.    Plaintiff timely appealed the First FLRD.

63.    On December 12, 2023, Plaintiff filed a motion for discovery seeking the same relief it requested in the appeal of SBA's denial of Plaintiff's first draw PPP loan forgiveness application discussed above. A true and accurate copy of this discovery motion is attached hereto as **Exhibit G**.

64.    The next day, the OHA denied that discovery motion, again without any briefing from SBA. A true and accurate copy of the order denying that discovery motion is attached hereto as **Exhibit H**.

65.    On January 2, 2024, SBA filed the 920-page AR in the appeal. Plaintiff and its staff, as well as its attorneys and accountants, began reviewing the AR to determine whether objections

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

13                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

thereto were necessary and, if so, to prepare the same.

66.     Pursuant to 13 C.F.R. § 134.1207 and the scheduling order in the appeal, Plaintiff's objections to the AR were due on January 12, 2024.

67.     On January 8, 2024, Plaintiff filed a motion, which SBA stated it would not oppose, for an extension of time to January 24, 2024, to file objections to the AR.

68.     The next day, on January 9, 2024, SBA filed a motion to dismiss citing the same reasons it had in the motion it filed in the appeal of Plaintiff's first draw PPP loan. A true and accurate copy of SBA's January 9, 2024, motion to dismiss and accompanying documents is attached hereto as **Exhibit I**.

69.     The OHA granted SBA's motion to dismiss that same day, January 9, 2024, without permitting Plaintiff an opportunity to respond to the motion. A true and accurate copy of this order is attached hereto as **Exhibit J**.

**<u>SECOND APPEAL TO THE OHA OF SBA'S DENIAL OF FORGIVENESS<br>ON ITS 2PPP LOAN</u>**

70.     On January 30, 2024, SBA issued its second FLRD (the "Decision" or "Second FLRD"), a copy of which is attached hereto as **Exhibit K** denying Plaintiff's request for loan forgiveness. The Decision stated, in part:

> After review of the documentation provided, the SBA concludes that the Borrower is an ineligible business providing Prurient Sexual Material.
>
> Open-source research confirms that the borrower presents live performances of a prurient nature. Gold Club SF operates as "an upscale topless bar, adult entertainment spot, and gentleman's club featuring live girls in San Francisco at 650 Howard Street". Furthermore, the business LinkedIn profile states, "Winner of the 2015 Niteys Award "Best Adult Entertainment and Gold Club will offer you the ultimate strip club experience you won't soon forget!"
>
> A review of the 2019 interim financial statement ending June 30 confirms that the borrower derives directly more than the de minimis gross revenue through the sale of

products or services, or the presentation of any depictions or displays, of a prurient sexual nature. The income statement reports total revenues of $7,852,348 with income from Dances being reported of $3,896,230 with additional revenues from door admissions of $720,725.

13 CFR 120.110
p(1) Present Live performance of a prurient nature; or Docket No. PPP-5803788607 Page 4 of 11 p(2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays of a prurient sexual nature.

71.    On or about February 29, 2024, Plaintiff timely appealed the decision to OHA, seeking a reversal of the Decision (the "Appeal").

72.    In the Appeal petition of the Second FLRD Plaintiff argued, among other things, that the Decision was arbitrary and capricious for various reasons including that it was not adequately explained, was not the product of reasoned decision making because it conflicts with the decision to award Plaintiff the 2PPP Loan in the first place, and it treats Plaintiff differently than similarly situated businesses; that SBA revisiting the eligibility issue at the loan forgiveness stage conflicts with the PPP statute and is otherwise in excess of SBA's jurisdiction/authority; that SBA lacks authority to provide a forgiveness amount different from the sum of specific costs incurred and expenditures made during the loan's covered period; an estoppel theory; and that the Decision is violative of Plaintiff's constitutional rights. A true and accurate copy of Plaintiff's appeal petition is attached hereto as **Exhibit L**.

73.    Additionally, Plaintiff argued that it should be entitled to its costs and fees, including attorneys' fees, pursuant to the APA and the Equal Access to Justice Act.

74.    On or about March 25, 2024, SBA filed the 951-page Administrative Record (the "AR") in the Appeal.

75.    After an extension of time, on April 23, 2024, Plaintiff filed objections to the AR via 17-page filing. A true and accurate copy of Plaintiff's Objections to the AR filing in the OHA

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

is attached hereto as **Exhibit M**. Among other objections, Plaintiff objected to the redactions contained in the AR and the absence of certain documents, notes, and research referenced in the AR by SBA decision-makers that were not provided in the AR.

76.    Simultaneously on April 23, 2024, Plaintiff filed a 23-page motion for discovery with 1,685 pages of exhibits in the form of document requests; a Fed. R. Civ. P. 30(b)(6) deposition of the SBA; a deposition of Eric Benderson, SBA's Associate General Counsel for Litigation who had, in previous litigation, provided a declaration regarding how determinations are made under the Prurience Regulation; and the depositions of that person or those persons who made, or participated in any fashion in making, the decision to deny Plaintiff's loan forgiveness application. A true and accurate copy of this discovery motion along with its exhibits are attached thereto is attached hereto as **Exhibit N**. Plaintiff also included the lack of responsive documents to these discovery requests and the absence of a transcript of the Fed. R. Civ. P. 30(b)(6) deposition in its objections to the AR in the Appeal.

77.    The *same day*, April 23, 2024, the OHA denied Plaintiff's discovery request stating that discovery is not permitted in appeals from SBA final loan reviews regarding PPP loans. A true and accurate copy of the OHA's order denying Plaintiff's discovery motion is attached hereto as **Exhibit O**.

78.    On or about May 8, 2024, SBA responded to Plaintiff's Appeal. Included in its response was a Declaration from Sigmund Pannu, a Supervisory Loan Specialist in the Office of Capital Access at SBA. The Declaration of Sigmund Pannu included numerous exhibits that were not included in the administrative record in the Appeal, which Sigmund Pannu declared were "the same as or consistent with what I [he] reviewed during my [his] initial review of this loan prior to issuance of the final loan review decision." A true and accurate copy of SBA's response to Plaintiff's Appeal and the Declaration of Sigmund Pannu with all exhibits and attachments is

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

attached hereto as **Exhibit P**.

79.     In its response to Plaintiff's Appeal, SBA relied on the "evidence" included in the Declaration of Sigmund Pannu, which was not included in the AR, and argued, among other things, that 1) Plaintiff failed to state or argue that it does not present live performances of a prurient sexual nature, or that Plaintiff does not derive more than *de minimus* revenue from services of a prurient sexual nature, 2) SBA cannot be bound by lender decisions, 3) SBA cannot be estopped from enforcing the law by an earlier decision, 4) SBA's loan review of Plaintiff's eligibility of the PPP loan is consistent with the CARES Act and that SBA may review loans at any time, 5) SBA cannot be restricted under promissory estoppel from denying loan forgiveness,  6) Plaintiff cannot recover costs and fees before the OHA, and 7) OHA cannot adjudicate challenges to the constitutionality of SBA's implementation of the CARES Act and Economic Aid Act.

80.     On May 10, 2024, Plaintiff filed a Motion to Strike the Declaration of Sigmund Pannu and its exhibits and attachments in SBA's response to Plaintiff's Appeal on, among other bases, the basis that these items were not included in the AR and should have been and SBA cannot add new evidence mid-appeal. *See* 13 C.F.R. § 134.1209. A true and accurate copy of Plaintiff's Motion to Strike is attached hereto as **Exhibit Q**.

81.     Four days later, on May 14, 2024, the OHA issued an Order affirming the Decision and denying as moot Plaintiff's motion to strike (the "May 14 Order," which is attached hereto as **Exhibit R**).

### OHA'S ORDERS AFFIRMING THE DECISION

82.     The May 14 Order addressed Plaintiff's objections to the AR and overruled each and every one of them. The May 14 Order also denied Plaintiff's motion to strike the Declaration of Sigmund Pannu as moot stating that the OHA did "not need to consider the Declaration to decide this appeal." The May 14 Order also affirmed the Second FLRD and concluded that Plaintiff was

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

17                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

eligible for the final forgiveness amount of $0 and that the Second FLRD was not based on clear error of fact or law.

83.     As to Plaintiff's constitutional claims and claim for costs and fees under the EAJA, the May 14 Order stated that OHA "lack[s] authority to decide the[se] issues raised by" Plaintiff.

## PLAINTIFF EXHAUSTED ADMINISTRATIVE REMEDIES

84.     On October 31, 2023, Plaintiff received SBA's decision that Plaintiff was ineligible to receive the PPP loan and that "forgiveness in the amount of $0.00 is appropriate."

85.     The required 30 days has elapsed since the May 14 Order, and therefore, this petition for judicial review is ripe and timely.

86.     Plaintiff has exhausted administrative remedies prior to filing this Complaint and Petition.

87.     In light of OHA's orders, Plaintiff also has begun repaying the PPP Loan.

## GENERAL ALLEGATIONS

88.     As a result of the issuance of the 2PPP Loan, Plaintiff was required to enter into a loan agreement. A true and accurate of Plaintiff's 2PPP Loan promissory note is attached hereto as **Exhibit S**.

89.     Under the PPP and Bank Fraud Enforcement Harmonization Act of 2022, Pub. L. 117-166 , 136 Stat. 1365 (Jan. 3, 2022), now codified at 15 U.S.C. § 636(a)(36)(W) and (a)(37)(P), criminal charges or civil enforcement actions alleging that a borrower engaged in fraud with respect to a PPP Loan may be brought not later than 10 years after the alleged offense was committed.

90.     Under and/or pursuant to 15 U.S.C. § 636m(l); 15 U.S.C. § 636m(E); 13 C.F.R. § 120.461(d); and/or SBA 7(a) Loan Servicing and Liquidation, SOP 50 57 3, § 3.D.5 (Aug. 1, 2023), the SBA has six years after a PPP loan is forgiven to audit and reconsider the decision.

91.     Until SBA's motion to dismiss filed in Plaintiff's first OHA appeal of SBA's denial

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

of forgiveness on its 2PPP Loan, SBA had asserted that Plaintiff was affiliated with a number of other entities and did not qualify for the Affiliation Exemption Provisions.

92.  With a number of these entities SBA has claimed are affiliated with Plaintiff, SBA granted forgiveness of their PPP loans, however, it has, recently, as a result of threatened litigation, initiated audits, or what SBA refers to as "Post-Payment Reviews," of such entities purported to "re-examine" the question of whether they were eligible for the PPP loans in the first place. In so doing, SBA has demanded thousands of documents from these entities and those entities that SBA claims to be affiliated with them, including Plaintiff, thereby causing these entities, including Plaintiff, to expend thousands of dollars in professional fees.

**THE SBA'S AND CONGRESS' GERRYMANDERING OF EMERGENCY PANDEMIC FUNDING TO ASSIST PREVIOUSLY EXCLUDED BUSINESS ACTIVITIES AND TO DAMAGE "DISFAVORED" SPEECH**

93.  As reported by NPR based on SBA data, 92% of all PPP loans have been forgiven.

94.  Congress created the SBA on July 30, 1953, through the Small Business Act of 1953, Pub. L. 83-163, tit. II, 67 Stat. 232, *et seq.*, (1953); *see also* https://www.sba.gov/about-sba/organization#:~:text=Congress%20created%20SBA%20with%20the,is%20periodically%20amended%20by%20Congress (last visited Feb. 12, 2024). The Small Business Act referenced in the previous sentence and all subsequent amendments thereto are collectively referred to hereinafter as the "SBA Act."

95.  On March 28, 2020, the President signed the CARES Act into law which, among other things, created the PPP.

96.  The PPP is part of the SBA Act.

97.  The PPP instructs the SBA to promulgate rules as follows:

SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.

Not later than 15 days after the date of the enactment of this Act, the Administrator

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code.

CARES Act, Pub. L. 116-136 § 1114; codified as 15 U.S.C. § 9012.

98.    The CARES Act specifically tasked the SBA with administering the PPP. The PPP further provides:

(I) In general

For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

(II) Considerations

In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—

(aa) was in operation on February 15, 2020; and

(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or

(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders

The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

15 .S.C. § 636(a)(36)(F)(ii).

99.    Nowhere in the CARES Act did Congress authorize the SBA to make value judgments in determining which small businesses should survive the Pandemic through the issuance of emergency funding and which businesses should be allowed to fail without such funding.

100.    Pursuant to the PPP, and in particular 15 U.S.C. § 636(a)(36)(F)(ii), the SBA did, in fact, promulgate numerous regulations.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

20                                      Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

101.    On April 15, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 20811-17 (Interim Final Rule, Apr. 15, 2020), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program," which reads, in relevant part:

> Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. (SOP 50 10 can be found at https://www.sba.gov/ document/sop-50-10-5-lenderdevelopment- company-loan-programs.).

85 Fed. Reg. 20812 (Apr. 15, 2020).

102.    On April 15, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 20817-21 (Interim Final Rule, Apr. 15, 2020), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program," which reads, in relevant part:

> This rule exempts otherwise qualified faith-based organizations from the SBA's affiliation rules, including those set forth in 13 CFR part 121, where the application of the affiliation rules would substantially burden those organizations' religious exercise.
>
> *                *                *
>
> The Administrator has also concluded that she does not have a compelling interest in denying emergency assistance to faith-based organizations that are facing the same economic hardship to which the CARES Act responded and who would be eligible for PPP but for their faith-based organizational and associational decisions.
>
> *                *                *
>
> In light of these exemptions, it is difficult to maintain that denying relief to these faith-based organizations is necessary to further a compelling government interest, let alone the least restrictive means of doing so.

85 Fed. Reg. 20819.

103.    In its April 15, 2020, Interim Final Rule (85 Fed. Reg. 20817-21) the SBA classified the PPP as a benefit program:

> The affiliation rules would deny an *important benefit* (participation in a program for which they would otherwise be eligible under the CARES Act) because of the exercise of sincere religious belief (affiliation with other religious entities).

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

85 Fed. Reg. 20819 (emphasis added; all clarifications in original).

104.    On April 20, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 21747-52 (Interim Final Rule, Apr. 20, 2020), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans," which reads, in relevant part:

> *b. Are businesses that receive revenue from legal gaming eligible for a PPP Loan?*
>
> A business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues if the existing standard in 13 CFR 120.110(g) is met or the following two conditions are satisfied: (a) The business's legal gaming revenue (net of payouts but not other expenses) did not exceed $1 million in 2019; and (b) legal gaming revenue (net of payouts but not other expenses) comprised less than 50 percent of the business's total revenue in 2019. Businesses that received illegal gaming revenue are categorically ineligible. The Administrator, in consultation with the Secretary, believes this test appropriately balances the longstanding policy reasons for limiting lending to businesses primarily and substantially engaged in gaming activity with the policy aim of making the PPP Loan available to a broad segment of U.S. businesses and their employees.

85 Fed. Reg. 21751 (all clarifications in original).

105.    A few days later, on April 28, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 23450 (Interim Final Rule, Apr. 28, 2020), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility," which expanded gambling establishments' eligibility and reads, in relevant part:

> d. Part III.2.b. of the Third PPP Interim Final Rule (85 FR 21747, 21751) is revised to read as follows:
>
> Are businesses that receive revenue from legal gaming eligible for a PPP Loan?
>
> A business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to PPP loans. Businesses that received illegal gaming revenue remain categorically ineligible. On further consideration, the Administrator, in consultation with the Secretary, believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

85 Fed. Reg. at 23451.

106.    That same Interim Final Rule also "determined that this exception to the general ineligibility of government-owned entities, 13 CFR 120.110(j), is inappropriate to effectuate the purpose of the CARES Act," thereby allowing government-owned hospitals to receive PPP loans. Id. Such entities would otherwise have been ineligible for PPP loans under 13 C.F.R. § 120.110(j)

107.    On June 26, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 38301 (Interim Final Rule, Jun. 26, 2020), an Interim Final Rule titled "Business Loan Temporary Changes; Paycheck Protection Program—Additional Eligibility Revisions to First Interim Final Rule."

108.    Via 85 Fed. Reg. at 38302, the SBA relaxed its rule in the first interim final rule (85 Fed. Reg. 20811) that provided that "an applicant is ineligible for a PPP loan if an owner of 20 percent or more . . . is presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction" by determining that "should be limited to pending criminal charges for felony offenses, which aligns with the Administrator's prior determination that only felony convictions . . . will limit an applicant's eligibility for the PPP." Prior to these two interim final rules, such entities would have been categorically excluded from SBA's 7(a) loans via 13 C.F.R. § 120.110(n).

109.    On June 30, 2020, the SBA published, in the Federal Register, 85 Fed. Reg. 39066 (Interim Final Rule, Jun. 30, 2020), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program—Certain Eligible Payroll Costs."

110.    Prior to the June 30, 2020, Interim Final Rule (85 Fed. Reg. 39066, *et seq.*), crewmembers of commercial fishing boats were "treated as independent contractors or otherwise self-employed" and "because independent contractors have the ability to apply for a PPP loan on their own, they [the crewmembers] do not count for purposes of another applicant's PPP loan calculation." 85 Fed. Reg. 39066 (clarification added). In other words, prior to this Interim Final

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

23                                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

Rule, boat owners could not count the payments made to their crewmembers as payroll costs for the PPP because the crewmembers were themselves eligible for a PPP. The SBA's June 30, 2020, Interim Final Rule negated that limitation:

> The Administrator, in consultation with the Secretary, has determined that the relationship of a fishing boat owner and a crewmember described in Section 3121(b)(20) of the Code is analogous to a joint venture or partnership.
>
> *      *      *
>
> Accordingly, as described below, this interim final rule (1) provides that a fishing boat owner may include compensation reported on Box 5 of Form 1099–MISC and paid to a crewmember described in Section 3121(b)(20) as a payroll cost in its PPP loan application, and (2) addresses a fishing boat owner's eligibility to obtain loan forgiveness of payroll costs paid to a crewmember who has obtained his or her own PPP loan.

85 Fed. Reg. at 39066-67.

111.    On January 27, 2021, the President signed the Appropriations Act into law, which, among other things, created the second draw loans under the PPP, and which is largely codified at 15 U.S.C. § 636(a)(37).

112.    The second draw PPP provisions of the Appropriation Act states:

> Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans to eligible entities under the same terms, conditions, and processes as a loan made under paragraph [15 U.S.C. § 636(a)](36).

15 U.S.C. § 636(a)(37)(B) (clarification added).

113.    The Appropriation Act provides, in regard to Second Draw PPP eligibility:

(iv) the term "eligible entity"—

(III) does not include—

(aa) any entity that is a type of business concern (or would be, if such entity were a business concern) described in section 120.110 of title 13, Code of Federal Regulations (or in any successor regulation or other related guidance or rule that may be issued by the Administrator) other than a business concern described in subsection (a) or (k) of such section; or

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

(bb) any business concern or entity primarily engaged in political or lobbying activities, which shall include any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents;

(cc) any business concern or entity—

(AA) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or

(BB) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China;

(dd) any person required to submit a registration statement under section 612 of Title 22; or

(ee) an eligible person or entity (as defined under section 24 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act) that receives a grant under such section 24;

15 U.S.C. § 636(a)(37)(A)(iv)(III). Hereafter, 15 U.S.C. § 636(37)(A)(iv)(III)(aa) shall be referred to as the "Incorporating Statute."

114.    The Appropriation Act expanded eligibility for the second draw PPP loans to include, as eligible businesses, churches and religious organizations:

(c) ELIGIBLE CHURCHES AND RELIGIOUS ORGANIZATIONS.—

(1) SENSE OF CONGRESS.—It is the sense of Congress that the interim final rule of the Administration entitled ''Business Loan Program Temporary Changes; Paycheck Protection Program'' (85 Fed. Reg. 20817 (April 15, 2020)) properly clarified the eligibility of churches and religious organizations for loans made under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)).

Appropriations Act, § 311(c). Such entities would otherwise have been ineligible for PPP loans under 13 C.F.R. § 120.110(k).

115.    The Appropriation Act expanded eligibility for the Second Draw PPP, by amending

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

the PPP to include, as eligible businesses, among other entities:

    a.   "housing cooperatives" and "small agricultural cooperatives," *see* EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)(A)(i)), which, until 2017, may have been ineligible pursuant to 13 C.F.R. § 120.110(l) (*see* 82 Fed. Reg. 39491, 39492 (Final, Aug. 21, 2017);

    b.   a wider range of religious entities, by waiving SBA's rule prohibiting loans to certain faith-based entities, *see* EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa); EAA § 311(c)(ii), which were previously ineligible pursuant to 13 C.F.R. § 120.110(k); and

    c.   non-profit businesses, by waiving SBA's rule prohibiting loans to the same, *see* EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa).

116.    The Appropriation Act further expanded eligibility for the Second Draw PPP, by amending the PPP to include, as eligible businesses, certain news businesses:

(II) Eligibility of news organizations

(aa) Definition

In this subclause, the term "included business concern" means a business concern, including any station which broadcasts pursuant to a license granted by the Federal Communications Commission under title III of the Communications Act of 1934 (47 U.S.C. 301 et seq.) without regard for whether such a station is a concern as defined in section 121.105 of title 13, Code of Federal Regulations, or any successor thereto—

(AA) that employs not more than 500 employees, or the size standard established by the Administrator for the North American Industry Classification System code applicable to the business concern, per physical location of such business concern; or

(BB) any nonprofit organization or any organization otherwise subject to section 511(a)(2)(B) of the Internal Revenue Code of 1986 that is a public broadcasting entity (as defined in section 397(11) of the Communications Act of 1934 (47 U.S.C. 397(11))).

(bb) Eligibility

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

> During the covered period, an included business concern shall be eligible to receive a covered loan if—
>
> (AA) the included business concern is majority owned or controlled by a business concern that is assigned a North American Industry Classification System code beginning with 511110 or 5151 or, with respect to a public broadcasting entity (as defined in section 397(11) of the Communications Act of 1934 (47 U.S.C. 397(11))), has a trade or business that falls under such a code; and
>
> (BB) the included business concern makes a good faith certification that proceeds of the loan will be used to support expenses at the component of the included business concern that produces or distributes locally focused or emergency information.

15 U.S.C. § 636(a)(36)(D)(iii)(II) (previously, Appropriations Act, § 317 (a)(2)). Such entities' eligibility under the CARES Act would have otherwise been uncertain pursuant to 13 C.F.R. § 120.110(r).

117.    Via 87 Fed. Reg. 38900 (June 30, 2022), SBA fully eliminated that prohibition against providing loans, including PPP loans, to "businesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting," found at 13 C.F.R. § 120.110(k), specifically stating that "SBA has determined that . . . paragraph (k) of section 120.110 should be removed from the Agency's regulations, and reserved[.]" 87 Fed. Reg. 38900, 38901. Via the proposed rule:

> SBA explained that this provision, which was promulgated in 1996, could be interpreted as impermissible exposing a special disability on organizations based on their religious status. Thus, the regulation may have caused uncertainty for Lenders and Borrowers determining the eligibility of an applicant for an SBA loan. . . .
>
> The removal of section 120.110(k) will eliminate uncertainty for Lenders and Borrowers and . . . SBA will continue to apply relevant Supreme Court caselaw to ensure that the proceeds of SBA business loans are used in a manner consistent with the First Amendment to the U.S. Constitution. Although this change is beneficial to increase clarity and uncertainty, it will not result in any specific way SBA implements this provision. SBA is currently following the Supreme Court precedent when analyzing eligibility for SBA financial assistance *as it believes that any regulation which may be inconsistent with that precedent cannot be given effect*.

Id. at 38906-07 (emphasis added).

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

118.    The Appropriations Act also expanded eligibility for the second draw PPP loans by amending the PPP to include, as eligible businesses, certain lobbying and destination marketing businesses:

(vii) Eligibility for certain 501(c)(6) organizations

(I) In general

Any organization that is described in section 501(c)(6) of the Internal Revenue Code and that is exempt from taxation under section 501(a) of such Code (excluding professional sports leagues and organizations with the purpose of promoting or participating in a political campaign or other activity) shall be eligible to receive a covered loan if—

(aa) the organization does not receive more than 15 percent of its receipts from lobbying activities;

(bb) the lobbying activities of the organization do not comprise more than 15 percent of the total activities of the organization;

(cc) the cost of the lobbying activities of the organization did not exceed $1,000,000 during the most recent tax year of the organization that ended prior to February 15, 2020; and

(dd) the organization employs not more than 300 employees.

(II) Destination marketing organizations

Any destination marketing organization shall be eligible to receive a covered loan if—

(aa) the destination marketing organization does not receive more than 15 percent of its receipts from lobbying activities;

(bb) the lobbying activities of the destination marketing organization do not comprise more than 15 percent of the total activities of the organization;

(cc) the cost of the lobbying activities of the destination marketing organization did not exceed $1,000,000 during the most recent tax year of the destination marketing organization that ended prior to February 15, 2020; and

(dd) the destination marketing organization employs not more than 300 employees; and

(ee) the destination marketing organization—

4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

(AA) is described in section 501(c) of the Internal Revenue Code and is exempt from taxation under section 501(a) of such Code; or

(BB) is a quasi-governmental entity or is a political subdivision of a State or local government, including any instrumentality of those entities.

15 U.S.C. § 636(a)(36)(D)(vii) (previously, Appropriations Act, § 318(2)(C). Such entities would otherwise have been ineligible for PPP loans under 13 C.F.R. § 120.110(j) and (r); *see also* 86 Fed. Reg. 3692, 3697 n.26 (Interim Final Rule Jan. 14, 2021)

119.     The Appropriations Act also expanded eligibility for the second draw PPP loans by amending 11 U.S.C. § 364 to include, as eligible businesses, businesses in bankruptcy:

'(g)(1) The court, after notice and a hearing, may authorize a debtor in possession or a trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of this title to obtain a loan under paragraph (36) or (37) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), and such loan shall be treated as a debt to the extent the loan is not forgiven in accordance with section 7A of the Small Business Act or subparagraph (J) of such paragraph (37), as applicable, with priority equal to a claim of the kind specified in subsection (c)(1) of this section.

'(2) The trustee may incur debt described in paragraph (1) notwithstanding any provision in a contract, prior order authorizing the trustee to incur debt under this section, prior order authorizing the trustee to use cash collateral under section 363, or applicable law that prohibits the debtor from incurring additional debt.

'(3) The court shall hold a hearing within 7 days after the filing and service of the motion to obtain a loan described in paragraph (1). Notwithstanding the Federal Rules of Bankruptcy Procedure, at such hearing, the court may grant relief on a final basis.'

Appropriations Act, § 320(a). SBA had previously determined that such entities were ineligible for PPP loans. 85 Fed. Reg. 23450, 23451(Interim Final Rule, Apr 28, 2020) ("Will I be approved for a PPP loan if my business is in bankruptcy? No.").

120.     The provisions of the Appropriation Act regarding second draw PPP loans instruct the SBA to promulgate rules as follows:

(M) Publication of guidance

Not later than 10 days after December 27, 2020, the Administrator shall issue guidance addressing barriers to accessing capital for minority, underserved, veteran,

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

and women-owned business concerns for the purpose of ensuring equitable access to covered loans.

15 U.S.C. § 636(a)(37)(M).

121.    Title III, Section 303 of the Appropriations Act (also known by the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act"), instructs the SBA to promulgate rules as follows:

> Not later than 10 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this Act and the amendments made by this Act without regard to the notice requirements under section 553(b) of title 5, United States Code.

Appropriations Act, § 303 (now codified as 15 U.S.C. § 9012).

122.    Pursuant to the provisions of the Appropriations Act that apply to second draw PPP loans, the SBA did, in fact, promulgate numerous regulations.

123.    On March 8, 2021, the SBA published, in the Federal Register, 86 Fed. Reg. 13149-56 (Interim Final Rule, Mar. 8, 2021), an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Amount Calculation and Eligibility," which:

> remove[s] the eligibility restriction that prevents businesses with owners who have non-financial fraud felony convictions in the last year from obtaining PPP loans and remove[s] the eligibility restriction that prevents businesses with owners who are delinquent or in default on their Federal student loans from obtaining PPP loans. The changes apply to both First Draw PPP Loans and Second Draw PPP Loans.

86 Fed. Reg. 13149 (clarification added). The SBA reasoned that removing these eligibility restrictions were:

> appropriate to ensure consistency with Congressional intent to provide relief to small businesses and their employees, expand access to the PPP, and remove barriers people with prior convictions face when working to restart their lives and contribute to our economy. SBA has determined that the one-year lookback restriction related to non-financial fraud felonies should be removed and only the five-year lookback restriction for those felonies involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance will limit an applicant's eligibility for the PPP. Removing the one-year lookback restriction related

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

4862-2357-8321, v. 2

to non-financial fraud felonies is consistent with Congressional support for reducing criminal background checks in the PPP and the important policies underlying recent criminal justice reforms in Congress, such as last year's Fair Chance to Compete for Jobs Act of 2019 (Pub. L. 116–92, Div. A, Tit. XI, Subtit. B,) and the First Step Act of 2018 (Pub. L. 115–391).

*        *        *

By removing barriers for applicants with non-financial fraud felonies, this interim final rule balances the need to increase access to the PPP and remove barriers for people with prior convictions while still ensuring basic guardrails against fraud exist for this emergency program. Preserving the five-year lookback for financial fraud-related felonies is one of these guardrails.

*        *        *

SBA has determined that eliminating consideration of delinquent or defaulted Federal student loans is appropriate to ensure consistency with Congressional intent to provide relief to small businesses and their employees and expand access to the PPP. This change will make PPP loans available to more borrowers with financial need and is consistent with Congress's intent that PPP loans be prioritized for small business concerns owned and controlled by socially and economically disadvantaged individuals as defined in section 8(d)(3)(c) of the Small Business Act.13 According to the Department of Eduction [*sic*], ''Black and Brown students rely more heavily on student loan debt than their peers and experience delinquency at disproportionately high rates. As a result prohibiting delinquent student loan borrowers from obtaining PPP loans is more likely to exclude business owners of color from access to the loans they need.'' In addition, this change is consistent with the policy set in section 3513 of the CARES Act and the Department of Education's ongoing actions to provide economic relief to student loan borrowers whose loans are held by the agency by suspending Federal student loan payments and collections during the pandemic and keeping the interest rate at 0 percent.

At the request of the Department of Education by letter dated February 27, 2021, Treasury also has granted an exemption from the bar in 31 U.S.C. 3720B and 31 CFR 285.13, with respect to PPP borrowers with Federal student loans in delinquent status.

The change in PPP regulations relating to Federal student loans and the Treasury exemption apply to new PPP applicants as well as those borrowers who have already received a PPP loan. In this way, PPP borrowers with delinquent or defaulted student loan debts are treated equally, without regard to when they submitted their PPP application.

86 Fed. Reg. 13154-55.

124.    On March 11, 2021, the President signed ARPA into law, which, among other things,

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

modified both first and second draw PPP loan provisions via Section 5001 thereof.

125.    On March 22, 2021, the SBA published, in the Federal Register, an Interim Final Rule titled "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by American Rescue Plan Act," 86 Fed. Reg. 15083 (Interim Final Rule, Mar 22, 2021), which provides that "[t]he intent of the CARES Act, the Economic Aid Act, and the American Rescue Plan Act is that SBA provide relief to America's small businesses and nonprofit organizations expeditiously." Id. at 15084.

126.    Generally, Section 5001 of ARPA amended the PPP to increase eligibility for certain non-profit organizations, including non-profit organizations that conduct lobbying activities and internet publishing organizations.

127.    Specifically, ARPA added the following to 15 U.S.C. § 36(a):

''(xvii) the term 'additional covered nonprofit entity'—

''(I) means an organization described in any paragraph of section 501(c) of the Internal Revenue Code of 1986, other than paragraph (3), (4), (6), or (19), and exempt from tax under section 501(a) of such Code; and

''(II) does not include any entity that, if the entity were a business concern, would be described in section 120.110 of title 13, Code of Federal Regulations (or in any successor regulation or other related guidance or rule that may be issued by the Administrator) other than a business concern described in paragraph (a) or (k) of such section.''; and

(B) in subparagraph (D)—

(i) in clause (iii), by adding at the end the following:

''(III) ELIGIBILITY OF CERTAIN ORGANIZATIONS.—
Subject to the provisions in this subparagraph, during the covered period—

''(aa) a nonprofit organization shall be eligible to receive a covered loan if the nonprofit organization employs not more than 500 employees per physical location of the organization; and

''(bb) an additional covered nonprofit entity and an organization that, but for subclauses (I)(dd) and (II)(dd) of clause (vii), would be eligible for a covered loan

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

32                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

under clause (vii) shall be eligible to receive a covered loan if the entity or organization employs not more than 300 employees per physical location of the entity or organization.''; and

(ii) by adding at the end the following:

''(ix) ELIGIBILITY OF ADDITIONAL COVERED NONPROFIT ENTITIES.—An additional covered nonprofit entity shall be eligible to receive a covered loan if—

''(I) the additional covered nonprofit entity does not receive more than 15 percent of its receipts from lobbying activities;

''(II) the lobbying activities of the additional covered nonprofit entity do not comprise more than 15 percent of the total activities of the organization;

''(III) the cost of the lobbying activities of the additional covered nonprofit entity did not exceed $1,000,000 during the most recent tax year of the additional covered nonprofit entity that ended prior to February 15, 2020; and

''(IV) the additional covered nonprofit entity employs not more than 300 employees.''.

(2) ELIGIBILITY FOR SECOND DRAW LOANS.—Paragraph (37)(A)(i) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (title III of division N of Public Law 116–260), is amended by inserting '' 'additional covered nonprofit entity','' after ''the terms''.

ARPA, § 5001(a)(1)(A)-(B) & (a)(2).

## FACTS RELATING TO PLAINTIFF'S ESTOPPEL CAUSE OF ACTION

128.    In reliance upon the terms of the Plaintiff's promissory note and the provisions of the PPP, Plaintiff used the portions of the loan proceeds that it seeks forgiveness of only for the Permitted Uses and no other uses whatsoever. More specifically, as a result of receiving the loan monies, Plaintiff kept as many of its employees as possible employed during the various Pandemic governmental shutdowns so that those employees would not be required to seek and obtain unemployment compensation or other forms of governmental assistance.

129.    At all times, Plaintiff fully abided by all of its obligations under its promissory note.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

130.    But for receipt of the loan proceeds, Plaintiff would not have been able, during governmental shutdowns and the immediate time periods thereafter because of the significant drop of business resulting from the Pandemic, to continue the employment of many of its employees. Through and with the loan proceeds, Plaintiff paid wages to the retained employees and paid and/or remitted all withholding taxes due on such wages or related thereto to the applicable federal and state authorities.

131.    Nevertheless, due to the extent of certain governmentally mandated Pandemic shutdowns and/or closure orders, Plaintiff was not able to use all of its loan proceeds for the Permitted Uses; primarily as a result of the inability to have numerous employees actually undertake work-related activities for which compensation in the form of wages would then be due and payable.

132.    As a result of the circumstances set forth in the paragraph immediately above, Plaintiff is not seeking forgiveness of the full 2PPP Loan amount.

133.    For all other loan proceeds, Plaintiff used them, as stated above, in accordance with the promissory note and the PPP, and therefore no longer has possession of any of such loan proceeds.

134.    In addition, because Plaintiff's employees provided the work for which they had been retained, Plaintiff has no legal remedy to recoup such loan proceeds from their employees and ex-employees in the event that the SBA is successful in negating 2PPP Loan.

135.    Further, because Plaintiff paid, among other things, various utility bills as they became due, rent, and mortgages, during the Pandemic, all of which are Permitted Uses, Plaintiff has no legal remedy to recoup such loan proceeds from, for example, its trash service provider, internet service provider, landlord, etc., in the event that the SBA is successful in negating the 2PPP Loan.

136.    Through the distribution of the 2PPP Loan proceeds pursuant to its promissory note and the PPP, a substantial portion of the 2PPP loan proceeds has already been returned to the United

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

States Treasury in the form of income and payroll taxes paid by or on behalf of the ultimate recipients of the loan proceeds; most of whom were the employees of Plaintiff, service providers of Plaintiff, or landlord of Plaintiff.

137.    For portions of the 2PPP Loan proceeds that have already been returned to the Treasury in the form of payroll taxes paid on behalf of Plaintiff's employees, Plaintiff has remitted such taxes to the Treasury.

138.    In addition to the loan proceeds discussed in the paragraph immediately above, other loan proceeds have also already been returned to the Treasury in the form of income and other taxes due on or related to the purchase of goods and services by Plaintiff's employees out of the wages they received from the Plaintiff's through the loan proceeds.

139.    In addition to the 2PPP Loan proceeds discussed in two paragraphs immediately above, other loan proceeds have also already been returned to the Treasury in the form of, for example, income taxes from Plaintiff's landlords, income taxes for personal protective equipment (i.e., "worker protection expenditures," *see* 15 U.S.C. § 636(a)(36)(F)(i)(XI)), purchased by Plaintiff and paid by the vendors that sold such equipment, and income taxes on utilities such as trash and internet services paid by Plaintiff's vendors of these services.

140.    As a result of the facts and circumstances set forth in the paragraphs immediately above, if Plaintiff is required to pay back the full 2PPP Loan (which it no longer itself possess), the federal government will realize a substantial, inequitable, and "double dipping" of compensation.

## **FACTS RELATING TO PRIOR OHA PROCEEDINGS**

141.    Prior to the matters involved in this action, the undersigned firm Shafer & Associates, P.C. had initiated approximately 16 appeals in the OHA.

142.    Of the prior administrative appeals that Shafer & Associates, P.C. has filed, not a single one resulted in a final ruling by the OHA (until Plaintiff). One was dismissed on procedural

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

35                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

grounds. In the majority of the others, the SBA withdrew its final determination in order to permit it to come up with a "new" reason to justify denial of eligibility; with all such matters subsequently being resolved by formal settlements between the undersigned firm's clients and the SBA. In others, the SBA (including Plaintiff's first draw PPP loan forgiveness denial appeal) withdrew its FLRD and has not issued a new FLRD to appeal.

143.    In the previous OHA appeals where the SBA had withdrawn its final determination, it either stayed the appeal pending issuance of the "new and improved" FLRD or moved for dismissal of the OHA appeal (one such motion having been granted by the OHA the same day as the filing of the SBA's motion for dismissal, without the appellant there even being permitted the opportunity to respond, despite 13 C.F.R. § 134.211(c) permitting the non-moving party fifteen days to respond to a motion).

144.    In one particular instance, the Shafer & Associates, P.C. firm filed an appeal with the OHA; the SBA then withdrew that FLRD; the OHA appeal was then dismissed; the SBA then came up with a second reason to deny forgiveness and issued a second FLRD; the Shafer & Associates, P.C. firm then filed a second appeal in the OHA on behalf of that client; and the SBA then withdrew that second FLRD as well (litigation thereafter being avoided by the SBA subsequently resolving its dispute with that entity as part of a "group" settlement).

145.    In several of the instances where the SBA has withdrawn the FLRD, it has done so not at the early stages of the appeal; but rather, after reviewing the appeal brief, filing the administrative record, and reviewing the appellant's objections to the administrative record. Such instances increased the cost of these appeals, in terms of professional fees (both attorney and accountant), exponentially.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

36                                                                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

## FURTHER FACTS AND LAW RELATING TO THE OHA PROCEEDINGS UNDERLYING THIS LAWSUIT

146.    13 C.F.R., Ch. I, Pt. 134, Subpart L, titled "Borrower Appeals of Final Sba Loan Review Decisions," 13 C.F.R. §§ 134.1201 – 1217, provides "rules of practice" that apply only "to appeals to OHA from certain final SBA loan review decisions under the Paycheck Protection Program[.]" 13 C.F.R. § 134.1201(a). These regulations will be collectively referred to hereinafter as the "Special OHA Rules." Plaintiff only challenge these Special OHA Rules that apply solely to PPP loans, *i.e.*, 13 C.F.R., Ch. I, Pt. 134, Subpart L; they do *not* challenge the "normal" OHA appellate rules that apply to appeals related to all other SBA-related funding decisions generally found at 13 C.F.R., Ch. I, Pt. 134, Subparts A – M, *excluding* Subpart L.

147.    The OHA was never designed to handle the number of appeals emanating from the PPP and other Pandemic funding programs. As a result, in order to administer and decide such appeals, the OHA uses "administrative law judges" or "administrative judges" from other federal agencies and does not even require, for PPP related appeals, administrative law judges to adjudicate appeals. Rather, the Special OHA Rules permit outside attorneys hired by the SBA, and referred herein to as "OHA Attorneys," to sit in consideration of, and to decide, appeals in the OHA. *See* 13 C.F.R. § 134.1206. As a result, in one of the OHA appeals handled by the Shafer & Associates, P.C. firm, the OHA Attorney listed on the portal filed the order signed by the Administrative Judge dismissing the appeal the same day that the SBA filed a motion to dismiss. Further, upon information and belief, the judge in that matter, Constance T. O'Bryant,  is a retired administrative law judge. *See* https://www.linkedin.com/in/constance-obryant-109b0385/.

148.    13 C.F.R. § 134.1209(c) provides that all appeals in the OHA are to be "decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record." There is no right for the

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

37                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

appellant to obtain any form of hearing in the OHA for PPP loans. Id.

149.    13 C.F.R. § 134.1209(a) provides that "[g]enerally, the Judge may not admit evidence beyond the administrative record."

150.    Under the general rules of the OHA, a party may obtain discovery "upon motion, and for good cause shown." 13 C.F.R. § 134.213(a). Permissible discovery includes requests for admissions, requests for production of documents, interrogatories, and depositions. *See* 13 C.F.R. § 134.213(b).

151.    However, the SBA has promulgated a rule, initially without public notice or comment, specifically precluding discovery "in appeals from final SBA loan review decisions" under the PPP. 13 C.F.R. § 134.1209(b); *see also* 13 C.F.R. § 134.1201(h) (enumerating select provisions of 13 C.F.R., Ch. I, Pt. 134, Subpart B for incorporation into Subpart L, and expressly stating that "[o]ther provisions from subpart B of this part that are not specifically referenced in this subpart do not apply to this subpart.").

152.    As a result of the provisions of 13 C.F.R. § 134.1209(b), Plaintiff is, by adopted regulation, precluded from obtaining *any discovery whatsoever* in the OHA before their matters can proceed to court, despite its efforts, as discussed previously, to obtain discovery.

153.    Upon information and belief, the SBA will contend in this litigation or any litigation resulting from an OHA appeal that the Court is limited to the factual record "developed" in the OHA (and see further discussion below in this regard).

154.    As described earlier, in various OHA appeals, SBA has attempted to add "evidence" to support its FLRD after issuance of the FLRD and which is not contained in the administrative record.

155.    This action asks this Court to resolve numerous constitutional matters; including both facial challenges and challenges to the SBA's application of the various regulations and statutes

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

challenged herein (summarized above and specifically delineated below).

156.    As consistently stated by the Supreme Court, constitutional questions are beyond the jurisdiction of administrative agencies, and therefore beyond the jurisdiction of the OHA. *See*, *e.g.*, Carr v. Saul, 593 U.S. 83, 92 (2021) (numerous citations omitted) (". . . this Court has often observed that agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' area of technical expertise"); Califano v. Sanders, 430 U.S. 99, 109 (1977) ("Constitutional questions are obviously unsuited to resolution in administrative hearing procedures and, therefore, access to the court is essential to the decision of such questions."); Johnson v. Robison, 415 U.S. 361, 368 (1974) ("Adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies."); Mobility Workx, LLC v. Unified Pats., LLC, 15 F.4th 1146, 1150 (Fed. Cir. 2021) (cleaned up; collecting cases) ("Under Supreme Court and circuit precedent, agencies generally do not have authority to declare a statute unconstitutional. It follows that constitutional challenges to the statute under which the agency operates need not be raised before the agency."); *see also* 5 U.S.C. § 706 (". . . the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions . . . ."); Crowell v. Benson, 285 U.S. 22, 60 (1932) ("In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function.").

157.    In addition, administrative agencies do not have the jurisdiction to decide the constitutionality of their own regulations. *See, e.g.*, Gilbert v. Nat'l Transp. Safety Bd., 80 F.3d 364, 366 (9th Cir. 1996) (collecting cases) ("Generally, challenges to the constitutionality of a statue or regulation promulgated by an agency are beyond the power or the jurisdiction of an agency."); Motor & Equip. Mfrs. Ass'n, Inc. v. E.P.A., 627 F.2d 1095, 1114-15 (D.C. Cir. 1979), cert denied 446 U.S.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

952; <u>Thunder Basin Coal Co. v. Reich</u>, 510 U.S. 200, 215 (1994); <u>Gonzalez v. Metro. Transp. Auth.</u>, 174 F.3d 1016, 1018 (9th Cir. 1999) (noting that "[t]he constitutionality of agency drug testing regulations is reviewed *de novo*.").

158.    In particular, the OHA does not have the ability to consider the validity of an SBA regulation. *See* **Ex. D** (OHA Order on Plaintiff's Motion for Discovery in its appeal of its first-draw PPP loan denial) (the Administrative Law Judge in Plaintiff Gold Club's first draw OHA appeal specifically stating "[n]othing in the Administrative Procedures Act, the Small Business Act, or SBA regulations gives OHA the ability to consider the validity of an SBA regulation"); 13 C.F.R. § 134.102.

159.    Nevertheless, the SBA's administration of the PPP purports to require Plaintiff to first seek review by the OHA before moving to federal court. *See* 134 C.F.R. § 134.1201(d). Plaintiff did this and preserved its constitutional challenges, however, to the extent that any of the challenges brought herein were not preserved, Plaintiff discusses the futility exception to the exhaustion requirement.

160.    The Supreme Court has acknowledged "a futility exception to exhaustion requirements." <u>Carr</u>, 593 U.S. at 93. As stated by the Supreme Court, "[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested." <u>Id.</u>

161.    Pursuant to the Special OHA Rules, Plaintiff that has been denied 2PPP Loan forgiveness filed an appeal with the OHA.

162.    Unlike normal "court" appeals, the actual appeal brief in the OHA, where the appellant argues the factual and legal merits of its appellate claims, must be filed as part of the appellant's initial submissions and *before* the appellant has received the administrative record from the SBA which documents (or purports to document) the SBA's reasoning for its decision. *See* 13

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

C.F.R. §§ 134.1202(a) (noting the 30-day timeline from receipt of the FLRD to file an appeal petition); 134.1204(a) (noting the content requirements for an appeal petition, which specifically includes "[a] full and specific statement as to why the [FLRD] is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations"); 134.1204(b) (noting an appeal may be dismissed if it does not contain the required information); 134.1206 (requiring the OHA judge to issue a Notice and Order to "establish[] a deadline for production of the administrative record and specify[] a date by which SBA may respond to the appeal," after the appeal has been filed); 134.1207(a) (noting that the "administrative record will be due 20 calendar days after issuance of the Notice and Order"); 134.1207(b) (discussing the required contents of the administrative record, which, apparently, does *not* include "all documents pertaining to the appellant," only those the SBA deems "relevant" to its consideration when making the FLRD "or that were before SBA at the time of the" FLRD); 134.1208(b) (noting SBA has 45 calendar days to respond to the appeal petition after issuance of the Notice and Order).

163.    The administrative records involving Plaintiff, filed by the SBA in the OHA *after* Plaintiff submitted its brief on the merits, was comprised of 951 pages. Other OHA ARs the undersigned's firm is familiar with exceed 6,000 pages.

164.    Regardless of the length of the administrative record, OHA appellants are only provided 10 days to review the entire administrative record and to then file with the OHA any objections to the contents thereof. 13 C.F.R. §§ 1207(a) (noting that the administrative record is due "20 calendar days after issuance of the Notice and Order"); 1207(e) (noting that objections "to the administrative record must be filed with OHA and served on SBA no later than 30 days after the issuance of the Notice and Order," and allowing for an additional 10 calendar day extension "from the date SBA is required to file the administrative record" "[i]f additional time to file the administrative record was requested").

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

165.    After receipt of the administrative record, an OHA appellant has no unconditional right to submit further briefing in support of its position and to place the contents, or lack thereof, of the administrative record in context to the appellate arguments that had previously been made by the appellant. 13 C.F.R. § 134.1208(e) ("Generally, a reply to a response is not permitted unless the Judge directs otherwise.").

166.    Although an OHA appeal is purportedly to be based upon the administrative record applicable to that particular appeal, Plaintiff's, and others Shafer & Associates, P.C. firm is familiar with, AR contained numerous redactions (through simply "blacked out" text) without any further explanation.

167.    As a result of the redactions to the administrative record, as noted above, Plaintiff was not provided with a full record of the documentation pertaining to its administrative appeal; it still, after objections to the AR, does not know the full contents of the AR that was used against it—setting aside, of course, the additional evidence SBA was permitted to bring at the last minute via the Declaration of Sigmund Pannu—to justify denial of its loan forgiveness application. It was simply impossible for Plaintiff to file full and substantive objections to those portions of the AR that it simply have not seen.

168.    As noted above, Plaintiff filed a motion seeking discovery as Plaintiff felt that was essential for the proper consideration of its OHA appeal and for the proper adjudication of any such ruling by a federal court. The motion also requested that the responses to the discovery sought be included in the administrative record for such appeal. The discovery motion

169.    In order to demonstrate the unconstitutional nature of the Special OHA Rules, Plaintiff has attached the discovery motions it filed in its OHA Appeal (**Exs. D**, **G**, and **N**).

170.    Plaintiff's (first and second draw loan appeals) were assigned to Richard Ambrow, who is an administrative law judge from the Department of Health and Human Services and who

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

normally handles appeals dealing with Medicare claims.

171.    The discovery motions, *e.g.*,   **Ex. N**, laid out in elaborate detail the discovery being sought and the legal and factual reasons why that discovery was essential to the full adjudication of Plaintiff' legal and factual claims. In addition, the motion contained a document production request that specifically identified the documents requested, as well as a deposition notice of the SBA that listed each area of inquiry. To the extent possible, the discovery requests followed the format of the Federal Rules of Civil Procedure (the Special OHA Rules not including any discovery format rules), and in particular the deposition notice provisions of FRCP 30(b)(6).

172.    The discovery motion filed in Plaintiff's OHA appeals specifically asserted that the denial of such a motion would be a flagrant denial of Plaintiff's fundamental due process rights. [*See, e.g.,* **Ex. N**, at ¶ 63]. The motion also stated Plaintiff's concern that the SBA would argue in court that the court's consideration of the Plaintiff's claims would be limited to the administrative record contained in the OHA (hence the need for the discovery sought), and that the response of the SBA to such motion would permit counsel for the SBA to address the appellant's concern. [Id., ¶ 14].

173.    Mr. Ambrow denied Plaintiff's discovery motion on April 23, the same day as its submission, and before counsel for SBA filed any response.  In another OHA matter before Mr. Ambrow, he denied a nearly identical motion brought on behalf of that OHA appellant within three hours of its filing and before any counsel for SBA had even been assigned.

174.    Plaintiff's discovery motion was denied on the basis that no discovery was permitted in the OHA on appeals relating to PPP loans. The OHA's order denying discovery, however, does not address the impact upon the Plaintiff's due process rights as a result of the lack of such discovery other than containing a comment regarding the lack of authority of the OHA to "consider the validity of an SBA regulation." **Ex. O**.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

43                                   Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

175.   As a result of the expedited denial, Plaintiff was deprived of a response by the SBA as to whether the SBA will contend that subsequent court review of an OHA decision is limited to the facts contained in the formal administrative record prepared by the SBA.

176.   Further demonstrating the unconstitutional nature of the Special OHA Rules is the fact that in Plaintiff's OHA Appeal, SBA sought and was permitted to add evidence to support the Second FLRD that was not contained in the administrative record and to do so, SBA contends that it has the authority to withdraw an FLRD at any point in time and reissue after updating the administrative record. In other words, SBA can amend the administrative record at whim, while the Plaintiff cannot and also cannot take discovery.

177.   In Plaintiff's appeal of the First FLRD, SBA produced a 920-page AR. Plaintiff obtained an extension of time to object to that AR.

178.   Following the production of the AR in Plaintiff's appeal of the First FLRD and its appeal of the Second FLRD, the attorneys and accountants of Plaintiff began reviewing the AR in order to be able to submit to the OHA any necessary objections thereto in the timeframes as established by the Special OHA Rules and the scheduling orders issued by the OHA adjudicator. This required Plaintiff to incur thousands of dollars, and in some circumstances tens of thousands of dollars, in professional fees in furtherance of undertaking steps that are purported to be necessary in order for Plaintiff to be able to comply with the Special OHA Rules.

179.   As Plaintiff was preparing objections to the AR in in the appeal of the First FLRD, SBA filed its motion to dismiss, which the OHA granted the same day.

180.   That motion to dismiss the OHA appeal of Plaintiff's first appeal of the denial of its 2PPP Loan forgiveness request was based upon the fact that the SBA had withdrawn, on January 3, 2024, the FLRD on appeal. In the motion, the SBA contended that it had done so:

. . . because it determined that it is necessary to complete a further review of the Loan.

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

This review will include, but is not limited to, additional requested information submitted with the Appeal.

[**Ex. I**, at p. 2 (citations omitted)].

181.     As a result of SBA's actions described in the preceding few paragraphs, Plaintiff incurring significant costs in terms of professional fees to undertake the necessary steps to file objections to the AR; all when SBA had already withdrawn or knew it would withdraw the First FLRD.

182.     Under the Special OHA Rules, a party to an appeal is given 15 days to respond to a motion. 13 C.F.R. § 134.211(c), which is expressly incorporated into the Special OHA Rules via 13 C.F.R. § 134.1201(h). Irrespective of that regulation and without permitting Plaintiff to respond to the motion to dismiss, Mr. Ambrow granted SBA's motion to dismiss it filed in Plaintiff's first appeal of SBA's denial of its 2PPP Loan forgiveness application the *same day* it was filed. [*Compare* Order of Dismissal, Plaintiff Gold Club's second draw PPP appeal, **Exhibit J** (issued on January 9, 2024, *with* SBA's Motion to Dismiss Plaintiff Gold Club's second draw PPP appeal, **Ex. I** (filed on January 9, 2024)].

183.     As a direct and proximate result of the withdrawal by the SBA of its First and Second FLRDs and the OHA's subsequent dismissal of the appeals based thereon, Plaintiff needlessly expended significant sums of money in attorney fees and accountant fees in preparing and filing its initial OHA appeal documents, in preparing and filing its discovery motion, and in reviewing the administrative record in furtherance of filing objections thereto.

184.     Because Plaintiff's OHA appeal of its first draw PPP loan was still pending at that time, attorney Zachary Youngsma, representing Plaintiff in the OHA, emailed SBA's counsel, Lane Siems, to inquire whether the SBA intended to do the same thing in Plaintiff s first draw PPP loan appeal; that being withdrawing the FLRD and seeking dismissal of the appeal.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

45                                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

185.    In response to the email of Mr. Youngsma, attorney Siems stated, in an email of January 11, 2024, that "[a]t this time there are no plans to withdraw the remaining Gold Club's FLRD." [*See* email string attached as **Exhibit T**].[3] As a result, Plaintiff's attorneys and accountant were required to continue and complete their review of the SBA's claimed administrative record for the purposes of filing objections thereto, and Plaintiff was required to pay their fees for such work.

186.    SBA, however, changed its mind because on February 6, 2024, attorney Siems emailed Mr. Youngsma informing him that SBA was "currently taking another look at this loan and there is a good likelihood that the FLRD gets pulled." Attorney Siems and Mr. Youngsma obtained an additional extension for Plaintiff to file its objections to the administrative record in Plaintiff's OHA appeal of its first draw PPP loan.

187.    On February 27, 2024, at 12:54 p.m., in response to an email from Mr. Youngsma inquiring as to whether the SBA had made a decision on whether it would withdraw the FLRD issued in Plaintiff's first draw PPP loan or not, attorney Siems emailed Mr. Youngsma a copy of a three (3) page motion to dismiss Plaintiff's first draw appeal based on SBA's decision to withdraw the FLRD, which was accompanied by a three (3) page declaration in support thereof. Attorney Siems' email stated that he would "file [the Motion] here shortly." A true and accurate copy of that email exchange is attached hereto as **Exhibit U**.

188.    Seven minutes later, at 1:01 pm on February 27, 2024, Mr. Youngsma received an email from the OHA stating that a new filing had been added to Plaintiff's first draw appeal, which was the motion to dismiss that attorney Siems had sent to Mr. Youngsma seven minutes earlier. Roughly four hours later, at 5:25 pm, Mr. Youngsma received two emails from the OHA; one stating

---

[3] On February 6, 2024, Mr. Siems emailed Mr. Youngsma informing him that SBA is "currently taking another look at this loan and there is a good likelihood the FLRD gets pulled[.]" That prediction came true on February 27, 2024, when SBA filed a motion to dismiss the appeal stating that it had withdrawn the FLRD under appeal.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

that a filing had been added to the appeal and one stating that a decision had been rendered in the appeal.

189.    The order granting SBA's motion to dismiss Plaintiff's first draw appeal is two pages long, is signed by Mr. Ambrow, and is accompanied by a one-page Notice of Appeal Rights and Procedures.

190.    On January 31, 2024, Plaintiff received, in regard to its second draw PPP Loan, the Second FLRD; this time the reasons for the denial were only based on the Prurience Regulation and all references related to affiliation or size were deleted. **Ex. K**.

191.    As noted earlier, Plaintiff timely appealed the Second FLRD.

192.    SBA has done a very similar routine with other OHA appellants that SBA alleges are affiliated with Plaintiff and to other entities the Shafer & Associates, P.C. firm has filed OHA appeals for. The routine involves issuing an initial FLRD on whatever basis, withdrawing it after the appellant expends significant sums compiling the appeal and reviewing a voluminous AR, having the OHA grant the accompanying motion to dismiss in such short order that the appellant has no opportunity to respond, and then reissuing another FLRD either on a new basis or the same basis with little additional justification.

193.    The disparate actions of the SBA as reflected in its conduct regarding Plaintiff's OHA appeals demonstrate the lack of reasoned decision making and completely arbitrary and capricious way, and indeed the vindictive and retaliatory nature, that the SBA is treating Plaintiff.

194.    Given the history of the clients of the Shafer & Associates, P.C. law firm with the SBA as detailed above, the constitutional claims of those OHA appellants, including Plaintiff, that have had their FLRD's withdrawn, and their OHA appeals dismissed, are nevertheless capable of repetition yet evading review (exemplified by Plaintiff's OHA appeals). Moreover, the claims of Plaintiff under the Equal access to Justice Act dictate that dismissal of Plaintiff's OHA appeals does

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

47                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

not moot out their claims. And, given the history of the SBA regarding PPP loans as set forth above, those clients, including Plaintiff, that have had their OHA appeals dismissed can *certainly* be subject to FLRD denials in the future and therefore further OHA proceedings (again, as is specifically exemplified by the SBA's actions in regard to Plaintiff's second draw PPP loan).

### FACTS AND LAW RELATING TO THE PRURIENCE REGULATION

195.    The actual text of the Prurience Regulation, adopted by the SBA via 61 Fed. Reg. 3226, and which is now lodged at 13 C.F.R. § 120.110(p) states:

The following types of businesses are ineligible [for SBA business loans]:

* * *

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature[.]

(Clarification added).

196.    28 U.S.C. § 2201 is inapplicable to Plaintiff's facial attack on the Prurience Regulation because, as described herein, Defendants persist in enforcing this unlawful regulation in a manner that affects Plaintiff; namely, to deny the grant of or forgiveness of PPP loans. <u>Deanda v. Becerra</u>, 645 F. Supp. 3d 600, 615 (N.D. Tex. 2022) ("Plaintiffs claims accrue continually as Defendants persist in enforcing unlawful statutes or agency rules in a manner that affects Plaintiff" such that "Section 2401(a) is inapplicable to [the plaintiff's] claims.").

197.    The Prurience Regulation defines neither the term "prurient" nor the phrase "prurient sexual nature."

198.    Prior to the Pandemic, the term "prurient" had, in the published case law of this nation, one singular legal definition and that was under the legal standards for "obscenity."

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

48                                          Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

199.    The constitutional criteria for legal obscenity—meaning expression that falls outside of the protections of the First Amendment—require determinations by the trier of fact of whether:

The average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;

Applying contemporary community standards, the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; and

A reasonable person would find that the work lacks serious literary, artistic, political, or scientific value.

These standards derive from three Supreme Court cases: Miller v. California, 413 U.S. 15, 24 (1973); Smith v. United States, 431 U.S. 291, 300 n.6 (1977); and Pope v. Illinois, 481 U.S. 497, 500-01 & n.3 (1987).

200.    The Supreme Court has held that each element of the three-part test of obscenity set forth in the paragraph immediately above must be satisfied before expression can be found to be obscene and therefore beyond the protections of the First Amendment. *See* Reno v. ACLU, 521 U.S. 844, 872 (1997).

201.    The phrase "prurient appeal" under the obscenity standards has been defined, through other Supreme Court precedents, to mean a shameful, morbid, or unhealthy interest in sex. The "shameful or morbid" standard was first articulated in Roth v. United States, 354 U.S. 476, 487 n.20 (1957), and the "unhealthy" aspect was added in Brockett v. Spokane Arcades, 472 U.S. 491, 498-99 (1985).

202.    These constitutional standards of obscenity, as articulated in Miller, Smith, Pope, Roth, and Brockett, and in particular that of prurient appeal, are collectively referred to hereinafter simply as the "Miller Test."

203.    In Brockett, the Court was clear to point out what would *not* be considered to be "prurient." In noting that the Roth standard should not be construed to extend obscenity to expression

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

that invoked merely "lustful thoughts," or that appealed to "normal, healthy sexual desires," the Court observed that the government may not outlaw expression which, "taken as a whole, does no more than arouse, 'good, old fashioned, healthy' interest in sex." Brockett, 472 U.S. at 498-99 (quoting the opinion being reversed there; J-R Distributors, Inc. v. Eikenberry, 725 F.2d 482, 492 (9th Cir. 1984)).

204.    Most importantly for the legal matters here, the DOJ, which will certainly represent the SBA in this action, filed an amicus brief in the Supreme Court in the Brockett case where it recommended to the Supreme Court the concepts that it, the DOJ, contended would satisfy expressive materials being "prurient." Specifically, the DOJ argued that the Washington State statutory definition of "prurient" as meaning "that which incites lasciviousness or lust" was "plainly authorized by the decisions of this [the Supreme] Court." [Brief for the United States as Amicus Curiae, Brockett v. Eikenberry, No. 84-28, No. 84-148 (1984), https://www.justice.gov/sites/default/files/osg/briefs/1984/01/01/sg840109.txt#:~:text=The%20 court%20stated%20that%20the,69a). (last visited Feb. 13, 2024; clarification added)].[4] Again, the Supreme Court specifically rejected, in its Brockett decision, this argument of the DOJ.

205.    For reasons that will become abundantly clear to this Court in the later summary judgment motion practice in this action, and irrespective of the Supreme Court's rejection of the DOJ's concept of "prurience" as set forth in the Brockett decision, the SBA wants to define, and has attempted to define in Pandemic funding litigation (as discussed below), "prurient" under the Prurience Regulation as being *anything but* the constitutional standard set forth in the Miller Test.

206.    Shortly after the enactment of the SBA Act, the SBA adopted, through regulation, what became known as the "opinion molder rule," which precluded funding through the SBA for any

---

[4] The online amicus brief of the DOJ contains no page numbering for specific citation purposes.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

businesses involved in the "creation, origination, expression, dissemination, propagation or distribution of ideas, values, thoughts, opinions or similar intellectual property." Business Loan Policy—Media Policy Rule, 59 Fed. Reg. 15872 (Proposed, Apr. 5, 1994) (quoting 13 C.F.R. § 120.101-2(b) (1993)).

207.    In Mission Trace Investments, Ltd. V. SBA, 622 F. Supp. 687 (D. Colo. 1985), the opinion molder rule was declared to be unconstitutional under the First Amendment to the United States Constitution, and the SBA was enjoined from enforcing it.

208.    The SBA appealed only the district court's award of damages in the Mission Trace case, which the appellate court vacated on the basis of sovereign immunity in a ruling under the name of Ascot Dinner Theatre, Ltd v. SBA, 887 F.2d 1024 (10th Cir. 1989); with that ruling acknowledging, however, that the holding of the district court finding the opinion molder rule unconstitutional was not being disturbed. Id. at 1026.

209.    Then, on July 15, in 1994, the SBA formally repealed, through the Media Policy Rule, 59 Fed. Reg. 36042 (Jul. 15, 1994), the opinion molder rule.

210.    In response thereto, Congress undertook actions to permit the SBA to decline the funding of businesses engaged in certain expressive activities.

211.    In particular, through and from the enactment of the Small Business Reauthorization and Amendments Act of 1994, Pub. L. 103-403 (1994), which was signed into law on October 22, 1994, the SBA Act itself (and irrespective of any promulgated regulations) has precluded loans to businesses that have been involved in the sale or distribution of *legal obscenity*.

212.    Specifically, Congress, through the Small Business Reauthorization and Amendments Act of 1994, Pub. L. 103-403, § 611 (1994), enacted what is now codified at 15 U.S.C. § 633(e) (hereinafter simply "§ 633(e)"), which applies to any type of SBA assistance—grant, loan, or otherwise—provides in relevant part:

1

(e) Prohibition on provision of assistance

Notwithstanding any other provision of law, the Administration is prohibited from providing any financial or other assistance to any business concern or other person engaged in the production or distribution of any product or service that has been determined to be obscene by a court of competent jurisdiction.

(Emphasis added).

213.    When first proposed by the House of Representatives, this provision contained no requirement of a determination by a *court* of legal obscenity. The Senate included such a requirement, and the legislative history of the conciliation conference provides as follows:

The conferees adopted the Senate provision with the clarification that any materials in question must have been judicially determined, in either a civil or criminal action, to be legally obscene under the prevailing constitutional standards in order for the ban to apply.

H.R. CONF. REP. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455 [**Exhibit V**].

214.    The related Senate Report explains why this Bill was changed before adoption:

During Committee markup of the bill, Senator Pressler offered an amendment, that was unanimously accepted by the Committee, to prohibit the Administration from providing assistance to businesses engaged in the production and distribution of obscene products or services. The amendment was offered in response to the Administration's recent repeal of its "opinion molder rule" promulgated in 1953. Under that rule, the Administration, with few exceptions, could not provide assistance to small businesses engaged in the "creation, origination, expression, dissemination, propagation or distribution of ideas, values, thought, opinions or similar intellectual property, regardless of medium, form, or content" (13 CFR 120.101–2(b)). With the repeal of the rule, businesses such as newspapers, movie theaters, radio stations and bookstores now are eligible for Administration assistance. However, members of the Committee were concerned a blanket repeal of the rule would allow businesses involved in the production and distribution of obscene products and services to seek Administration support and that the agency would have no means by which to deny such loans or other assistance. Senator Pressler's amendment makes it clear the Administration is not authorized to provide any assistance to those engaged in "obscene" businesses (and thus not entitled to First Amendment protection) as defined by the U.S. Supreme Court.

S. Rep. No. 103-332 § 612, at 3430-31 (1994).

215.    Accordingly, as of October 1994, SBA funding to businesses that engage in the sale of expressive materials or entertainment could only be precluded, through § 633(e), upon an actual adjudication of legal obscenity under the "prevailing constitutional standards"; those being the

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

52

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

criteria articulated through the <u>Miller</u> Test.

216.    Consequently, prior to the enactment of the PPP, the SBA Act had, through § 633(e), conceptualized the term "prurient" in accordance with <u>Roth</u> and <u>Brockett</u>; that being a shameful, morbid, and/or unhealthy interest in sex.

217.    Shortly following adoption of the CARES Act and during the evening of the day before the PPP loan application portals were to open, the SBA issued two "Final Interim Rules," one of which claimed to incorporate into the newly created PPP the laundry list of regulatory eligibility exclusions for "normal" Section 7(a) SBA loans found at 13 C.F.R. § 120.110. 85 Fed. Reg. 20811, 20812 (Interim Final Rule, Apr. 15, 2020). This included the Prurience Regulation. The publication of this Interim Final Rule resulted in a number of businesses across the country filing federal lawsuits seeking to enjoin the SBA from applying the Prurience Regulation to Pandemic funding programs.

218.    One such action was filed by the undersigned firm, which, in fact, resulted in the issuance of an injunction prohibiting the use of the Prurience Regulation when evaluating the PPP applications of those plaintiffs. *See* <u>DV Diamond Club of Flint v. SBA</u>, 459 F. Supp.3d 943, 954-962 (E.D. Mich. 2020) (the "DV Diamond Club" action).

219.    In another such action, filed in the Southern District of Texas, the DOJ (representing the SBA) admitted in open court that the Prurience Regulation was vague.   At a preliminary injunction hearing, the following colloquy occurred:

> THE COURT:    Who's to determine what's a prurient interest? You know, there's the famous, what is it, Potter Stewart opinion, you know, the pornography opinion that came out, what, in the '50s? I think Stewart was on the Court at that time. He said he can't define it but he knows it when he sees it? Are we in an area like that?
>
> MR. KINCHELOE    [Assistant United States Attorney; Attorney for the SBA]: It's vague, your Honor.

Transcript of Preliminary Injunction Hearing, D. Houston, Inc. v. SBA, 4:20-cv-02308 (S.D. Tex.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

4862-2357-8321, v. 2

Sept. 11, 2020), ECF 27, at p. 29:23-25 – 30:1-4 (clarification added) [**Exhibit W**].

220.    The concession set forth in the paragraph immediately above caused the court to then note, prior to enjoining the Prurience Regulation: "Okay. But that's one of their complaints is that it's vague." [**Ex. W**, at p. 30:5-6 (cleaned up)].

221.    In other pandemic-related lawsuits, the SBA's conflicting and ever-changing explanations as to the meaning of the term "prurient" approached the comical.

222.    For example, at an April 30, 2020, hearing in the <u>DV Diamond Club</u> action in Michigan, the SBA took the position that "prurient" meant "tending to arouse a 'lustful' or, you know 'lascivious' interest in sex." "The SBA's interpretation of 'prurient,' simply refers to, you know, invoking an avert [*sic*] strong sexual interest." Transcript of Apr. 30, 2020, Hearing on Motion for TRO and/or Preliminary Injunction, <u>DV Diamond Club</u>, 20-cv-10899 (E.D. Mich. Jun 12, 2020), ECF 54, at 8:18-19; 58:5-6, excerpts attached as **Exhibit X**.

223.    However, in the <u>Camelot Banquet Case</u> in Wisconsin, the SBA took the position that:

> Businesses that feature live dancing explicitly intended to be "erotic" undoubtedly falls within the plain language of the regulation.

> *       *       *

> The SBA has restricted government-backed small-business loans to businesses engaged in live erotic performances for nearly twenty-five years.

Government Motion for Emergency Stay, <u>Camelot Banquet</u>, 2:20-cv-00601 (E.D. Wis. May 4, 2020), ECF 30, at pp. 4, 8, excerpts attached as **Exhibit Y**.

224.    In fact, the SBA continued to maintain, in its pleadings on appeal from the District Court's ruling in the <u>Camelot Banquet</u> case (which ultimately resulted in the injunction ruling found at <u>Camelot Banquet Rooms, Inc. v. SBA</u>, 458 F.Supp.3d 1044, 1055-1057 (E.D. Wisc. 2020)) that the term "prurient" simply meant "erotic." Specifically, this is what the SBA stated in its emergency motion for stay to the Seventh Circuit:

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

The SBA's restriction on providing Section 7(a) loans to businesses that present live erotic performances dates back to 1996. *See* 61 Fed. Reg. 3226, 3240 (Jan. 31, 1996) (final rule); 60 Fed. Reg. 64356, 64360 (Dec. 15, 1995) (proposed rule).

\* \* \*

Businesses that feature live dancing explicitly intended to be "erotic" undoubtedly fall within the plain language of the regulation.

\* \* \*

The SBA has restricted government-backed small-business loans to businesses engaged in live erotic performances for nearly twenty-five years.

Government's Emergency Motion for Stay Pending Appeal, Camelot Banquet Rooms, Inc. v. U.S. Small Business Admin., 20-1729 (7th Cir. May 4, 2020), Doc 4, at p. 4, 13, 17, excerpts attached as **Exhibit Z**.

225.    And in its reply brief on that motion to the Seventh Circuit, the SBA again asserted, in regard to the Prurience Regulation:

Plaintiffs' businesses— "Gentlemen's Clubs" which present live nude and semi-nude dance performances that are explicitly intended to be erotic—thus fall within the heart of the regulation's scope.

\* \* \*

And although Congress explicitly lifted some of those restrictions in creating the Paycheck Protection Program, Congress did not lift or alter the SBA's longstanding restriction on loans to businesses that present live erotic performances.

\* \* \*

The SBA could reasonably determine that, since Congress has expressly barred it from providing financial assistance to businesses that provide "obscene" products and services, the agency's limited resources are best directed to subsidizing businesses other than those that, although not "obscene" in the legal sense, are nonetheless "sexually oriented" and explicitly intended to be erotic.

Government's Reply In Support of Its Motion for Stay Pending Appeal, Camelot Banquet Rooms, Inc. v. U.S. Small Business Admin., 20-1729 (7th Cir. May 11, 2020), Doc. 14, at pp. 5, 7, 8, excerpts attached as **Exhibit AA**.

226.    However, after then being confronted in the Michigan DV Diamond Club action that it—the SBA—had articulated a different standard for the term "prurient" in the Camelot Banquet

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

55                                      Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

Wisconsin case (i.e., "erotic"), and after the federal judge in the <u>DV Diamond Club</u> matter pointed out that such a standard (erotic) would render the Prurience Regulation to be unconstitutionally overbroad, the SBA retreated to its previous position that "prurient" meant "lascivious or lustful." Transcript of May 5, 2020 Continued Hearing for Motion for TRO and/or Preliminary Injunction, <u>DV Diamond Club</u>, 20-cv-10899 (E.D. Mich. Jun. 12, 2020), ECF 55, at 41:18 – 43:7, excerpts attached as **Exhibit BB**.

227.    In a second action involving Camelot Banquet, the SBA's Associate General Counsel for Litigation, Eric Benderson ("Benderson"), submitted a declaration. Declaration of Eric S. Benderson, <u>Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.</u>, No.: 2:21-cv-00447 (E.D. Wis. 2021), Doc. 21-7 [**Exhibit CC**, hereafter, the "Benderson Declaration"].

228.    In the Benderson Declaration, Benderson declared that "[s]ince September 23, 1982, [he] [] served as the Associate General Counsel for Litigation in the Office of General Counsel at the U.S. Small Business Administration[.]" [**Ex. CC** at ¶ 1].

229.    In the Benderson Declaration, Benderson stated that the term "prurient" was used "in its colloquial sense, simply to mean, for example, lustful, lascivious, or arousing of sexual interest or desire, which is equated in many dictionaries with the term 'erotic.'" [**Ex. CC** at ¶ 10].

230.    Neither Benderson nor the Benderson Declaration were subjected to cross-examination.

231.    Under the SBA's interpretation of the word "prurient," it means absolutely nothing in context of the Prurience Regulation.

232.    While the Prurience Regulation uses the phrase "prurient sexual nature," given how the SBA in litigation, and in particular through the Benderson Declaration, has construed the meaning of the word "prurient," the SBA is literally and completely reading the word "prurient" out of the

Prurience Regulation and asserting that the Prurient Regulation applies, rather, to entertainment that is merely of a "sexual nature."

233.    Nothing issued by the SBA for the notice and comment period related to the adoption of the Prurience Regulation would have alerted a person of ordinary intelligence that the Prurience Regulation would be construed and applied by the SBA in the manner as set forth in the paragraph immediately above.

234.    Under the SBA's interpretation of the word "prurient" in the Prurience Regulation as set forth above, and because of the Regulation's incorporation into the PPP via the Incorporating Statute, § 633(e) of the SBA Act, in incorporating all three prongs of the <u>Miller</u> Test and the definitions of the words and phrases contained therein as dictated by the Supreme Court, including but not limited to the term "prurient," is rendered superfluous.

235.    To date, in all of the litigation with the SBA in which the undersigned firm has been involved, the SBA has not produced a single *document*, created either before the beginning of the Pandemic or after, that establishes that the SBA had or has some type of uniform, objective, established, and articulated standard for defining and applying the word "prurient," or the phrase "prurient sexual nature," under the Prurience Regulation.

236.    Nevertheless, this is what Associate General Counsel Benderson stated under penalty of perjury in the Benderson Declaration filed in the second Camelot Banquet case:

> SBA has *never interpreted* 13 C.F.R. § 120.110(p)'s "prurient sexual nature" standard as equivalent to prurience as that term is specifically defined for purposes of the obscenity test established under <u>Miller v. California</u>, 413 U. S. 15 (1973).

**[Ex. CC**, ¶ 10 (emphasis added)].

237.    Benderson's statement in the Benderson Declaration, as quoted in the paragraph immediately above, is not true.

238.    Benderson's statement in the Benderson Declaration, as quoted in paragraph 236,

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

was not true when made.

239.    Upon information and belief, Benderson's statement in the Benderson Declaration, as quoted in paragraph 236, was known by Benderson to be untrue when made.

240.    The SBA issues, from time-to-time, what are known as "Standard Operating Procedures" ("SOP's") to provide guidance to lending banks in administering the SBA's various loan and grant programs.

241.    Those SOPs that address the Prurience Regulation seem to be constantly and ever-changing, as discussed immediately below.

242.    A limited number of the SOP's can be found on the SBA's website.

243.    Those online SOP's only go back, however, to 2008. SBA Website, https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs (last visited Feb. 14, 2024).

244.    That earliest applicable SOP available on the SBA's website is SOP 50 10 (5) (the numbering itself acknowledging that earlier SOP's exist), which is listed on SBA's website as "Version 5." SBA Website, https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs (last visited Feb. 14, 2024).

245.    In SOP 50 10 (5), the SBA states that:

The lender must consider whether the *nature and extent* of the sexual component causes it, *in view of community standards*, to be prurient.
SOP 50 10 (5), § B, Ch. 2(3)(d)(3)(xvi) (effective August 1, 2008) (emphasis added) [**Exhibit DD**].

246.    By using the phrase "community standards" in SOP 50 10(5), the SBA publicly represented that it was in fact *directly borrowing at least* the concept of "prurient appeal" from the Miller Test (the first element of which, again, requiring an evaluation of "whether the 'average person, *applying contemporary community standards*,' would find that the work, taken as a whole,

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

appeals to the prurient interest").[5]

247.    By using the phrase "extent" in SOP 50 10(5), it also appears that the SBA was applying the concept of "taken as a whole" (i.e., "the "extent"); which is also a component of the "prurient appeal" prong of the <u>Miller</u> Test.

248.    By using the word "nature" in SOP 50 10(5), it further appears that the SBA was applying the "patent offensiveness" prong of the <u>Miller</u> Test, (the second element of which, again, requires evaluating whether "[a]pplying contemporary community standards, the work depicts or describes, in a patently offensive way, the sexual conduct specifically defined by applicable state law"),[6] as well for use under the Prurience Regulation.

249.    While lending banks had been advised under previous SOP's to review the "nature and extent" of the "sexual component," the SBA has produced nothing to date in litigation, or otherwise, explaining what such banks were/are to look for, and thus what the SBA would look for, that would render expression to be "prurient" and therefore the business at issue then not subject, arguably (in the SBA's view), to funding.

250.    Regardless of the fact that the SBA used from *at least* 2008 the concept of "community standards" by which to judge the potential prurient nature of expression, Plaintiff is unaware of any documents from the SBA identifying *which community standards* the "nature and extent" of the sexual component of the expression is or was to be measured by (obscenity jurisprudence allowing, among other things, a state or local standard and, at least prior to the invention of the Internet, rejecting a national standard).

251.    Just prior to the beginning of the Pandemic, the SBA issued another SOP which, while

---

[5] <u>Miller</u>, 413 U.S. at 24 (emphasis added) (quoting <u>Kois v. Wisconsin</u>, 408 U.S. 229, 230 (1972), quoting <u>Roth</u>, 354 U.S. at 489).

[6] <u>Miller</u>, 413 U.S. at 24.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

omitting specific reference to the community standards, still stated:

> The Lender must consider whether the *nature and extent* of the sexual component causes the business activity to be prurient.

SOP 50 10 5(K) § B, Ch. 2(III)(A)(15)(b) (effective April 1, 2019) (emphasis added) [**Exhibit EE**].

252.    SOP 50 10 5(K) further stated that if the lender found that an applicant may have a business aspect of a prurient sexual nature, then, prior to submitting an application or requesting a loan number, the lender was to "document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation" (*i.e.*, Mr. Benderson) "for a final agency decision on eligibility." SOP 50 10 5(K) §B, Ch. 2(III)(A)(15)(c) [**Id.** at p. 114].

253.    SOP 50 10 5(K) also provided an email address that lenders were to use to send "supporting documentation the Associate General Counsel for Litigation." That email address is PSMReview@sba.gov, which, upon information and belief, is an abbreviation for "prurient sexual material review." SOP 50 10 5(K) §B, Ch. 2(III)(A)(15)(c) [**Id.**].

254.    From the very language of SOP 50 10 5(K) quoted in the two paragraphs immediately above, from entries in various administrative records that members of the undersigned law firm have reviewed as part of numerous OHA appeals, and from further investigations undertaken by the undersigned attorneys, including but not limited to discussions with members of local SBA loan boards, Plaintiffs understand and believe that Benderson is the person at the SBA who makes final loan and forgiveness determinations when application of the Prurience Regulation is involved, and is the person behind the denials at issue in this lawsuit.

255.    Effective just last August 1, 2023, the SBA promulgated yet another SOP, SOP 50 10 7, that notes the Prurience Regulation as being relevant to loan ineligibility but deletes any reference to the "nature and extent of the sexual component" of the expression. *See* SOP 50 10 7 § A, Ch. 1(F)(14) (effective August 1, 2023) [**Exhibit FF**]. That SOP, however, still provided the

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

60    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

PSMReview@sba.gov email discussed, *supra*, for the submission by the lender of an "analysis and supporting documentation for an applicant that may have a business aspect of a prurient sexual nature." Id. at Appendix 12.

256.    SOP 50 10 7 did not, however, last unchanged for very long. On November 15, 2023, the SBA promulgated yet another SOP, SOP 50 10 7.1, that *completely deleted* any reference to a lending bank having to send to the SBA an analysis and documentation of a business that may have an aspect of a prurient sexual nature. *See* SOP 50 10 7.1 [**Exhibit GG**].

257.    Regardless of all of the above, the SBA continues, as reflected by its actions leading to this suit, to impose whatever definitions and understandings it so chooses at any given time in order to utilize the Prurience Regulation to deny loan forgiveness or to "reevaluate" granted and even forgiven PPP loans and to then deny eligibility.

258.    The SBA is doing those things listed in the previous paragraph even though recent case law demonstrates the unconstitutionality of the SBA's *interpretation* of the word "prurient."

259.    For example, various courts have recently addressed Florida's anti-"drag show" statute, which uses some of the same words or their equivalents that the SBA has contended apply to language used in the Prurience Regulation.

260.    Specifically, in HM Florida-ORL, LLC v. Griffin, 2023 WL 4157542, at *6-9 (M.D. Fla. June 23, 2023), the United States District Court in Florida found that because the statute did not define the phrases "lewd conduct" and "lewd exposure of prosthetic or imitation genitals or breasts," it was most likely unconstitutionally vague and overbroad, and enjoined Florida from enforcing the statute.

261.    Florida requested a partial stay of the district court's injunction, which the Eleventh Circuit denied. 2023 WL 678-5071, No. 23-12160 (11th Cir. October 11, 2023).

262.    This should be compared to the comments of the federal judge in the DV Diamond

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

61                                    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

<u>Club</u> case referenced above who had pointed out that virtually all dictionaries equate lewdness to lasciviousness; a term that the SBA and the DOJ have *specifically* claimed in litigation to describe how *they* define the term "prurient" in the Prurience Regulation.

263.    In addition, in enjoining the Florida anti-drag show statute, the district court pointed out that the failure to define certain terms rendered the law unconstitutional. "These ambiguities, especially those pertaining to 'lewd' conduct and exposure of prosthetics, represent a material departure from the established obscenity outline set forth in <u>Miller</u>." 2023 WL 4157542, at * 7.

264.    This is the exact same argument that the undersigned firm has repeatedly made in litigation across the country involving the Prurience Regulation.

265.    Yet, irrespective of these rulings by the Florida district court and the Eleventh Circuit, and regardless of the fact that the Supreme Court recently denied an application for stay of the district court ruling (144 S. Ct. 1, No. 23A366 (November 16, 2023)), the SBA continues to apply the Prurience Regulation in a manner that has the exact same constitutional failings.

## FACTS RELATED TO *HOW* THE SBA IS ACTUALLY DETERMINING WHETHER A BUSINESS SHOULD BE DENIED A LOAN, OR LOAN FORGIVENESS, UNDER THE PRURIENCE REGULATION

266.    The Prurience Regulation purports to make businesses ineligible for certain SBA loans if those businesses "present live performances of a prurient sexual nature," or "[d]erive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature[.]" 13 C.F.R. § 120.110(p).

267.    A rational person might then believe that before declaring a business ineligible for a PPP loan under the Prurience Regulation, representatives of the SBA would *actually view* the "live performances," or the "products or services," or the "presentation of depictions or displays," in order to determine whether *they* are of a prurient sexual nature.

268.    Further support for that belief comes from the Benderson Declaration [**Ex. CC**],

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

wherein Benderson stated that when making eligibility determinations under the Prurience Regulation, "SBA will review the potential borrower's website." [Id. at ¶ 9].

269.    A rational person as described above, however, would be wrong.  The SBA does not actually view the live performances it deems to be prurient.

270.    A of the Declaration of Sigmund Pannu and the AR in Plaintiff's Appeal document that SBA investigators making eligibility determinations just as Benderson stated in his declaration, as quoted in the paragraph immediately above.

271.    Plaintiff's Second FLRD (and the AR in the appeal thereof as well as other documents filed in that appeal) further indicate that eligibility determinations under the Prurience Regulation were made through "open source research" (i.e., online searches).

272.    Plaintiff's Second FLRD and OHA's May 14 Order further indicate that SBA and the OHA make eligibility determinations under the Prurience Regulation based on revenue figures attributed to "dances," without ever viewing the subject dances.

273.    Plaintiff's Second FLRD and OHA's May 14 Order further indicate that SBA and the OHA make eligibility determinations under the Prurience Regulation based on revenue figures attributed to "door admissions" without ever viewing the products or services offered at Plaintiff's establishment.

274.    The OHA's decision in Plaintiff's appeal of the Second FLRD demonstrates that the OHA merely relied on online searches and preconceived notions as to what products and services are offered in Plaintiff's establishment based on advertisements SBA attributes to Plaintiff in order to conclude Plaintiff violated the Prurience Regulation.

275.    Similarly, in an Affiliate Narrative Worksheet Mohney et al #127 presumably made as a result of Plaintiff's 2PPP Loan, SBA determined in a conclusory and circular fashion, that a number of businesses, including Plaintiff, were ineligible for loans under the Prurience Regulation

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

based upon Google Earth photographs claiming that such "Google Search/Maps identifies [Plaintiff and others as] ineligible businesses of a prurient nature. Excerpts of Plaintiff's second draw PPP OHA appeal AR are attached hereto as **Exhibit HH**.

276.    Here are just a few examples of the photos contained in that Affiliate Narrative Worksheet Mohney et al #127, taken from Plaintiff's second draw PPP OHA Appeal's AR. The narrative included in the AR for Plaintiff's first draw PPP loan; however, included many of these same photos and more, and also appeared in a number of administrative records reviewed by the undersigned Shafer & Associates firm, that are claimed by the SBA to justify ineligibility



determinations:

Ln# 1765097300 Deja Vu Entertainment Enterprises of Minnesota Inc. Per Google Address, 315 N Washington Ave, Minneapolis, MN 55401

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104



Ln# 8573497005 DV Kalamazoo LLC 1336 RAVINE RD KALAMAZOO MI 49004



Ln# 1522057305 Gold Club SF LLC 650 Howard St, San Francisco, CA 94105

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

65    Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

Ln# 7560437005 Paradise Bar of Tampa, LLC 6087 E State Rd 60 Tampa FL

[**Ex. HH**].

277.    Those photos are literally the basis that the SBA states that it used to determine loan and forgiveness ineligibility—and which the OHA affirmed in the May 14 Order—under the Prurience Regulation for Plaintiff; until, of course, SBA proffered the Declaration of Sigmund Pannu after the AR had already been filed in the OHA Appeal.

278.    Upon information and belief, at no time did any representatives of the SBA ever view any of the "live performances," or "products or services," or "presentations of depictions or displays," at Plaintiff's business, as applicable, in order to determine whether they *themselves* (the performances, products, services, and/or presentations) were of a prurient sexual nature (whatever *that* may mean) prior to deciding to issue the First FLRD or Second FLRD.

279.    Upon information and belief, when applying the Prurience Regulation to Plaintiff's PPP Loans, no representative of the SBA actually viewed the "live performances," or the "products or services," or the "presentation of depictions or displays" at Plaintiff's business.

## **STANDARD OF REVIEW**

280.    Pursuant to the APA, 5 U.S.C. §§ 701-06, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be… (A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2),

281.    Section 704 of the APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C § 704.

282.    OHA's May 14 Order denying Plaintiff's appeal meets the requirements of final agency action subject to review.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

283.   OHA's May 14 Order denying Plaintiff's appeal meetings the requirements of final agency action to review.

284.   A court "is not to substitute its judgment for that of the agency." <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983). However, a "court must satisfy itself that the agency 'considered the relevant factors and explained the facts and policy concerns on which it relied, and [that] those facts have some basis in the record.'" <u>Larry Grant Const. v. Mills</u>, 956 F. Supp. 2d 93 (D.D.C 2013) (quoting <u>Nat'l Treasury Employees Union v. Horner</u>, 854 F.2d 490, 498 (D.C. Cir. 1988)).

285.   All exhibits attached hereto are incorporated by reference as though full set forth herein.

## <u>COUNT I</u>

**THE PRURIENCE REGULATION AND INCORPORATING STATUTE VIOLATE THE FIRST AMENDMENT**

286.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

287.   In raising its First Amendment challenges to the Prurience Regulation and the Incorporating Statute here, Plaintiff asserts not only its own rights but also the rights of its owners and employees; the entertainers who perform on its premises; the customers who have in the past frequented, and intend in the future to frequent, Plaintiff's premises in order to be able to observe First Amendment protected entertainment and otherwise engage in First Amendment-protected activities.

288.   The Prurience Regulation and the Incorporating Statute violate, and are contrary to, the First Amendment to the United States Constitution, both on their face and in particular as applied by the SBA to Plaintiff, for numerous and various reasons, including but not limited to:

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

a.    They are impermissible viewpoint-based restrictions on speech and expression that are not necessary to any compelling governmental interest and are not sufficiently narrowly tailored;

b.    They are impermissible content-based restrictions on speech and expression that are not necessary to any compelling governmental interest and are not sufficiently narrowly tailored;

c.    As agreed by the SBA in D. Houston Inc. v. United States Small Bus. Admin., 579 F. Supp. 3d 959, 968, ¶ 34 and also n.10 (S.D. Tex. 2020), the Prurience Regulation is a content-based restriction of speech and expression;

d.    As admitted by the SBA, they invidiously and impermissibly discriminate against disfavored speech and expression and are being applied by the SBA particularly against speech and expression that its personnel find to be disagreeable;

e.    They are being applied by SBA personnel in a discriminatory fashion in retaliation for the nature of the speech and expression engaged in by Plaintiff and others SBA claims are associated with Plaintiff and against Plaintiff and/or its principals for having participated in other litigation against the SBA arising out of Pandemic funding programs;

f.    The SBA is applying them in an unconstitutional fashion in that SBA personnel do not even review the expression at issue and are reaching eligibility determinations in a conclusory fashion;

g.    They violate, as applied to the First Amendment, the doctrine of unconstitutional conditions by conditioning the receipt of PPP loans upon applicants not engaging in entertainment that the SBA opines, determines, or assumes without any analysis whatsoever, to be of a "prurient sexual nature" (whatever that may mean);

h.    They effectuate, in order to obtain PPP loans, an impermissible prior restraint

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

on speech and expression;

i.      Even if deemed to be content-neutral (which they cannot under any existing precedent), they do not further any permissible and important governmental interest;

j.      They fail to conform to the constitutional standards regarding obscenity;

k.      As applied by the SBA, they are in conflict with § 633(e) of the SBA Act and render that provision to be meaningless and a nullity; thereby depriving speech and expression-related businesses of the First Amendment protections that Congress imposed by enacting § 633(e);

l.      They deprive fundamental First Amendment protections to speech and expression-related businesses in SBA funding decisions imposed by Congress through § 633(e) of the SBA Act and, in clear violation of fundamental canons of statutory construction, render § 633(e) to be meaningless and a nullity;

m.      They impermissibly single out, and are being applied to single out, First Amendment-protected businesses for denial of PPP benefits without justification;

n.      The exceptions of loan eligibility under the PPP have been legislatively and administratively gerrymandered so that such exceptions now, under the modified PPP, apply to disfavored speech and expression and to little else, in other words, the exceptions swallow the rule;

o.      They are unconstitutionally vague on their face and as applied by the SBA, particularly under the enhanced vagueness standards that are imposed upon laws that impact upon speech and expression-related activities, because: 1) they do not provide standards that can be readily understood by persons of common intelligence; 2) they do not provide clear guidance to governmental officials so that no ad hoc, arbitrary, or discriminatory enforcement decisions are made; and 3) they do not contain the full three standards of obscenity as

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

established under the <u>Miller</u> Test which the Supreme Court has acknowledged in <u>Reno v. ACLU</u>, 521 U.S. 844, 865, 871, 873-74 (1997) are necessary in order for the individual components of the <u>Miller</u> Test not to be impermissibly vague;

       p.     They are impermissibly and substantially overbroad in relation to their plain legitimate sweep; and

       q.     They, as applied by the SBA, have been impermissibly manipulated beyond defining the contours of the PPP funding program to impermissibly defining its recipients (i.e., not Plaintiffs).

289.    As a direct and proximate result of the unconstitutional aspects of the Prurience Regulation and the Incorporating Statute, as well as the Defendants', and their delegates', application and enforcement of them against Plaintiff and its interests, all as referenced above, Plaintiff as well as its owners and employees, the entertainers who perform on its premises and the customers who frequent its establishment, have suffered, and/or will suffer, and/or will continue to suffer irreparable injuries including but not limited to financial collapse, business ruination, and/or the inability to present, view, and/or engage in First Amendment-protected speech, expression, and entertainment.

290.    Because of the First Amendment rights being infringed upon by Defendants' application and enforcement of the Prurience Regulation and the Incorporating Statute, all as referenced in detail above, this Court has the authority to declare the rights and the legality of actions of the various parties and should do so here. It should also permanently enjoin enforcement by the SBA of the Prurience Regulation and the Incorporating Statute.

291.    Plaintiff does not have adequate remedies at law because, among other reasons, it cannot recover damages against the Defendants as a result of sovereign immunity. Because of the same, because Plaintiff has a reasonable likelihood of success on the merits in regard to its claims asserted herein, because Plaintiff will suffer irreparable injury if this Court does not enjoin

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

enforcement of the Prurience Regulation and the Incorporating Statute, because the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should enter a preliminary injunction in order to protect Plaintiff's fundamental rights at issue here.

292.    For the reasons set forth above, Plaintiff is entitled to judicial review in regard to the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT II

### THE PRURIENCE REGULATION AND INCORPORATING STATUTE VIOLATE THE FIFTH AMENDMENT

293.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

294.    The Regulation and the Incorporating Statute violate, and are contrary to, the Fifth Amendment to the United States Constitution, both on their face and particularly as applied by the SBA to Plaintiff, for numerous and various reasons, including but not limited to:

    a.    They treat establishments presenting certain forms of live performance dance entertainment, such as Plaintiff, differently from establishments presenting other forms of entertainment or no entertainment at all, for no compelling, important, or rational reason;

    b.    They treat, under the PPP, businesses that employ persons who work at establishments presenting certain forms of entertainment, as demonstrated by Plaintiff, unequally and differently from businesses that employ workers at establishments presenting other forms of entertainment or no entertainment at all, for no compelling, important, or rational reason;

    c.    They violate the occupational liberty rights of Plaintiff, its employees,

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

and the entertainers who perform on its premises;

   d.  They violate the substantive and procedural Due Process rights of Plaintiff, its employees, and the entertainers who perform on its premises;

   e.  They treat, have been used to treat, and could continue to treat in the future, similarly situated persons and businesses differently without justification;

   f.  They deny, for the reasons set forth in detail above, Plaintiff of equal protection under the laws of the United States of America;

   g.  They treat First Amendment-protected businesses differently by waiving other prior statutory and administrative expression-related exclusions to PPP eligibility under the SBA Act that applied to certain expressive businesses and business concerns, while denying the affected Plaintiff's access to PPP benefits via denial of loan forgiveness;

   h.  They treat First Amendment-protected businesses differently from non-constitutionally protected businesses by waiving, for PPP purposes, other prior statutory and administrative exclusions to PPP eligibility under the SBA Act that applied to certain non-constitutionally protected businesses, while continuing to deny Plaintiff access to PPP benefits;

   i.  They are being arbitrarily and capriciously applied by the Defendants; and

   j.  They are impermissibly vague on their face and as applied Plaintiff for the reasons discussed above.

  295. As a direct and proximate result of the unconstitutional aspects of the Prurience Regulation and the Incorporating Statute, as well as the Defendants', and their delegates', application and enforcement of them against Plaintiff and its interests, all as referenced above, Plaintiff, as well

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

as its owners and employees, the entertainers who perform on its premises and the customers who frequent its establishment, have suffered, and/or will suffer, and/or will continue to suffer irreparable injuries including but not limited to financial collapse, business ruination, and/or the inability to present, view, and/or engage in First Amendment-protected speech, expression, and entertainment.

296.    Because of the Fifth Amendment rights being infringed upon by Defendants' application and enforcement of the Prurience Regulation and the Incorporating Statute, all as referenced above, this Court has the authority to declare the rights and the legality of actions of the various parties and should do so here.

297.    Plaintiff does not have adequate remedies at law because, among other reasons, it cannot recover damages against the Defendants as a result of sovereign immunity. Because of the same, because Plaintiff has a reasonable likelihood of success on the merits in regard to its claims asserted herein, because Plaintiff will suffer irreparable injury if this Court does not enjoin enforcement of the Prurience Regulation and the Incorporating Statute, because the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should enter a preliminary injunction in order to protect Plaintiff's fundamental rights at issue here.

298.    For the reasons set forth above, Plaintiff is entitled to judicial review with regard to the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT III

### THE SBA'S INTERPRETATION(S) OF THE PRURIENCE REGULATION AND THE INCORPORATING STATUTE ARE INVALID

299.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

300.    The SBA and/or the Administrator's defining of "prurient" as "lustful," "lascivious," an "overt strong sexual interest," "erotic," and/or "arousing of strong sexual interest or desire" under the Prurience Regulation is not a legitimate or lawful exercise of the SBA's or its Administrator's authority, and is otherwise invalid under the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* and applicable law because, among other reasons:

a.    Such construction of the term "prurient" is inconsistent with the SBA Act, particularly § 633(e) thereof, the SOP's that the SBA has issued, and the legal definition of the term "prurient" as articulated by the United States Supreme Court;

b.    Such construction of the term "prurient" is not a reasonable interpretation of the term;

c.    Such construction of the term "prurient" renders that very term of the Prurience Regulation irrelevant, superfluous, and of no effect since the term "erotic," which the SBA has asserted in litigation to be what the term "prurient" is meant to convey, is generally understood to mean a tendency to arouse sexual desire or excitement, which is *already* included in the Prurience Regulation through the phrase "prurient *sexual* nature,"

d.    Such construction, for the reasons set forth in the subsection immediately above, demonstrates that the SBA deceived the general public in the notice and comment process by not conveying just what the SBA was attempting to exclude from funding by way of the Prurience Regulation;

e.    Such construction of the term "prurient" is arbitrary, capricious, an abuse of discretion in light of, and is directly contrary to, the SBA Act, and in particular § 633(e) thereof;

f.    Such construction of the term "prurient" is arbitrary, capricious, and an abuse of discretion in light of, as a result of, and as exemplified by, the ever-changing SOP's issued

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

by the SBA that discuss, and that purport to provide guidance to Lending Banks in regard to, the Prurience Regulation;

g.    Such construction of the term "prurient" would render § 633(e) of the SBA Act meaningless, void, a nullity, and of no effect;

h.    Such construction of the term "prurient" is not supported by the Prurience Regulation's findings because in promulgating the Prurience Regulation the SBA specifically acknowledged the <u>Miller v. California</u>, 413 U.S. 15 (1983) test of obscenity, with which the Prurience Regulation does not comply, *see* Business Loan Programs, 60 Fed. Reg. 64356, 64360 (Proposed, Dec. 15, 1995);

i.    Such construction of the term "prurient" is not supported by current constitutional standards of obscenity which, as articulated by the United States Supreme Court, defines and operationalizes the term "prurient" to mean a "shameful or morbid" and "unhealthy" interest in sex, as opposed to "normal, healthy sexual desires";

j.    Such construction of the term "prurient" is not supported by current constitutional standards of obscenity which, as articulated by the United States Supreme Court, reject "lustful" as satisfying the constitutional standard for prurient appeal; and

k.    Such construction of the term "prurient" is inconsistent with Congress's goals under the CARES Act and the Appropriations Act.

301.    Because, as applied by the SBA and/or the Administrator, the Prurience Regulation and the Incorporating Statute are inconsistent with the SBA Act, as well as the broad form of relief provided by the CARES Act and the Appropriations Act, all as referenced above, this Court has the authority to declare the rights and the legality of actions of the various parties and should do so here.

302.    Plaintiff does not have adequate remedies at law because, among other reasons, it cannot recover damages against the Defendants as a result of sovereign immunity. Because of the

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

same, because Plaintiff has a reasonable likelihood of success on the merits in regard to its claims asserted herein, because Plaintiff will suffer irreparable injury if this Court does not enjoin enforcement of the Prurience Regulation and the Incorporating Statute, because the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should enter a preliminary injunction in order to protect Plaintiff's fundamental rights at issue here.

303.    For the reasons set forth above, Plaintiff is entitled to judicial review with regard to the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT IV

### OTHER INVALIDITY OF THE PRURIENCE REGULATION

304.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

305.    The Prurience Regulation is not a legitimate or lawful exercise of the SBA's or the Administrator's authority as applied to first and second draw PPP loans, and is otherwise invalid under the Administrative Procedure, 5 U.S.C. § 551 *et seq.* and applicable law because, among other reasons:

a.    It fails to serve any lawful or legitimate regulatory purpose for the SBA or the Administrator as to first and second Draw PPP loans or otherwise;

b.    The SBA and/or the Administrator failed to make a sufficient record, or to otherwise articulate a satisfactory explanation, as to why the Prurience Regulation is a rational or reasonable response to a problem that the agency was charged with solving under the CARES Act or the Appropriations Act, and in particular the first and second draw PPP loans;

c.    As applied to Plaintiff by the SBA and/or the Administrator, the Prurience

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

Regulation conflicts with the decision to award first and/or second draw PPP Loans to Plaintiff in the first place because, among other reasons, only eligible entities were to receive PPP loans;

   d. As applied to Plaintiff by the SBA and/or the Administrator, Defendants have used the Prurience Regulation to engage in unreasoned decision making by utterly failing to explain how Defendants allegedly violated the Prurience Regulation in the FLRDs; and

   e. Applying the Prurience Regulation at the PPP loan forgiveness stage is in excess of SBA's jurisdiction because, pursuant to the loan forgiveness statute, 15 U.S.C. § 633m, only eligible recipients are entitled to loan forgiveness and eligible recipient is defined as simply "the recipient of a covered loan," 15 U.S.C. § 636(a)(10), and Plaintiff received covered loans.

  306. Because the Prurience Regulation and the Incorporating Statute, as applied by the SBA and/or the Administrator, are inconsistent with the SBA Act, as well as the broad form of relief provided by the CARES Act and the Appropriations Act, all as referenced above, and because they do not, again as applied and enforced by the SBA and/or the Administrator, represent a rational and reasonable response to a problem that the agency was charged with solving, this Court has the authority to declare the rights and the legality of actions of the various parties and should do so here.

  307. Plaintiff does not have adequate remedies at law because, among other reasons, it cannot recover damages against the Defendants as a result of sovereign immunity. Because of the same, because Plaintiff has a reasonable likelihood of success on the merits in regard to its claims asserted herein, because Plaintiff will suffer irreparable injury if this Court does not enjoin enforcement of the Prurience Regulation and the Incorporating Statute, because the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should enter a preliminary

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

injunction in order to protect Plaintiff's fundamental rights at issue here.

308.    For the reasons set forth above, Plaintiff is entitled to judicial review with regard to the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT V

### THE SPECIAL OHA RULES VIOLATE THE FIFTH AMENDMENT

309.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

310.    The Special OHA Rules violate, and are contrary to, the Fifth Amendment to the United States Constitution, both on their face and particularly as applied by the SBA to Plaintiff, for numerous and various reasons, including but not limited to:

    a.    They deny both substantive and procedural due process in that, among other ways, they:

        i.    Provide for no form of hearing whatsoever;

        ii.    Preclude any form of discovery whatsoever, including discovery that may be essential to the later adjudication of the appellant's claims in court following conclusion of the administrative appeal proceedings;

        iii.    Preclude the submission by the appellant of any documents, material, or information that is not included in the formal "administrative record" created solely by the SBA, while, seemingly, permitting SBA to submit documents, material, or information that is not included in the formal "administrative record," as evidenced by SBA's responses to the OHA appeals of Meacham and Gold Club;

        iv.    Do not permit the appellant to meaningfully participate in the creation of the formal "administrative record" upon which the administrative appeal is to be solely based;

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

v.    Do not provide sufficient time frames as a matter of right for the appellant to respond to and filed objections concerning the formal "administrative record" created solely by the SBA;

vi.    Do not permit the appellant any ability whatsoever to confront or challenge the evidence that the SBA purports to possess against it;

vii.    Require the appellant to file its substantive "appeal brief" before it has been provided with the "administrative record" purportedly created by the SBA as the basis of rendering its adverse decision against the appellant;

viii.    Permit the SBA to produce such heavily redacted "administrative records" that it is virtually impossible for the appellant to understand the full basis for the SBA's decision or, more importantly, to either file adequate objections to such "record" or to be able to seek leave to be able to respond to the contentions as contained in the purported "administrative record";

ix.    Permit SBA to broadly assert claims of privilege without an avenue for an appellant to challenge such claims and without explanation of the claim of privilege as SBA has done in OHA appeals of businesses it claims are affiliated with Plaintiff;

x.    Provide no right of the appellant to file a "merits" or "reply" brief once it has been provided with the "administrative record" purportedly created by the SBA as the basis of rendering its adverse decision against the appellant;

xi.    Are not applied consistently by the OHA and the personnel who act as adjudicators; and

xii.    As applied by the OHA, provide no substantive protections for the appellant whatsoever, including even requiring that the OHA follow its own Special

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

OHA Rules when to do so might be to the advantage of the appellant;

b.    They violate the occupational liberty rights of Plaintiff, its employees, and the entertainers who perform on its premises;

c.    In contrast to the OHA appellate rules that apply to all other forms of appeals from SBA decisions, they treat, have been used to treat, and could continue to treat in the future, similarly situated persons and businesses differently without justification;

d.    They deny, for the reasons set forth in detail above, Plaintiff of equal protection under the laws of the United States of America;

e.    They are being arbitrarily and capriciously applied by the Defendants; and

f.    They are impermissibly vague on their face and as applied to Plaintiff for the reasons discussed above.

311.    As a direct and proximate result of the unconstitutional aspects of the Special OHA Rules, as well as the Defendants', and their delegates', application of them against Plaintiff and its interests, all as referenced above, Plaintiff, as well as its owners and employees, the entertainers who perform on its premises and the customers who frequent its establishment, have suffered, and/or will suffer, and/or will continue to suffer irreparable injuries including but not limited to financial collapse, business ruination, the inability to present, view, and/or engage in First Amendment-protected speech, expression, and entertainment, and the denial of their due process rights.

312.    Because of the Fifth Amendment rights being infringed upon by Defendants' application and enforcement of the Special OHA Rules, all as referenced above, this Court has the authority to declare the rights and the legality of actions of the various parties and should do so here.

313.    Plaintiff does not have adequate remedies at law because, among other reasons, it cannot recover damages against the Defendants as a result of sovereign immunity. Because of the same, because Plaintiff has a reasonable likelihood of success on the merits in regard to its claims

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION

4862-2357-8321, v. 2

asserted herein, because Plaintiff will suffer irreparable injury if this Court does not enjoin enforcement of the Special OHA Rules, because the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should enter a preliminary injunction in order to protect Plaintiff's fundamental rights at issue here.

314.    For the reasons set forth above, Plaintiff is entitled to judicial review with regard to the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT XIII

### OTHER INVALIDITY OF THE SPECIAL OHA RULES

315.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

316.    The Special OHA Rules are not a legitimate or lawful exercise of the SBA's or the Administrator's authority as applied to first and second draw PPP loans, and are otherwise invalid under the Administrative Procedure, 5 U.S.C. § 551 *et seq.* and applicable law because, among other reasons:

g.    They fail to serve any lawful or legitimate regulatory purpose for the SBA or the Administrator as to first and second Draw PPP loans or otherwise;

h.    For the reasons set forth in the previous Count, they are contrary to constitutional rights and privileges;

i.    For the reasons set forth in the previous Count, they fail to provide adequate procedure; and

j.    The SBA and/or the Administrator failed to make a sufficient record, or to otherwise articulate a satisfactory explanation, as to why the Special OHA Rules are a rational or reasonable response to a problem that the agency was charged with solving under the

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

1    CARES Act or the Appropriations Act, and in particular the first and second Draw PPP loans.

2    317.    Because Special OHA Rules are inconsistent with the SBA Act, as well as the broad

3    form of relief provided by the CARES Act and the Appropriations Act, all as referenced above, and

4    because they do not represent a rational and reasonable response to a problem that the agency was

5    charged with solving, this Court has the authority to declare the rights and the legality of actions of

6    the various parties and should do so here.

7    318.    Plaintiff does not have adequate remedies at law because, among other reasons, it

8    cannot recover damages against the Defendants as a result of sovereign immunity and because

9    resolution of their claims in court may be constrained by the OHA proceedings undertaken pursuant

10   to and informed by the Special OHA Rules. Because of the same, because Plaintiff has a reasonable

11   likelihood of success on the merits in regard to their claims asserted herein, because Plaintiff will

12   suffer irreparable injury if this Court does not enjoin enforcement of Special OHA Rules, because

13   the Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction, and

14   because the balance of harms tilts in favor of Plaintiff and against the Defendants, this Court should

15   enter a preliminary injunction in order to protect Plaintiff's fundamental rights at issue here.

16   319.    For the reasons set forth above, Plaintiff is entitled to judicial review with regard to

17   the actions and inactions of the Defendants pursuant to 5 U.S.C. § 702.

## COUNT XIV

### ESTOPPEL

320.    Plaintiff incorporates herein by reference each and every paragraph above as though
fully set forth herein.

321.    Through the PPP, the regulations promulgated thereto, other documents issued and/or
distributed by the SBA, and the loan Documents, the SBA itself and through its Lending Banks
created a system of representations and promises to borrowers establishing that if borrowers

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

(including Plaintiff), during certain critical periods of the Pandemic, retained their employees so that they would not be required to avail themselves of other governmental assistance programs such as welfare and unemployment compensation and otherwise used PPP loan proceeds only for the Permitted Uses, their PPP loans would be forgiven (collectively the "Promises").

322.    The Promises are definite and of definite terms, which the SBA would expect the Plaintiff to rely on.

323.    The Promises reasonably induced reliance thereon by Plaintiff.

324.    Plaintiff relied on the Promises of PPP loan forgiveness to its detriment, and no longer possess any of the loan proceeds from its PPP loans; having used the amounts sought via Plaintiff's PPP loan forgiveness applications exclusively for the Permitted Uses.

325.    Defendants had actual, or at least constructive knowledge, of the facts relating to the eligibility or ineligibility of Plaintiff for its PPP loans at the time of the granting of such loan and the disbursement of the loan proceeds.

326.    Defendants, at no time prior to the issuance of Plaintiff's PPP loans, did Defendants disclose the fact that they believed Plaintiff was ineligible for the PPP loans.

327.    In fact, Defendants concealed the material fact that SBA would contend that Plaintiff was ineligible or such loans and/or forgiveness thereof.

328.    The concealment by Defendants of the material facts referenced immediately above was done with the intention that Plaintiff would nevertheless utilize the loan proceeds for the PPP loans for the Permitted Uses, retain its staff thereby, ensure, as a result thereof, that Plaintiff's employees would not be required to seek other forms of governmental financial assistance as a result of Pandemic-related closures, and otherwise abide by the requirements of the PPP.

329.    At no time prior to the developments leading to the filing of this action did Plaintiff know, or have had the means of knowing, that the Defendants would seek to deny Loan forgiveness.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

330.    As a result of the above, Plaintiff detrimentally relied upon the actions, inactions, representations, and concealments of the Defendants by obtaining the Loan Proceeds, using the portions to which they seek forgiveness of exclusively for the Permitted Uses, and otherwise abiding by the terms of the PPP.

331.    For the reasons set forth above, Defendants should be estopped from denying Loan eligibility and Loan forgiveness of the Plaintiff PPP Loan at issue.

## COUNT XV

### ATTORNEYS' FEES AND COSTS

332.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

333.    For all of the reasons set forth above, the positions of the SBA in taking the actions as detailed herein were not substantially justified.

334.    There are no special circumstances that make an award of fees and other expenses in favor of Plaintiff and against the Defendants unjust.

335.    For the reasons set forth above, Plaintiff is entitled to an award of attorneys' fees and costs against the Defendants pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to 5 U.S.C.§ 504, and as otherwise permitted by law.

## COUNT XVI

### JUDICIAL REVIEW / OTHER INVALIDITY OF THE MAY 14 ORDER AND UNDERLYING FLRD

336.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

337.    Under 5 U.S.C. § 706, this Court must hold unlawful and set aside final agency action found to be not in accordance with the law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

338.    For the reasons set forth herein, including but not limited to, the invalidity of the Prurience Regulation and the lack of due process caused by the Special OHA Rules, SBA's Decision, and the May 14 Order are not in accordance with the law.

339.    Under 5 U.S.C. § 706, this Court must compel agency action unlawfully withheld.

340.    In denying forgiveness of Plaintiff's 2PPP Loan on the bases provided by SBA and affirmed by the May 14 Order, in addition to the reasons set forth in Plaintiff's OHA Appeal of the Second FLRD, which are incorporated by reference as though fully set forth herein, SBA has unlawfully withheld agency action,—forgiveness of the portions of Plaintiff's 2PPP Loan that it applied for forgiveness of—required by law, including, 15 U.S.C. § 636m(b), 15 U.S.C. § 636(a)(37)(J)(ii-iii); and 85 Fed. Reg. 20811, 20814-15; 86 Fed. Reg. 3712, 3722.

341.    The May 14 Order is arbitrary and capricious, in excess of statutory jurisdiction and authority, a, unwarranted by the facts upon which it is based, and contrary to Plaintiff's constitutional rights for the numerous and various reasons set forth herein and in the preceding Counts as well as those reasons set forth in Plaintiff's OHA Appeal of the Second FLRD, which are incorporated by reference as though fully set forth herein, and also including, but not limited to.

342.    Plaintiff further seeks judicial review pursuant to the APA, 5 U.S.C. § 701, *et seq.*, of any and all decisions issued by the SBA so reviewable on all issues so reviewable.

343.    As a result of SBA's Decision and OHA's May 14 Order affirming the same, Plaintiff risks legal consequences including, but not limited to, accusations of making false statements on its PPP loan application and forgiveness application paperwork.

344.    For these reasons and those set forth elsewhere herein, Plaintiff is entitled to a reversal of SBA's Decision and OHA's May 14 Order affirming SBA's Decision, and in their place an order granting forgiveness of Plaintiff's 2PPP Loan in the amount of $1,993,233.75.

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

85                                                                              Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

## COUNT XVII

### INJUNCTIVE RELIEF

345.    Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

346.    A PPP loan recipient's obligation to make payments on the loan is deferred during OHA proceedings.

347.    Because Plaintiff no longer has an OHA appeal for its 2PPP Loan, it is obligated and has begun making payments on the loan.

348.    If ultimately successful in this action, Plaintiff will be entitled to forgiveness of $1,993,233.75 of its 2PPP Loan; however, Plaintiff is unaware of any mechanism to recoup the monies already repaid to its lender on the 2PPP Loan.

349.    Plaintiff does not have adequate remedies at law because, among other things, it cannot, so far as it is aware, recover those funds already repaid to its lender. Because of the unconstitutionality of the Prurience Regulation and its application to Plaintiff by Defendants, all as outlined herein, Plaintiff has a reasonable likelihood of success on the merits in regard to its claims asserted herein. Further, Plaintiff will suffer irreparable injury if this Court does not enjoin Plaintiff's obligation to make payments on the 2PPP Loan during the pendency of this matter. Further, Defendants will not suffer any harm whatsoever by the entry of a preliminary injunction. Therefore, the balance of harms tilts in favor of Plaintiff and against the Defendants, and this Court should enter a preliminary injunction staying Plaintiff's obligation to make payments on the 2PPP Loan during the pendency of this matter.

350.    Alternatively, this Court should order that Defendants set aside funding in the amount of $1,993,233.75 during the pendency of this litigation so that, if Plaintiff is successful, SBA may remit the difference between $1,993,233.75 and what Plaintiff already paid back on the loan to

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

Plaintiff's Lender thereby making the lender whole and remit the remainder, representing the amounts Plaintiff already repaid on the loan, to Plaintiff, thereby making Plaintiff whole.

### **PRAYER FOR RELIEF**

351.    WHEREFORE, for the reasons set forth herein, Plaintiff prays for judgment against Defendants as follows:

A.    Declare that the Defendants are applying the Prurience Regulation (13 C.F.R. § 120.110(p)) and Incorporating Statute (15 U.S.C. § 636(37)(A)(iv)(III)(aa)) in an unconstitutional and/or illegal manner;

B.    Declare that the Prurience Regulation and Incorporating Statute are facially unconstitutional, and/or that the SBA's application of them here under the PPP is not a legitimate or lawful exercise of the SBA's or its Administrator's authority, and are otherwise invalid under the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* and applicable law;

C.    Enter both a preliminary and permanent injunction precluding the Defendants, as well as their employees, agents, and representatives, including the Lending Banks, from requiring that Plaintiff make payments on its 2PPP Loan until such a time as this Court is able to adjudicate the merits of these claims;

D.    As an alternative to the preceding paragraph, Order Defendants to set aside guaranteed funding in the amount of $1,993,233.75 during the pendency of this litigation;

E.    Order the Defendants, as well as their employees, agents, and representatives, including the Lending Banks, to grant loan forgiveness to Plaintiff for its 2PPP Loan in the amount of $1,993,233.75;

F.    Declare that the Special OHA Rules (13 C.F.R., Ch. I, Pt. 134, Subpart L), as applied to PPP loans, denies due process and therefore violates the First and Fifth Amendments to the United States Constitution, and/or that the SBA's application of them here under the PPP is not a legitimate

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

or lawful exercise of the SBA's or its Administrator's authority, and/or are otherwise invalid under the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* and applicable law;

G.      Enter both a preliminary and permanent injunction precluding the Defendants, as well as their employees, agents, and representatives, from applying the Special OHA Rules against Plaintiff, should Plaintiff be required to appear before the OHA with regard to a PPP loan in the future;

H.      Declare that the Defendants should be estopped from denying loan eligibility and forgiveness of Plaintiff's 2PPP Loan;

I.      Order Defendants, as well as their employees, agents, and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue using or applying the Prurience Regulation and the Incorporating Statute for any matters concerning PPP loans;

J.      Order Defendants, as well as their employees, agents, and representatives, to notify, as expeditiously as possible, the OHA to immediately discontinue using or applying the Special OHA Rules in regarding appeals concerning PPP loans;

K.      Enter an award of attorneys' fees and costs against the Defendants and in favor of Plaintiff pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to 5 U.S.C.§ 504, and as otherwise permitted; and

L.      Enter such other and further relief as this Court may deem to be just and proper in these circumstances.

Respectfully Submitted,

Dated: July 15, 2024                LONG & LEVIT LLP


    */s/ Douglas J. Melton*
DOUGLAS J. MELTON
SHANE M. CAHILL
Attorneys for Plaintiff
GOLD CLUB SF, LLC.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Dated: July 15, 2024                    SHAFER & ASSOCIATES, P.C.


                                        ___*/s/ Bradley J. Shafer*_____
                                        BRADLEY J. SHAFER
                                        ZACHARY M. YOUNGSMA
                                        Attorneys for Plaintiff
                                        GOLD CLUB SF, LLC.

                                        *Application for Admission Pro Hac Vice
                                        Forthcoming*

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel and pursuant to Fed. R. Civ. P. 38, hereby demand a trial by jury of any

issues so triable.

Dated: July 15, 2024                    LONG & LEVIT LLP


                                        ___*/s/ Douglas J. Melton*_____
                                        DOUGLAS J. MELTON
                                        SHANE M. CAHILL
                                        Attorneys for Plaintiff
                                        GOLD CLUB SF, LLC.

Dated: July 15, 2024                    SHAFER & ASSOCIATES, P.C.


                                        ___*/s/ Bradley J. Shafer*_____
                                        BRADLEY J. SHAFER
                                        ZACHARY M. YOUNGSMA
                                        Attorneys for Plaintiff
                                        GOLD CLUB SF, LLC.

                                        *Application for Admission Pro Hac Vice
                                        Forthcoming*

## FILER'S ATTESTATION

I hereby attest that I have on file all holographic signatures corresponding to any signatures

indicated by a conformed signature (/s/) within this e-filed document.

                                        _____
                                        DOUGLAS J. MELTON

LONG & LEVIT LLP
465 CALIFORNIA STREET
5TH FLOOR
SAN FRANCISCO
CALIFORNIA 94104

Case No.
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS UNDER THE
EQUAL ACCESS TO JUSTICE ACT, AND FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION
4862-2357-8321, v. 2