BRETT A. SHUMATE
Acting Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
ROSS SLAUGHTER
Trial Attorney (NC Bar No. 58086)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-616-8185
ross.m.slaughter@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLD CLUB SF, LLC, et al., | CASE NO. 3:24-cv-4241-LJC |
| Plaintiffs, | |
| v. | **NOTICE OF MOTION, DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT IN PART AND TO STRIKE JURY DEMAND, AND MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES** |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., | |
| Defendants. | Date: May 13, 2025 |
| | Time: 10:30 a.m. |
| | Place: San Francisco Courthouse, Courtroom G |
| | The Honorable Lisa J. Cisneros |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ISSUES TO BE DECIDED ..................................................................................................3

BACKGROUND ...................................................................................................................4

I.      Legal Framework ......................................................................................................4

        A.      SBA's § 7(a) Loan Program ..........................................................................4

        B.      The CARES Act and the PPP .......................................................................6

        C.      The First PPP IFR .........................................................................................7

        D.      The Economic Aid Act ..................................................................................7

        E.      Forgiveness and Review of PPP Loans .........................................................8

II.     This Litigation...........................................................................................................10

STANDARD OF REVIEW ................................................................................................14

ARGUMENT ......................................................................................................................15

I.      Plaintiffs' Claims Related to SBA's Affiliation Rules (Counts V to XI) Are Not Ripe. ..............15

        A.      Plaintiffs' Affiliation Claims Are Not Fit For Decision. ..............................16

        B.      Plaintiffs Will Experience No Cognizable Hardship From Delay....................19

II.     Plaintiffs' APA Claims Related to SBA's Affiliation Rules (Counts VII , VIII, X, and XI) Do Not Challenge Final Agency Action. ..................20

III.    Only Gold Club's Challenges Related to the Denial of Forgiveness on Its Second-Draw Loan Are Ripe. ..................22

IV.     Plaintiffs Fail to Plausibly Allege that the Exclusion of Prurient Businesses from the PPP Violates the First Amendment. ..................24

        A.      The Prurient Business Exclusion Is Not a Content- or Viewpoint-Based Regulation of Speech.  It Is a Permissible Limit on The Scope of a Government Subsidy...................25

        B.      The Prurient Business Exclusion Is Not an Unconstitutional Condition...........27

        C.      The Prurient Business Exclusion Is Not a Prior Restraint. .................................29

        D.      Congress Had a Rational Basis for the Prurient Business Exclusion. ................29

        E.      The Prurient Business Exclusion Need Not Conform to The Constitutional Standard for Obscenity. ..................31

F.     The Prurient Business Exclusion Is Not Unconstitutionally Vague. ..................................31

G.     Plaintiffs Have Not Plausibly Alleged that the Prurient Business Exclusion Is Being Applied to Plaintiffs in a Retaliatory Manner. .........................................................33

V.     Plaintiffs Have Not Plausibly Alleged the Prurient Business Exclusion Violates the Fifth Amendment.. ...................................................................................................................36

VI.    Plaintiffs' Challenge to the Statutory Bar on Injunctive Relief Against SBA Is Not Ripe. ............................................................................................................................................37

VII.   Counts XV and XVIII Should be Dismissed Because Requests for Attorneys' Fees and Injunctive Relief Are Not Causes of Action. ...........................................................38

VIII.  The Court Should Strike Plaintiffs' Jury Demand. ...........................................................39

CONCLUSION ..................................................................................................................................39

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Abbott Laboratories v. Gardner*,
4
    387 U.S. 136 (1967) ................................................................................................................. 15

5

*Acura of Bellevue v. Reich*,
    90 F.3d 1403 (9th Cir. 1996) ............................................................................................ 18, 21
6

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
7
    570 U.S. 205 (2013)................................................................................................. 27, 28, 29, 32

8

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
9
    504 F.3d 840 (9th Cir. 2007) ............................................................................................ 15, 16

10

*Alexander v. United States*,
    509 U.S. 544 (1993) ............................................................................................................... 29
11

*Ameren Servs. Co. v. FERC*,
12
    893 F.3d 786 (D.C. Cir. 2018) ............................................................................................... 18

13

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
14
    824 F.3d 858 (9th Cir. 2016) .................................................................................................. 34

15

*Ashcroft v. Iqbal*,
16
    556 U.S. 662 (2009) ............................................................................................................... 14

17

*Ass'n of Am. Med. Colleges v. United States*,
    217 F.3d 770 (9th Cir. 2000) ......................................................................................... *passim*
18

*Bell Atl. Corp. v. Twombly*,
19
    550 U.S. 544 (2007)............................................................................................................... 14

20

*Bennett v. Spear*,
21
    520 U.S. 154 (1997)............................................................................................................... 20

22

*Boquist v. Courtney*,
23
    32 F.4th 764 (9th Cir. 2022) ...................................................................................... 11, 34, 35

24

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
    149 F.3d 971 (9th Cir. 1998) .................................................................................................. 23
25

*California Dep't of Water Res. v. FERC*,
26
    361 F.3d 517 (9th Cir. 2004) .................................................................................................. 18

27

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
28
    24 F.4th 640 (7th Cir. 2022) ...................................................................................... *passim*

*Cammarano v. United States*,
    358 U.S. 498 (1959) ................................................................................................... 25

*Carr v. Saul*,
    593 U.S. 83 (2021) ..................................................................................................... 18

*City & Cnty. of San Francisco v. Garland*,
    42 F.4th 1078 (9th Cir. 2022) .................................................................................... 37

*City of Renton v. Playtime Theatres, Inc.*,
    475 U.S. 41, (1986) .................................................................................................... 30

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................... 19

*Clinton v. Acequia, Inc.*,
    94 F.3d 568 (9th Cir. 1996) ....................................................................................... 37

*Colwell v. HHS*,
    558 F.3d 1112 (9th Cir.2009) .................................................................................... 15

*Cota v. United States*, No. C,
    13-00576 JSW, 2013 WL 6234574 (N.D. Cal. Dec. 2, 2013) .................................. 38

*Ctr. for Fair Pub. Policy v. Maricopa Cty.*,
    336 F.3d 1153 (9th Cir. 2003) ................................................................................... 30

*Cunningham Energy, LLC v. Vesta O&G Holdings, LLC*,
    578 F. Supp. 3d 798 (S.D.W. Va. 2022) .................................................................. 38

*D. Houston Inc. v. U.S. Small Bus. Admin.*,
    579 F. Supp. 3d 959 (S.D. Tex. 2020) ..................................................................... 26

*Darby v. Cisneros*,
    509 U.S. 137 (1993) .............................................................................................. 18, 21

*Davenport v. Wash. Educ. Ass'n*,
    551 U.S. 177 (2007) ................................................................................................... 26

*Deja Vu-San Francisco LLC v. U.S. Small Bus. Admin.*,
    No. 20-CV-03982-LB, 2020 WL 6260010 (N.D. Cal. Sept. 11, 2020) .............. *passim*

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ....................................................................................... 5

*Engquist v. Or. Dep't of Agr.*,
    553 U.S. 591 (2008) ................................................................................................... 37

*EVIG, LLC v. Natures Nutra Co.*,
   685 F. Supp. 3d 991 (D. Nev. 2023).................................................................. 38

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993)........................................................................................ 30

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)........................................................................................ 16

*Gallinger v. Becerra*,
   898 F.3d 1012 (9th Cir. 2018)................................................................... 30, 36

*Gammoh v. City of La Habra*,
   395 F.3d 1114 (9th Cir. 2005).......................................................................... 30

*General Media Commc'ns v. Cohen*,
   131 F.3d 273 (2d Cir. 1997)....................................................................... 27, 33

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)........................................................................................ 31

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981).......................................................................................... 22

*Hartman v. Moore*,
   547 U.S. 250 (2006)........................................................................................ 34

*Haynie v. Veneman*,
   272 F. Supp. 2d 10 (D.D.C. 2003).................................................................. 39

*Heller v. Doe*,
   509 U.S. 312 (1993)................................................................................... 30, 37

*Horning v. SEC*,
   570 F.3d 337 (D.C. Cir. 2009)........................................................................ 24

*In re Aiken Cnty.*,
   645 F.3d 428 (D.C. Cir. 2011)........................................................................ 15

*In re Gateway Radiology Consultants, P.A.*,
   983 F.3d 1239 (11th Cir. 2020)..................................................................... 4, 6

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*,
   767 F.3d 912 (9th Cir. 2014).......................................................................... 24

*Jackson Water Works, Inc. v. Pub. Utilities Comm'n of State of Cal.*,
   793 F.2d 1090 (9th Cir. 1986)........................................................................ 30

*Jones v. L.A. Cent. Plaza LLC,*
    74 F.4th 1053 (9th Cir. 2023) ................................................................. 14

*Kahawaiolaa v. Norton,*
    386 F.3d 1271 (9th Cir. 2004) ................................................................ 37

*Keyishian v. Bd. of Regents Univ.,*
    385 U.S. 603– (1967) ............................................................................. 32

*Keyser v. Sacramento City Unified Sch. Dist.,*
    265 F.3d 741 (9th Cir. 2001) .................................................................. 35

*Leathers v. Medlock,*
    499 U.S. 439 (1991) ............................................................................... 26

*Lee v. Oregon,*
    107 F.3d 1382 (9th Cir. 1997) ................................................................ 19

*Lehman v. Nakshian,*
    453 U.S. 156 (1981) ............................................................................... 39

*Lorona v. Ariz. Summit L. Sch., LLC,*
    151 F. Supp. 3d 978 (D. Ariz. 2015) ...................................................... 39

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................... 38

*Matal v. Tam,*
    582 U.S. 218 (2017) ............................................................................... 22

*Mendocino Env't Ctr. v. Mendocino Cnty.,*
    192 F.3d 1283 (9th Cir. 1999) ................................................................ 34

*Miller v. California,*
    413 U.S. 15 (1973) ................................................................................. 31

*Mont. Env't Info. Ctr. v. Stone-Manning,*
    766 F.3d 1184 (9th Cir. 2014) ................................................................ 15

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ............................................................................... 25

*Nat'l Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998) ................................................................... 26, 32, 33

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ............................................................................... 15

*Nieves v. Bartlett*,
  587 U.S. 391, (2019) ................................................................................................ 34, 35

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) ........................................................................................ 15, 19, 22

*Ostrom v. O'Hare*,
  160 F. Supp. 2d 486 (E.D.N.Y. 2001) .................................................................... 33

*Paris Adult Theatre I v. Slaton*,
  413 U.S. 49 (1973) ...................................................................................................... 30

*Perry v. Sindermann*,
  408 U.S. 593 (1972) .................................................................................................... 34

*Pham v. Jaddou*,
  No. 23-CV-1058-W-KSC, 2024 WL 436351 (S.D. Cal. Feb. 5, 2024) ................ 38

*Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*,
  990 F.3d 217 (2d Cir. 2021) ............................................................... 25, 29, 30, 31

*PMG Int'l Div. L.L.C. v. Rumsfeld*,
  303 F.3d 1163 (9th Cir. 2002) ................................................................................ 27

*Radio Servs. Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009) ................................................................................ 39

*Ramos v. Chase Home Fin.*,
  810 F. Supp. 2d 1125 (D. Haw. 2011) .................................................................. 38

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015) .................................................................................................... 25

*Regan v. Taxation With Representation of Wash.*,
  461 U.S. 540 (1983) .............................................................................................. passim

*Reichle v. Howards*,
  566 U.S. 658 (2012) .................................................................................................... 34

*Ridley v. Mass. Bay Transp. Auth.*,
  390 F.3d 65 (1st Cir. 2004) ...................................................................................... 33

*Rust v. Sullivan*,
  500 U.S. 173 (1991) .............................................................................. 26, 28, 31, 32

*S. Cal. All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*,
  8 F.4th 831 (9th Cir. 2021) ................................................................................ 20, 22

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ................................................................................. 14

*San Francisco Herring Ass'n v. Dep't of the Interior,*
   946 F.3d 564 (9th Cir. 2019) ............................................................................... 20, 22

*SBA v.McClellan,*
   364 U.S. 446 (1960) ................................................................................................... 4

*Schultz v. Harry S. Truman Scholarship Found.,*
   No. 20-CV-04058-MMC, 2023 WL 2456714 (N.D. Cal. Mar. 10, 2023) ........................... 39

*Shinault v. Hawks,*
   782 F.3d 1053 (9th Cir. 2015) .................................................................................. 24

*Snoqualmie Indian Tribe v. Washington,*
   8 F.4th 853 (9th Cir. 2021) ...................................................................................... 15

*Spector Motor Serv., Inc. v. McLaughlin,*
   323 U.S. 101 (1944) ................................................................................................. 22

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.,*
   108 F.4th 1128 (9th Cir. 2024) ..................................................................... *passim*

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ............................................................................ 16, 19

*Thomas v. Anchorage Equal Rts. Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) ......................................................................... 15, 23, 38

*Thomas v. City of New York,*
   143 F.3d 31 (2d Cir. 1998) ...................................................................................... 24

*Thomas v. Paulson,*
   507 F. Supp. 2d 59 (D.D.C. 2007) ........................................................................... 38

*Twitter, Inc. v. Paxton,*
   56 F.4th 1170 (9th Cir. 2022) .............................................................................. 15, 38

*Underwood v. Mackay,*
   614 F. App'x 871 (9th Cir. 2015) ........................................................................... 16

*United Pub. Workers of Am. v. Mitchell,*
   330 U.S. 75 (1947) ................................................................................................... 37

*United States v. Am. Library Ass'n,*
   539 U.S. 194 (2003) ..................................................................................... 26, 27, 31

*United States v. Hatcher,*
   922 F.2d 1402 ...................................................................................................... 24

*United States v. Lanier,*
   520 U.S. 259 (1997) .............................................................................................. 32

*United States v. Nat'l Training & Info. Ctr., Inc.,*
   532 F. Supp. 2d 946 (N.D. Ill. 2007) .................................................................... 33

*US W. Commc'ns v. MFS Intelenet, Inc.,*
   193 F.3d 1112 (9th Cir. 1999) .............................................................................. 18

*Ysursa v. Pocatello Educ. Ass'n,*
   555 U.S. 353 (2009) ........................................................................... 26, 29, 30, 36

**Statutes**

5 U.S.C. § 553 ................................................................................................................ 7

5 U.S.C. § 702 .............................................................................................................. 21

5 U.S.C. § 704 ........................................................................................................ 20, 21

15 U.S.C. § 631 .............................................................................................................. 4

15 U.S.C. § 634 ..................................................................................................... *passim*

15 U.S.C. § 636 ..................................................................................................... *passim*

15 U.S.C. § 636m .................................................................................................... 8, 29

15 U.S.C. § 9012 ............................................................................................................ 6

Pub. L. No. 85–536, 72 Stat. 384 ................................................................................. 4

Pub. L. No. 116-139, 134 Stat. 620 .............................................................................. 7

Pub. L. No. 116-147, 134 Stat. 660 .............................................................................. 7

Pub. L. No. 116-136, 134 Stat. 281 ....................................................................... 5, 6, 8

Pub. L. No. 116-260, 134 Stat. 1182 ............................................................................ 7

Pub. L. No. 117-2, 135 Stat. 4 ...................................................................................... 8

**Rules**

Fed. R. Civ. P. 12 .................................................................................................... 2, 14

1

**Regulations**

2  13 C.F.R. § 120.110 ............................................................................................................ 5, 8

3  13 C.F.R. § 121.103 ............................................................................................................... 5

4  13 C.F.R. §  121.107 ............................................................................................................ 17

5  13 C.F.R. § 121.301 ............................................................................................................... 5

6
7  13 C.F.R. § 134.1201 ................................................................................................... 9, 18, 21

8  13 C.F.R. § 134.1202 .............................................................................................. 10, 18, 19, 21

9  13 C.F.R. § 134.1207 ............................................................................................................. 9

10  13 C.F.R. § 134.1209 ............................................................................................................. 9

11  13 C.F.R. § 134.1210 ............................................................................................................. 9

12
13  60 Fed. Reg. 64356 (Dec. 15, 1995) ......................................................................................... 5

14  61 Fed. Reg. 3226 (Jan. 31, 1996) ............................................................................................ 5

15  85 Fed. Reg. 20811 (Apr. 15, 2020) .......................................................................................... 6

16  85 Fed. Reg. 33010 (June 1, 2020) ............................................................................................ 9

17  85 Fed. Reg. 38304 (June 26, 2020) .......................................................................................... 8

18  85 Fed. Reg. 80581 (Dec. 14, 2020) .......................................................................................... 5

19  86 Fed. Reg. 3692 (Jan.14, 2021) ......................................................................................... 9, 19

20  86 Fed. Reg. 8283 (Feb. 5, 2021) ......................................................................................... 9, 19

21
22  88 Fed. Reg. 21074 (Apr. 10, 2023) .......................................................................................... 5

**Other Authorities**

23
24  SBA, Paycheck Protection Program (PPP) Report 2 (May 30, 2020) ................................................ 7

25  SBA Press, Release No. 20-30 .................................................................................................. 7

26  SBA Press, Release No. 20-32 .................................................................................................. 7

27
28

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE Defendants, the United States Small Business Administration ("SBA"), Acting SBA Administrator Everett Woodel,[1] SBA's Office of Hearings and Appeals ("OHA"), OHA Chief Hearing Officer Kimberly McLeod, and the United States of America, by and through undersigned counsel, hereby move for an order dismissing in part Plaintiffs' First Amended Complaint, ECF No. 18, for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and striking Plaintiffs' jury demand.  A hearing on the motion is set for May 13, 2025, at 10:30 a.m.  *See* Order, ECF No. 27.  Undersigned counsel conferred via telephone with counsel for Plaintiffs, who intend to oppose this motion.

## RELIEF REQUESTED

Defendants seek an order (1) dismissing Counts IV, V, VI, VII, VIII, IX, X, XI, and XVI under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, (2) dismissing Counts I, II, III, XII, XIII, XIV, XV, and XVIII under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction to the extent they raise challenges or seek relief unrelated to Plaintiff Gold Club SF, LLC's second-draw PPP loan, (3) dismissing Counts I, II, XV, and XVIII under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted with respect to Gold Club SF, LLC's second-draw loan, and (4) striking Plaintiffs' jury demand.

---

[1] Everett Woodel is currently the acting SBA Administrator and is the proper defendant for the official capacity claims brought against former Administrator Guzman. *See* Fed. R. Civ. P. 25(d).

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In the throes of the economic crisis induced by the COVID-19 pandemic, Congress issued a mandate to the Small Business Administration ("SBA") to promptly make hundreds of billions of dollars in Paycheck Protection Program ("PPP") loans available to millions of American small businesses. SBA rose to the occasion and disbursed almost $350 billion in PPP loans in less than two weeks' time, and ultimately disbursed more than $800 billion in PPP loans. In creating the PPP, Congress instructed SBA that PPP loans could be made available under the same terms and conditions as the agency's traditional "Section 7(a)" business loans, except insofar as Congress had by legislation directed otherwise. One way that Congress modified the traditional Section 7(a) program was by waiving, for businesses in the accommodation and food services industries, SBA's normal rules for determining whether two or more entities are "affiliated" for the purpose of determining the applicant's size (SBA's "affiliation rules"). One of the traditional Section 7(a) terms and conditions that Congress did *not* modify—and that it later expressly incorporated into the eligibility requirements for "second-draw" PPP loans—was SBA's decades-old rule against providing loans to businesses that present "live performances of a prurient sexual nature" or that "derive . . . more than de minimis gross revenue" from products, services, depictions or displays "of a prurient sexual nature" (collectively, the "prurient business exclusion").

Plaintiffs are fifteen nightclubs and bars—eleven of which present "female performance dance entertainment" or "male and female performance dance entertainment"[2]—with PPP loans in various stages of the forgiveness process. Of the twenty-four loans discussed in the First Amended Complaint, Plaintiffs allege that two were forgiven pursuant to settlement agreements, fourteen have been forgiven (of which twelve are alleged to be undergoing post-payment review), seven are awaiting a final forgiveness determination from SBA, and one—Gold Club SF, LLC ("Gold Club")'s second draw loan—has been denied forgiveness based on the statutory exclusion of prurient businesses from the second-draw loan program. Despite the fact that only one of these loans has been denied forgiveness, Plaintiffs seek to raise

---

[2]Plaintiffs allege that the other four businesses are karaoke bars or bars that present no live entertainment.

a host of challenges not just to the statutory prurient business exclusion, but to SBA's application of its affiliation rules, to the regulatory exclusion of prurient businesses from the "first-draw" loan program, *and* to SBA's administrative appeals process.

Most of the claims in this case are premature and should be dismissed for lack of jurisdiction under Rule 12(b)(1). To begin with, Plaintiffs' claims related to SBA's affiliation rules—Counts V to XI—are not ripe. These claims are not fit for decision because no Plaintiff is the subject of a final decision denying loan forgiveness based in whole or in part on SBA's affiliation rules, and Plaintiffs will suffer no cognizable hardship from delaying review until there is a final agency action. In addition, the Court lacks subject matter jurisdiction over Plaintiffs' APA claims challenging the interpretation and application of SBA's affiliation rules to Plaintiffs (Counts VII, VII, X, and XI) because there has been no final agency action on which these claims could be based.

Moreover, with the exception of Gold Club's claims regarding its second-draw loan, Plaintiffs' as-applied challenges to the prurient business exclusion, their challenges to SBA's administrative appeals process, their estoppel claims, and their requests for attorneys' fees and injunctive relief are also unripe. Only Gold Club's claims regarding its second-draw loan are ripe, so Counts I–III , XII, XIII, XIV, XV, and XVIII should be limited to the claims Gold Club can bring and Count IV, which only challenges SBA's *regulatory* exclusion of prurient businesses under the APA, not the *statutory* exclusion that was applied to Gold Club, should be dismissed.

The Court should also dismiss Plaintiffs' First and Fifth Amendment challenges to the statutory prurience exclusion (Counts I and II) for failure to state a claim under Rule 12(b)(6). While Plaintiffs invoke a bevy of legal doctrines in their First Amendment challenge to the prurience exclusion, Plaintiffs' theories all ultimately rest on the mistaken notion that because their speech is not obscene, the Government is constitutionally obligated to subsidize it. But the First Amendment does not compel Congress to subsidize speech of any kind, on any topic, that Congress does not wish to promote, and Plaintiffs fail to plausibly allege that in choosing to exclude prurient businesses from the PPP, Congress aimed to suppress a particular viewpoint. Plaintiffs' Fifth Amendment challenge fails because the prurience exclusion is

1  subject only to rational basis review, which it easily satisfies.  Congress could have rationally determined

2  it did not want to encourage the undesirable secondary effects associated with prurient businesses.

3         Finally, the Court should dismiss Plaintiffs' claim challenging the statutory bar on injunctive relief

4  against SBA (Count XVI), dismiss their claims seeks attorneys' fees and injunctive relief (Counts XV and

5  XVIII), and strike Plaintiffs' jury demand.  Plaintiffs' claim challenging the statutory bar on injunctive

6  relief is unripe because it is entirely speculative whether this provision will ever be applied in a way that

7  injures Plaintiffs.  Plaintiffs' claims for attorneys' fees and injunctive relief should be dismissed because

8  attorneys' fees and injunctive relief are forms of relief, not independent causes of action.  And Plaintiffs'

9  jury demand is improper because no statute provides a jury right for APA, constitutional, or estoppel

10 claims against the United States.

11         In sum, the Court should decline to exercise jurisdiction over Counts IV through XI and Count

12 XVI (the APA challenge to prurience regulation, the claims related to SBA's affiliation rules, and the

13 challenge to the statutory bar on injunctive relief against SBA) because those claims are not ripe, and limit

14 further proceedings on Counts I–III, XII, XIII, XIV, XV, and XVIII  (the APA challenge to SBA's

15 interpretation of the prurience exclusion, the challenges to SBA's administrative appeals process from

16 PPP loans, the estoppel claims, and the claims for attorneys' fees and injunctive relief) to only claims that

17 Gold Club can assert based on SBA's decision to deny it forgiveness on its second-draw loan.  The Court

18 should then dismiss Counts I, II, XV and XVIII (the First and Fifth Amendment challenges to the prurience

19 regulations and the claims for attorneys' fees and injunctive relief) with respect to Gold Club's second-

20 draw loan for failure to state a claim.  And it should strike Plaintiffs' jury demand for any claims that

21 survive the motion to dismiss.

**ISSUES TO BE DECIDED**

22

23     1.    Whether Plaintiffs' challenges regarding SBA's affiliation rules (Counts V through

24           XI) should be dismissed as unripe;

25     2.    Whether Plaintiffs' APA challenges regarding SBA's affiliation rules (Counts VII,

26           VIII, X, and XI) should be dismissed for lack of final agency action;

27

28

3.  Whether Plaintiffs' claims (other than Gold Club's claims regarding its second-draw loan) challenging SBA's interpretation of the prurient business exclusion, challenging SBA's administrative appeals process from PPP loans, alleging that SBA is estopped from denying their loans, and seeking attorneys' fees and injunctive review (Counts I–III, XII, XIII, XIV, XV, and XVIII) should be dismissed as unripe;

4.  Whether Plaintiffs' First Amendment challenge to the prurient business exclusion (Count I) should be dismissed for failure to state a claim;

5.  Whether Plaintiffs' Fifth Amendment challenge to the prurient business exclusion (Count II) should be dismissed for failure to state a claim;

6.  Whether Plaintiffs' challenge to the statutory bar on injunctive relief (Count XVI) should be dismissed as unripe;

7.  Whether Plaintiffs' claims for attorneys' fees and injunctive relief (Counts XV and XVIII) should be dismissed for failure to state a claim.

## BACKGROUND

### I.  Legal Framework

#### A.  SBA's § 7(a) Loan Program

The Small Business Act of 1958, Pub. L. No. 85–536, 72 Stat. 384, confers "extraordinarily broad powers" on SBA to provide a wide variety of assistance to small-business concerns. 15 U.S.C. § 631(a); *SBA v. McClellan*, 364 U.S. 446, 447 (1960). As pertinent here, Section 7(a) of the Act, 15 U.S.C. § 636(a), "empower[s]" SBA to guarantee general-purpose loans to small businesses. In performing this function, SBA is further empowered to "establish general policies" governing the "granting and denial" of financial assistance; to "make such rules and regulations as [it] deems necessary to carry out the authority vested in [it];" and to "take any and all actions … [it] determines … are necessary or desirable in making … loans." *Id.* §§ 633(d); 634(b)(6), (7). Typically, SBA guarantees loans by private lenders rather than disbursing funds directly. *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020).

To qualify for a traditional Section 7(a) loan, an applicant must (among other things) meet the size standards for a "small" business set forth in the Small Business Act and SBA regulations.  The Small Business Act "grants the SBA broad authority to craft general criteria for establishing which entities qualify as small business concerns, as well as to make particularized size assessments."  *DSE, Inc. v. United States*, 169 F.3d 21, 25 (D.C. Cir. 1999).  Those criteria include "affiliation rules" that determine when an applicant is affiliated with another entity, such that the two are properly regarded as a single, larger entity (in terms of number of employees or revenue) for the purpose of determining whether the applicant qualifies as an eligible "small" business.  *See* 13 C.F.R. §§ 121.103; 121.301(f).[3]

SBA has also determined over time that Section 7(a) loans should not be available to certain types of businesses.  These seventeen categories of entities include non-profit businesses, legal gambling establishments, government-owned entities, businesses owned or managed by persons with criminal histories, businesses engaged in political activities or lobbying, and twelve others described under SBA's rule codified at 13 C.F.R. § 120.110.  Most relevant here, among the rule's exclusions is "[b]usinesses which (1) [p]resent live performances of a prurient sexual nature; or (2) [d]erive . . . more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature."  *Id.* § 120.110(p).

SBA first adopted § 120.110(p) over a quarter-century ago, in January 1996, *see* 61 Fed. Reg. 3226, 3229–40 (Jan. 31, 1996) (final rule); 60 Fed. Reg. 64356, 64359–60 (Dec. 15, 1995) (proposed rule). When adopting the rule, SBA explained that it was exercising its discretion to deny financing to businesses of an "obscene, pornographic, *or* prurient" character, and, by way of example, explained that under the rule "an establishment featuring nude dancing . . . would not be eligible for SBA financial assistance[.]" 60 Fed. Reg. at 64360 (emphasis added).

---

[3] SBA revised its affiliation rules in early 2020, but those revisions were rescinded by the CARES Act.  *See* CARES Act § 1102(e), 134 Stat. 281, 294; *see also* Express Loan Programs; Affiliation Standards – Rescission, 85 Fed. Reg. 80581, 80581 (Dec. 14, 2020). The version of the affiliation rules that appears in the 2020 edition of the Code of Federal Regulations was in effect during the Paycheck Protection Program.  The SBA significantly revised its affiliation rules again in 2023, after the PPP ended. *See* Affiliation and Lending Criteria for the SBA Business Loan Program, 88 Fed. Reg. 21074 (Apr. 10, 2023). The revised affiliation rules are not at issue in this case.

## B.     The CARES Act and the PPP

The CARES Act became law on March 27, 2020, providing emergency assistance to individuals, families, businesses, and health-care providers coping with the coronavirus pandemic.  *See* 85 Fed. Reg. 20811, 20811–12 (Apr. 15, 2020).  Among the Act's many measures was the PPP, CARES Act § 1102, which was enacted to extend relief to small businesses experiencing economic hardship due to the pandemic.  *See* 85 Fed. Reg. at 20,811.

In particular, CARES Act § 1102(a)(2) temporarily expanded SBA's business-loan authority by adding a new paragraph (36) to § 7(a), 15 U.S.C. § 636(a)(36).  *See Gateway*, 983 F.3d at 1249 ("[T]he PPP was not created as a standalone program; instead it was added into § 7(a)[.]").  Subparagraph 636(a)(36)(B) stated that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] loans," issued by private lenders, "under the same terms, conditions, and processes as [other] loan[s] made under" § 7(a).  15 U.S.C. § 636(a)(36)(B); *see id.* § 636(a)(36)(F)(ii).  The statute then detailed the specific ways in which PPP loans were to differ from other § 7(a) loans.  *Id.* § 636(a)(36)(D)–(W).

Among those differences, the CARES Act relaxed size limitations to allow businesses with as many as 500 employees (or more, in certain industries) to receive assistance, *id.* § 636(a)(36)(D)(i)(I), and expanded access to loans by waiving, "with respect to eligibility for a covered loan," SBA's pre-existing affiliation-based eligibility rules for certain categories of businesses and non-profits, §636(a)(36)(D)(iv), and enlarged the $5,000,000 cap applicable to other § 7(a) loans, providing that the *"*maximum amount*"* of a PPP loan was to be "the lesser of" (1) the borrower's average monthly payroll costs for the preceding year, multiplied by 2.5, plus the balance of the borrower's eligible SBA disaster loans or (2) $10,000,000. *Id.* § 636(a)(36)(E).

Congress initially authorized SBA to guarantee up to $349 billion in PPP loans by June 30, 2020.  CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B).  To ensure that SBA could make such an enormous sum available to small businesses in so short a time, Congress instructed SBA to issue rules implementing the PPP "[n]ot later than 15 days after" the CARES Act's enactment, 15 U.S.C. § 9012, described as "warp speed for regulatory action," *Gateway*, 983 F.3d at 1262.  To make that feat possible, Congress also instructed SBA to issue these rules without regard to APA notice-and-comment procedures.

15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)).  Congress also directed that additional non-§ 7(a) lenders be allowed to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review.  *Id.* § 636(a)(36)(F)(ii)(I), (iii).

## C.    The First PPP IFR

Pursuant to Congress's directive, SBA (in conjunction with the Department of the Treasury) issued the First PPP IFR less than a week after the CARES Act's March 27, 2020, enactment, posting the rule on its website on April 2, 2020.  Generally speaking, the First PPP IFR set forth borrower eligibility and application requirements for PPP loans, 85 Fed. Reg. at 20812–15, and lenders' responsibilities under the streamlined PPP underwriting process, *id.* at 20815–16. As relevant here, the rule stated also that businesses "identified in 13 CFR 120.110" are "not eligible for PPP loans[,]" with the exception of "nonprofit organizations authorized by the [CARES] Act [15 U.S.C. § 636(a)(36)(D)(i)]."  *Id.* at 20812.

SBA launched the PPP on April 3, 2020.  SBA Press Release No. 20-30 (available [here](#)).  Although the program's termination date was to be June 30, 2020, CARES Act § 1102(b), so great was the demand for PPP financing that the entire $349 billion authorized by Congress was exhausted in less than two weeks' time, by April 16, 2020.  *See* SBA Press Release No. 20-32 (available [here](#)); *see also* SBA, Paycheck Protection Program (PPP) Report 2 (May 30, 2020) (available [here](#)) (showing PPP lenders processed nearly 4.5 million loans in just the first two months of the program). Congress authorized another $310 billion in PPP loans on April 24, 2020. Pub. L. No. 116-139, 134 Stat. 620, § 101(a)(1).

## D.    The Economic Aid Act

The PPP expired on August 8, 2020, *see* Pub. L. No. 116-147, 134 Stat. 660, but the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, (Consolidated Appropriations Act, 2021, Div. N, Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993-2052) (Dec. 27, 2020)) (the "Economic Aid Act," or "EAA"), reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority.  EAA § 323(a)(1).  The EAA also authorized SBA to guarantee so-called "second-draw" PPP loans to certain businesses that obtained "first-draw" PPP loans under the CARES Act, EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)), under the same terms and conditions as first-draw loans, except as the EAA otherwise provided.  15 U.S.C. § 636(a)(37) (B).  The EAA expressly excluded

certain categories of businesses from eligibility for second-draw loans, *see* 15 U.S.C. § 636(a)(37)(A)(iv)(III), including those that are disqualified for SBA loans under 13 C.F.R. § 120.110, with specific exceptions including certain non-profit and faith-based concerns described in 13 C.F.R. § 120.110(a) and (k). *See* 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa)). Thus, Congress expressly directed that businesses of a "prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p), as well as many other categories of businesses, are statutorily ineligible for second-draw PPP loans.

Congress ultimately authorized SBA to guarantee more than $813 billion in PPP loans, Pub. L. No. 117-2, 135 Stat. 4, § 5001(d)(1), and nearly 12 million PPP loans were approved.

### E.    Forgiveness and Review of PPP Loans

Section 1106 of the CARES Act sets out the process for PPP loan forgiveness, *see* CARES Act, Pub. L. No. 116-136 § 1106, 134 Stat. at 297 (codified at 15 U.S.C. § 636m), and allows "eligible recipient[s]" of PPP loans to obtain loan forgiveness on the portions of the loan used for certain enumerated purposes, such as payroll costs and payments for rent, utilities, and mortgage interest, 15 U.S.C. §§ 636m(b)(1)-(8), (d); Apr. 2020 IFR, 85 Fed. Reg. at 20813. "The amount of loan forgiveness can be up to the full principal amount of the loan and any accrued interest," so long as, among other requirements, "the borrower uses all of the loan proceeds for forgivable purposes" and certain "employee and compensation levels are maintained." Apr. 2020 IFR, 85 Fed. Reg. at 20813; *see also* 15 U.S.C. § 636m(d)(1) ("The amount of loan forgiveness . . . shall not exceed the principal amount of the financing made available under the applicable covered loan."). Loans that are not forgiven are to be repaid at a fixed one-percent interest rate.  Apr. 2020 IFR, 85 Fed. Reg. at 20813.

To obtain forgiveness, a borrower must submit a PPP loan forgiveness application and supporting documentation to its lender.  *See* 15 U.S.C. § 636m(e)–(f).  The lender then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA.  *Id.* § 636m(g); *Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules*, 85 Fed. Reg. 38304, 38306 (June 26, 2020).  SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38306.  If a PPP borrower applies for forgiveness in a

timely manner, all principal and interest payments are deferred until SBA grants forgiveness or "determines that the loan is not eligible for forgiveness (in whole or in part)." 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); *see also* 86 Fed. Reg. 3692, 3703 (Jan. 14, 2021).

Under Congress's directive to meet the immediate economic needs of PPP applicants as quickly as possible, SBA set forth a highly streamlined application and underwriting process for obtaining PPP loans. *See* Apr. 2020 IFR, 85 Fed. Reg. at 20,812–15. The simplified PPP loan application and underwriting process created a heightened risk of loans being erroneously approved by lenders. To maintain the program's fiscal integrity and to "ensure that PPP loans are directed to the entities Congress intended" and "used for the purposes Congress required," SBA established a series of "procedures and criteria" through which SBA can, after the loans are disbursed, review a borrower's eligibility for a PPP loan, calculation of the loan amount, use of loan proceeds, and entitlement to loan forgiveness. *See Business Loan Program Temporary Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related Borrower and Lender Responsibilities*, 85 Fed. Reg. 33010, 33012 (June 1, 2020). If, in this review process, "SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application." *Id.* In the event a borrower mistakenly received loan forgiveness, SBA has reserved the right to claw back such loan forgiveness. *See id.*

If SBA determines that a borrower's forgiveness application should be denied in whole or in part, the borrower can appeal that decision — known as a "Final Loan Review Decision" or "FLRD" — to SBA's Office of Hearings and Appeals (OHA). *See* 13 C.F.R. § 134.1201(b). This administrative appeals process "must be exhausted before judicial review of a final SBA loan review decision may be sought." *Id.* § 134.1201(d). A borrower appealing an FLRD to OHA must demonstrate that SBA committed a "clear error or fact or law" in issuing the FLRD. 13 C.F.R. § 134.1210. Discovery is not permitted. *Id.* § 134.1209(b). Instead, OHA's review is limited to (1) the administrative record that was before SBA when it issued the FLRD, (2) the borrower's appeal petition, (3) any response, reply, or supplemental pleading, and (4) "filings related to [an] objection to the administrative record." *Id.*; *see* 13 C.F.R. § 134.1207(b) (describing the contents of the administrative record). "[A] timely appeal by a PPP

1  borrower of a final SBA loan review decision will extend the deferment period of the PPP loan until a

2  final decision is issued" by OHA.  13 C.F.R. § 134.1202(d).

3  **II.    This Litigation**

4          Plaintiffs are fifteen businesses that received PPP loans during the pandemic.  Eleven of those

5  businesses—Gold Club S.F., LLC ("Gold Club"); Dallas Food & Beverage, LLC ("Dallas Food"); 2345

6  Meacham, LLC ("Meacham"); 11000 Reeder, LLC ("Reeder"); S.A.W. Entertainment, Ltd. ("SAW");

7  Smithville Bistro, LLC ("Smithville"); Deja Vu Showgirls of Las Vegas, LLC ("Deja Vu"); Jamme

8  Holdings, LLC ("Jamme"); 90's Minneapolis ("90's"); Las Vegas Bistro ("LVB") and Stockton

9  Enterprises, LLC ("Stockton")—operate nightclubs that present either "female performance dance

10 entertainment" or "male and female performance dance entertainment."  FAC ¶¶ 61, 112, 130, 160, 176,

11 203, 217, 286, 302, 318, 330.  Two others—Cats Meow of Vegas, LLC ("Cats Meow") and Cats 701

12 Bourbon, LLC ("Cats Bourbon")—operate nightclubs that present karaoke and "other live performance

13 entertainment including singing and dancing." *Id.* ¶¶ 242, 258.  And two Plaintiffs—Office Minneapolis,

14 LLC ("Office") and Pole Position at Tacoma, LLC ("Pole Position'")—are bars that do not present any

15 live performances.  *Id.* ¶¶ 231–32; 272–73.  Each Plaintiff has applied to have its first- and/or second-

16 draw loan(s) forgiven.

17         Of the twenty-four PPP loans discussed in the First Amended Complaint, fourteen loans were

18 initially forgiven by SBA: Dallas Food's first-draw loan, Meacham's first-draw loan, Reeder's first- and

19 second-draw loan, Office's first-draw loan, Cats Meow' first- and second-draw loans, Cats Bourbon's

20 first-draw loan, Pole Position's second-draw loan, Jamme's first-draw loan, 90's first- and second-draw

21 loan, LVB's first-draw loan, and Stockon's first-draw loan.  FAC ¶¶ 120, 135, 170, 172, 239, 255, 268,

22 282, 296, 312, 315, 327, 339.  Plaintiffs allege that SBA later informed them that SBA would conduct

23 post-payment reviews of twelve of these loans (all except Meacham's first-draw loan and 90s' second-

24 draw loan).  *Id.* ¶¶ 121, 173, 240, 256, 269, 283–84, 297, 313, 328, 340.[4]  Two other loans—Smithville's

25

26 _____

27         [4] With respect to Cats Meow, Plaintiffs allege that SBA "conducted a [post-payment] review" of
   SBA's first- and second-draw loan, FAC ¶ 256, but do not allege that SBA has concluded Cats Meow is
28 ineligible for forgiveness (or has reached any conclusions at all) as a result of that review.

1  first-draw loan and Deja Vu's second-draw loan—were partially forgiven as part of a prior settlement

2  between those Plaintiffs and SBA. *Id.* ¶¶ 210, 224.

3      Of the eight remaining loans discussed in the First Amended Complaint, SBA has not finally

4  determined whether to forgive seven of them. In three instances—Gold Club's first-draw loan, Dallas

5  Food's second-draw loan, and SAW's first-draw loan—SBA issued an FLRD denying  forgiveness but

6  subsequently withdrew the FLRD to conduct further review.[5] *See id.* ¶¶ 73, 82, 128, 187, 193, 195, 198.

7  These now-withdrawn FLRDs were based either on (1) a determination that the borrower, combined with

8  its affiliates, was too big to receive a PPP loan, (2) a determination that the business was ineligible on

9  prurience grounds, or (3) both. *Id.* ¶ 73, 128, 187, 198.  In two other cases—Smithville's and Deja Vu's

10 second-draw loans—Plaintiffs allege that SBA's decision denying forgiveness is currently pending before

11 OHA. *Id.* ¶¶ 215, 229.  In the sixth case, SBA issued an FLRD denying Meacham's second-draw loan on

12 prurience grounds, *id.* ¶ 146, but OHA remanded the decision to SBA to re-review Meacham's application,

13 *id.* ¶ 158; *see also id*,. Ex. R, ECF No. 18-1 at 1928–30.  Finally, SBA has yet to issue any decision at all

14 regarding Jamme's second-draw loan.  FAC ¶ 299.

15     There is an OHA-affirmed decision denying forgiveness for only one of the twenty-four loans

16 discussed in the First Amended Complaint: Gold's Club's second-draw loan. *See id.* ¶¶ 93, 105. On

17 January 30, 2024, SBA issued an FLRD denying forgiveness for Gold Club's second-draw loan because

18 SBA determined that Gold Club was ineligible for PPP loans under SBA's prurient business exclusion.

19 *Id.* ¶ 93.  Gold Club appealed that denial to OHA, which affirmed SBA's decision on May 14, 2024. *Id.*

20 ¶ 105.  That decision is now final. *Id.* ¶ 108; *see also  id.*, Ex. K, ECF No. 18-1 at 1838–1847.[6]

21     The chart on the following pages summarizes the status of each Plaintiffs' loans, as alleged in the

22 First Amended Complaint:

23

24

25

26      [5] SAW has had two FLRDs withdrawn. *Id.* ¶¶ 187, 193, 195, 198.

27      [6] Courts may consider documents attached to or incorporated by reference into the complaint
   "without converting the motion to dismiss into a motion for summary judgment." *Boquist v. Courtney*,

28 32 F.4th 764, 772 (9th Cir. 2022).

| Plaintiff | Draw | Settled | Loan Initially Forgiven | No Outstanding FLRD | FLRD Appealed to OHA | FLRD Affirmed by OHA | Relevant Allegations |
|---|---|---|---|---|---|---|---|
| Gold Club | First | | | X | | | ¶¶ 73, 82 |
| | Second | | | | | X | ¶¶ 93, 105 |
| Dallas Food | First | | X | | | | ¶¶ 120–21 |
| | Second | | | X | | | ¶ 128 |
| Meacham | First | | X | | | | ¶ 135 |
| | Second | | | X | | | ¶¶ 146, 158 |
| Reeder | First | | X | | | | ¶¶ 170, 173 |
| | Second | | X | | | | ¶¶ 172–73 |
| SAW | First | | | X | | | ¶¶ 195, 198, 200 |
| Smithville | First | X | | | | | ¶ 210 |
| | Second | | | | X | | ¶ 215 |
| Deja Vu | First | X | | | | | ¶ 224 |
| | Second | | | | X | | ¶ 229 |
| Office | First | | X | | | | ¶¶ 239–40 |
| Cats Meow | First | | X | | | | ¶¶ 255–56 |
| | Second | | X | | | | ¶¶ 255–56 |

| Plaintiff | Draw | Settled | Loan Initially Forgiven | No Outstanding FLRD | FLRD Appealed to OHA | FLRD Affirmed by OHA | Relevant Allegations |
|---|---|---|---|---|---|---|---|
| Cats Bourbon | First | | X | | | | ¶¶ 268–70 |
| Pole Position | Second | | X | | | | ¶¶ 282–84 |
| Jamme | First | | X | | | | ¶¶ 296–97 |
| | Second | | | X | | | ¶ 299 |
| 90s | First | | X | | | | ¶¶ 312–13 |
| | Second | | X | | | | ¶ 315 |
| LVB | First | | X | | | | ¶¶ 327–28 |
| Stockton | First | | X | | | | ¶¶ 339–40 |

The First Amended Complaint contains eighteen counts against the United States Small Business Administration ("SBA"), Acting SBA Administrator Everett Woodel, SBA's Office of Hearings and Appeals ("OHA"), OHA Chief Hearing Officer Kimberly McLeod, and the United States of America. Counts I through IV relate to SBA's prurient business exclusion. Count I alleges that the SBA's prurient business exclusion (and Congress's explicit incorporation of that exclusion into the second-draw loan program) violates the First Amendment. FAC ¶ 629. Count II alleges that the prurient business exclusion and the incorporating statute violate the Fifth Amendment. *Id.* ¶ 635. Count III alleges that SBA's interpretation of the prurient business exclusion and the incorporating statute is invalid under the APA. And Count IV alleges that the prurient business exclusion is itself invalid under the APA. *Id.* ¶¶ 644, 646.

Counts V through XI relate to SBA's affiliation rules. Count V alleges that SBA used its affiliation regulations to retaliate against Plaintiffs for their protected speech. *Id.* ¶¶ 657–58. Counts VI and IX allege that SBA's application of its affiliation rules (or, in the alternative, the rules themselves) violate the

1  Fifth Amendment. *Id.* ¶¶ 662, 679. Counts VII, VIII, X, and XI allege that SBA's affiliation rues and

2  SBA's application of those regulations are invalid under the APA. *Id.* ¶¶ 668, 673, 685, 690.

3      Counts XII through XVIII are more varied. Count XII alleges that SBA's rules governing

4  administrative appeals of final PPP loan review decisions violate the Fifth Amendment, *id.* ¶ 695, and

5  Count XIII alleges that those rules are invalid under the APA, *id.* ¶ 701. Count XIV asserts that SBA

6  should be estopped from denying plaintiffs loan forgiveness. *Id.* ¶ 715. Count XI seeks attorneys' fees,

7  Count XVI alleges that 15 U.S.C. § 634(b)(1), which bars injunctive relief against SBA, is

8  unconstitutional, Count XVII seeks APA review of SBA's decision to deny forgiveness for Gold Club's

9  second draw loan, and Count XVII seeks injunctive relief against SBA. FAC ¶¶ 719, 723, 732, 744.

10                          **STANDARD OF REVIEW**

11      A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed.

12  R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction may be either facial or factual. *Safe Air for*

13  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, "the challenger asserts that

14  the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

15  Courts resolve facial attacks under the same standards that apply to motions to dismiss under Rule

16  12(b)(6). *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023).

17      "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter,

18  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

19  678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual

20  allegations" are not necessary to withstand a motion to dismiss, a plaintiff must provide the "grounds" of

21  "entitle[ment] to relief," which requires "more than labels and conclusions" or "a formulaic recitation of

22  the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders

23  'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

24  A complaint fails to state a claim for to relief when its well-pleaded facts do not enable a court, "draw[ing]

25  on its judicial experience and common sense," "to infer more than the mere possibility of misconduct."

26  *Id.* at 679.

27

28

1

**ARGUMENT**

2

**I.    Plaintiffs' Claims Related to SBA's Affiliation Rules (Counts V to XI) Are Not Ripe.**

3        A claim must be "ripe for court review" to be justiciable. *Ohio Forestry Ass'n v. Sierra Club*, 523

4    U.S. 726, 732 (1998). The purpose of the ripeness doctrine is to "prevent the courts, through avoidance

5    of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage*

6    *Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting *Abbott Laboratories v.*

7    *Gardner*, 387 U.S. 136, 148 (1967)). There are both constitutional and prudential elements to ripeness.

8    *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

9        "A dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, presented in

10    actual cases, not abstractions.'" *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir.

11    2014) (quoting *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir.2009)). The Ninth Circuit has held that the

12    "constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing

13    inquiry." *Twitter*, 56 F.4th 1173. Prudential ripeness, by contrast, concerns "(1) the fitness of the issues

14    for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park*

15    *Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

16        Plaintiffs bring seven counts related to SBA's affiliation rules. Plaintiffs allege that SBA has

17    applied its affiliation rules to them in retaliation for a lawsuit brought by a related PPP borrower (Count

18    V), that SBA's application of the affiliation rules violates the Fifth Amendment (Count VI), that SBA's

19    application of those rules to Plaintiffs is invalid under the APA (Count VII, VIII, X, XI), and that the

20    affiliation rules themselves violate the Fifth Amendment (Count IX). *See* FAC ¶¶ 655, 662, 668, 673,

21    679, 685, 690. These claims are not prudentially ripe because no Plaintiff is subject to a final decision

22    denying loan forgiveness based on the application of SBA's affiliation rules and Plaintiffs will suffer no

23    cognizable hardship from delayed review—if, indeed, any Plaintiff is *ever* ultimately denied loan

24    forgiveness on this basis. The Court should therefore decline to exercise jurisdiction over them.[7] *See*

25

26        [7] The Court may dismiss Plaintiffs' claims as prudentially unripe without determining whether
    they are constitutionally ripe where, as here, it "less burdensome" to do so. *Snoqualmie Indian Tribe v.*

27    *Washington*, 8 F.4th 853, 861 (9th Cir. 2021); *see also In re Aiken Cnty.*, 645 F.3d 428, 434 (D.C. Cir.
    2011) ("[E]ven in its prudential aspect, [ripeness] is a threshold inquiry that . . . may be addressed prior

28    to consideration of other Article III justiciability doctrines."); *accord Alaska Right to Life*, 504 F.3d at

*Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (holding that "the district court should have declined to exercise jurisdiction on prudential ripeness grounds"); *Underwood v. Mackay*, 614 F. App'x 871, 873 (9th Cir. 2015) (affirming dismissal under 12(b)(1) on prudential ripeness grounds).

### A. Plaintiffs' Affiliation Claims Are Not Fit For Decision.

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stavrianoudakis v. United States Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)). In cases against the government, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)). In answering that question, courts should consider "whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Stavrianoudakis*, 108 F.4th at 1139 (quoting *Stormans*, 586 F.3d at 1126). "[E]ven final agency rules may not be fit for review unless the rule has been concretely applied to the plaintiff." *Ass'n of Am. Med. Colleges*, 217 F.3d at 780.

Plaintiffs' affiliation claims are not fit for decision because there is no loan for which SBA has (1) completed its decision-making process regarding forgiveness and (2) denied forgiveness based on the application of its affiliation rules. SBA partially forgave two loans pursuant to a settlement and has denied forgiveness to one (Gold Club's second-draw loan) based on the statutory exclusion of prurient businesses from the second-draw loan program, *not* based on the borrower's affiliations. FAC ¶¶ 93, 210, 224; FAC Ex. C, ECF 18-1 at 21–23. Two additional loans (Meacham's first-draw loan and 90's second-draw loan) were forgiven, and Plaintiffs do not allege that SBA has initiated post-payment review of those loans. *See* FAC ¶¶ 135, 315. Those loans cannot plausibly serve as a basis for challenging SBA's application of its affiliation rules because Plaintiffs lack nonconclusory allegations that SBA will injure them in the future

849.

1  by applying its affiliation rules to these loans.  Of the nineteen other loans discussed in the First Amended

2  Complaint, twelve were initially forgiven and are now subject to post-payment review.  *Id.* ¶¶ 121, 173,

3  240, 256, 269, 283–84, 297, 313, 328, 340.  Plaintiffs allege that the seven others are pending before the

4  agency, either because SBA has not issued an FLRD, SBA has withdrawn an FLRD denying forgiveness,

5  OHA has remanded the FLRD to SBA, or Plaintiffs have appealed the SBA's FLRD denying forgiveness

6  to OHA and that appeal remains pending.  *See id.* ¶¶ 73, 82, 128, 158, 195, 198, 215. 229, 299.  Because

7  SBA's actions on these loans is not final, none of its conduct with respect to these still-in the-process-of-

8  being-reviewed loans represents "a definitive statement of an agency's position," much less one that has

9  an "immediate effect on the complaining parties."  *Stavrianoudakis*, 108 F.4th at 1139.

10         First, as SBA's letters to Plaintiffs make clear, the mere fact that SBA is reviewing some Plaintiffs'

11  compliance with SBA's affiliation rules does not mean that SBA has made a final determination that those

12  Plaintiffs violated those rules.  *See* FAC ¶ 11, Ex. A, ECF 18-1 at 8 (offering as an "exemplar" a post

13  payment review letter that stresses that SBA's concerns about "[p]otential affiliation issues" were merely

14  "preliminary" and would "undergo more processing before reaching a final decision").  "An investigation,

15  even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."

16  *Ass'n of Am. Med. Colleges*, 217 F.3d at 781.  Plaintiffs do not allege that SBA has completed any of these

17  post-payment reviews, much less that it has finally determined based on those reviews that any of

18  Plaintiffs' loans should be denied forgiveness based on the application of SBA's affiliation rules.

19         Second, SBA has not reached a final decision with respect to any of the seven forgiveness

20  applications that are still pending before the agency.  Plaintiffs allege that there is no outstanding decision

21  with respect to five of these applications, either because SBA's previous decisions were withdrawn or

22  because no decision has yet been issued.  But precisely because there is no outstanding decision, SBA

23  could decide to forgive these loans or deny them on a basis unrelated to the affiliation rule.  And even if

24  SBA ultimately decided to base a denial on its affiliation rules, that decision would rest on SBA's fact-

25  specific inquiry to determine each borrower's primary NAICS Code.  *See* 13 C.F.R. § 121.107 ("In

26  determining the primary industry in which a concern or a concern combined with its affiliates is engaged,

27  SBA considers the distribution of receipts, employees and costs of doing business among the different

28

industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.") The validity of any such decision would thus turn on an analysis and record SBA has yet to complete. In each of these cases, SBA's "actions are not final and their outcomes turn on contingencies which the court is ill-equipped to predict." *Ass'n of Am. Med. Colls.*, 217 F.3d at 782; *accord US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999); *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 792 (D.C. Cir. 2018).

The same is true for the two forgiveness denials that Plaintiffs allege remain pending before OHA. Claims based on these denials are not fit for decision because "the challenged action is [not] final." *Stavrianoudakis*, 108 F.4th at 1139; *see Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407–08 (9th Cir. 1996) (holding that an administrative appeal rendered a decision non-final for purposes of the APA and unfit for judicial resolution). "Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be 'inoperative' pending appeal." *Darby v. Cisneros*, 509 U.S. 137, 152 (1993). Here, SBA has adopted regulations requiring borrowers to appeal forgiveness denial to OHA, *see* 13 C.F.R. § 134.1201(d), and provided that "a timely appeal by a PPP borrower of a final SBA loan review decision will extend the deferment period of the PPP loan until a final decision is issued." 13 C.F.R. § 134.1202(d). Because both Smithville and Deja Vu timely appealed their forgiveness denials to OHA, FAC ¶¶ 215, 229, these decisions are not final and therefore are not fit for review. *Acura*, 90 F.3d at 1407–08; *see also Cal. Dep't of Water Res. v. FERC*, 361 F.3d 517, 521 (9th Cir. 2004) ("A party cannot seek agency reconsideration and judicial review of the same issue at the same time.").[8]

---

[8] Plaintiffs' allegations regarding the supposed futility of the administrative appeals process, FAC ¶¶ 417–422, do not change this analysis. "[T]he judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality." *Darby*, 509 U.S. at 144. And in any event, that futility may have excused Plaintiffs from raising certain *issues* in the administrative process does not mean they were excused from completing the process at all. *See Carr v. Saul*, 593 U.S. 83, 88 n.2 (2021) ("Issue exhaustion should not be confused with exhaustion of administrative remedies.").

**B.    Plaintiffs Will Experience No Cognizable Hardship From Delay.**

As to hardship, "a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Stavrianoudakis*, 108 F.4th at 1139.  Instead, Plaintiffs must show that the challenged action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Stormans*, 586 F.3d at 1126 (quoting *Ass'n of Am. Med. Colls.*, 217 F.3d at 783).  That is not the case here.  SBA is not regulating Plaintiffs' current conduct, it is merely determining whether Plaintiffs are entitled to forgiveness for loans they already received.  Moreover, for those Plaintiffs who timely applied for loan forgiveness, all principal and interest payments are deferred until SBA grants forgiveness or "determines that the loan is not eligible for forgiveness (in whole or in part)." [9]  86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); *see also* 86 Fed. Reg. 3692, 3703 (Jan 14, 2021).  And those payments remain deferred during the pendency of an administrative appeal.  *See* 13 C.F.R. § 134.1202(d).  There is therefore no need to adjudicate these issues before SBA has made a final determination with respect to Plaintiffs' loans. Plaintiffs "will have ample opportunity later to bring [their] legal challenge[s] at a time when harm is more imminent and more certain."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998); *accord Lee v. Or.*, 107 F.3d 1382, 1392 (9th Cir. 1997).

For these reasons, Plaintiffs' claims regarding SBA's affiliation rules are not ripe, and the Court should dismiss them.

---

[9] Plaintiffs allege that "some Plaintiffs," including SAW, are required to make payments on their loans because they failed to apply for loan forgiveness in a timely manner.  FAC ¶ 740.  This allegation is too conclusory to be credited for any Plaintiff other than SAW.  Nor is there any conclusive action by the SBA with respect to SAW, much less one based on the affiliation rule.  *See* FAC ¶¶ 195, 198. And in any event, an injury arising from Plaintiffs failure to file timely forgiveness applications is both self-inflected and not traceable to SBA's affiliation rules.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–13, 415–416 (2013).  An injury insufficient to confer standing cannot demonstrate sufficient hardship to justify early review of otherwise unripe agency action.

## II. Plaintiffs' APA Claims Related to SBA's Affiliation Rules (Counts VII, VIII, X, and XI) Do Not Challenge Final Agency Action.

Plaintiffs' APA claims challenging the application of SBA's affiliation rules must be dismissed for another reason: they do not challenge a final agency action. As a consequence, the Court lacks jurisdiction over these claims.

"The APA authorizes district courts to review only 'final agency action.'" *S. Cal. All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 836 (9th Cir. 2021) (quoting 5 U.S.C. § 704). "[T]he final agency action requirement ensures that courts do not intrude on the agency's turf and thereby meddle in the agency's ongoing deliberations." *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 578 (9th Cir. 2019). Final agency action is a jurisdictional perquisite. *Id.* There are "two requirements that must be satisfied for agency action to be deemed final." *S. Cal. All. of Publicly Owned Treatment Works*, 8 F.4th at 836. First, "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "An agency action is not final when subsequent agency decision making is necessary to create any practical consequences." *Id.*

Four of Plaintiffs' APA claims (Counts VII, VIII, X, and XI) challenge the manner in which SBA's affiliation rules have been applied to Plaintiffs. *See* FAC ¶¶ 668–69 (challenging the "application and enforcement of the Affiliation Exception Provisions"); ¶¶ 673–74 (same); ¶ 686 (challenging SBA's affiliation rules "as applied by the SBA"); ¶ 691 (same). But, as explained above, no Plaintiff alleges a final agency action involving the application of SBA's affiliation rules—and thus those rules have not been finally applied to Plaintiffs. To the extent SBA has taken *any* action with respect to Plaintiffs involving the affiliation rules, it has not been the consummation of SBA's decisionmaking process, nor has it been an action by which rights or obligations have been determined or from which legal consequences will flow.

First, with respect to six of the loans discussed in the First Amended Complaint, Plaintiffs allege that SBA has either (1) partially forgiven the loan pursuant to a settlement, (2) forgiven the loan and not

initiated  post-payment review, (3) denied forgiveness based solely on the prurient business exclusion, or (4) issued no decision at all.  In each of these cases, Plaintiffs allege no "action" involving the affiliation rules, much less a final action that adversely affected Plaintiffs.  FAC ¶¶ 93, 135, 210, 224, 299, 315; *see also* 5 U.S.C. § 702 (authorizing judicial review of agency action by persons "adversely affected or aggrieved" by that action).  Second, the mere initiation of post-payment review for twelve loans that SBA initially forgave is a "quintessentially non-final . . .  form of agency action," *Ass'n of Am. Med. Colls.*, 217 F.3d at 78, and cannot be challenged under the APA even in the subset of those cases where SBA mentioned affiliation issues as a possible basis for a future denial.  Third, the four FLRDs that have been withdrawn by or remanded to SBA are not final agency action because the agency has made no conclusive determination about whether to deny any of these loans.  *See* FAC ¶¶ 73, 82, 128, 158, 187, 193, 195, 198.

Finally, the two loans that Plaintiffs allege are on appeal to OHA are not final agency action because SBA (1) adopted a rule requiring FLRDs to be appealed to OHA before a borrower may seek judicial review, 13 C.F.R. § 134.1201(d), and (2) provided that borrowers' loan payments remain deferred during the pendency of a timely filed administrative appeal, 13 C.F.R. § 134.1202(d).  Under such circumstances, an initial agency decision like an FLRD is not final for the purposes of judicial review under the APA.  *See Darby*, 509 U.S. at 152; 5 U.S.C. § 704.  Indeed, even if an appeal to OHA were not mandatory, the fact that Plaintiffs *did* file administrative appeals would render the challenged FLRDs nonfinal.  *See Acura*, 90 F.3d at 1407.

Plaintiffs have alleged no instance in which SBA has finally determined that any Plaintiff must repay its loans because it was ineligible for those loans under SBA's affiliation rules.  Instead their claims are an improper "attempt[] to short-circuit agency adjudicatory processes that [are], at best, still in process."  *San Francisco Herring Ass'n,* 946 F.3d at 581.  The Court therefor lacks jurisdiction over Plaintiffs' APA claims challenging the affiliation rules, which are "appropriately adjudicated in the context of individual [final] decisions."  *S. Cal. All. of Publicly Owned Treatment Works*, 8 F.4th at 839. The Court should dismiss Counts VII , VII, X, and XI on this basis as well.[10]

---

[10] Moreover, the fact that the Court lacks jurisdiction to consider Plaintiffs' APA challenges to the application of SBA's affiliation rules provides an additional reason to dismiss its constitutional challenges regarding those rules (Counts V and VI) as unripe. "If there is one doctrine more deeply rooted than any

III.    **Only Gold Club's Challenges Related to the Denial of Forgiveness on Its Second-Draw Loan Are Ripe.**

As the forgoing analysis shows, only Plaintiffs' claims based on the denial of Gold Club's second-draw loan are ripe, because those are the only challenges where SBA's determination is final and no further factual development is required. *See Stavrianoudakis*, 108 F.4th at 1139. But the ripeness of Gold Club's claims regarding its second-draw loan does not give Plaintiffs license to raise similar claims that are not themselves ripe. To the contrary, "[t]he ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—postimplementation litigation." *Ohio Forestry Ass'n*, 523 U.S. at 735. Therefore, to the extent that Plaintiffs press other claims or seek relief beyond those that could be raised or sought by Gold Club itself based on the denial of its second-draw loan, the Court should decline to exercise jurisdiction over those claims as well. This includes the non-Gold Club Plaintiffs' as-applied First and Fifth Amendment challenges to the exclusion of prurient businesses from the PPP, Plaintiffs' claims that are directed solely are the invalidity of *regulatory* exclusion of prurient businesses from the PPP, Plaintiffs' unripe due process and APA challenges to SBA's administrative appeals process, Plaintiffs' unripe estoppel claims, and Plaintiffs' unripe requests for attorneys' fees and injunctive relief.

Plaintiffs assert both facial and as-applied challenges under the First and Fifth Amendment to the exclusion of prurient businesses from the PPP. FAC ¶¶ 629, 635. But any as-applied claims regarding loans other than Gold Club's second-draw loan are not ripe because SBA has not finally determined that any other loan should be denied, much less the specific grounds on which that decision will be based. An as-applied constitutional challenge regarding the application of the regulatory or statutory prurient business exclusions to those loans "requires an adequately developed factual record to render it ripe."

---

other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). Therefore, "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *cf. Matal v. Tam*, 582 U.S. 218 (2017) (addressing a forfeited statutory argument because it could "resolve [the] case and leave the First Amendment question for another day"). The Court should not entertain constitutional challenges that could be resolved on other grounds "at a time when harm is more imminent and more certain." *Ohio Forestry Ass'n*, 523 U.S. at 734.

*Thomas*, 220 F.3d at 1142. That record does not exist, so Plaintiffs First and Fifth Amendment challenges to the prurient business exclusion (Counts I and II) should be limited to facial challenges and to any as-applied challenge arising from the application of the statutory exclusion to Gold Club's second-draw loan.

Similarly, Plaintiffs' claims regarding the *regulatory* invalidity of the prurient business exclusion (Count IV and part of Count III) are not ripe and should be dismissed.[11] SBA denied Gold Club forgiveness for its second-draw loan based on the *statutory* exclusion of prurient businesses from the second-draw loan program. *See* 15 U.S.C. §636(a)(37)(A)(iv)(III). Whether or not SBA validly promulgated and incorporated the prurient business exclusion into the first-draw program is immaterial to the validity of *Congress's* decision to do so for the second-draw program. SBA has yet to make a final determination denying any Plaintiff forgiveness based on the application of the prurient business exclusion to first-draw loans, so claims regarding the validity of that regulatory exclusion are not yet ripe. With respect to these loans, "the agency has [not] completed its decisionmaking process, and . . . the result of that process is [not yet] one that will directly affect the parties." *Ass'n of Am. Med. Colleges*, 217 F.3d at 780. The Court should therefore decline to exercise jurisdiction over Count IV in its entirety and over Count III to the extent it challenges the validity of the regulatory prurient business exclusion.

Plaintiffs' due process and APA challenges to SBA's administrative appeals process for PPP loans should also be limited to those connected to SBA's denial of Gold Club's second-draw loan. Only Gold Club's challenges to these rules based on the denial of its second-draw loan are ripe. Review of Plaintiffs' other due process challenges to SBA's administrative appeals process would be premature for two reasons. First, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998); *see also Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) ("[D]ue process varies depending on the

---

[11] Moreover, to the extent that these APA challenges concern the manner in which SBA interpreted and applied the prurient business exclusion to Plaintiffs, *see* FAC ¶ 642 (challenging the prurient business exclusion "as applied" by SBA); ¶¶ 646(c), (d), (e), 647 (challenging the prurient business exclusion "[a]s applied to Plaintiffs"), the Court lacks subject matter jurisdiction to consider these claims other than with respect to Gold Club's second-draw loan. For the reasons set out in Part II, *supra*, the other loans at issue are not the subject of any final agency action, much less one based on the prurient business exclusion.

1  particularities of a case"). These claims should therefore be considered "in the context of a specific factual

2  setting," not in the abstract. *Thomas v. City of New York*, 143 F.3d 31, 35 (2d Cir. 1998) (dismissing due

3  process claim as unripe). Second, a successful due process claim requires a showing that the plaintiff was

4  prejudiced by the alleged process failure. *See Horning v. SEC*, 570 F.3d 337, 347 (D.C. Cir. 2009). Until

5  SBA the administrative appeals process is complete, it is impossible to know whether any protected

6  property interest Plaintiffs may have will be prejudiced by the deficiencies they allege. The absence of a

7  final determination regarding Plaintiffs' other loans also renders Plaintiffs' APA challenges regarding the

8  application of SBA's administrative appeals process to those loans unripe.

9  Finally, Plaintiffs' estoppel cause of action is unripe with respect to any loan other than Gold

10  Club's second-draw loan. A party claiming estoppel against the government must show, among other

11  things, "both (1) 'affirmative misconduct' on the part of the government and (2) that 'the government's

12  wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage.'" *Indus.*

13  *Customers of Nw. Utilities v. Bonneville Power Admin.*, 767 F.3d 912, 928 (9th Cir. 2014) (quoting *United*

14  *States v. Hatcher*, 922 F.2d 1402, 1409, 1411 n. 12 (9th Cir.1991)). Without knowing whether and on

15  what basis SBA will deny forgiveness to any other loan, it is impossible to evaluate Plaintiffs' other

16  estoppel claims.[12]

17  Accordingly, the Court should dismiss Count IV, which is material only to the *regulatory*

18  exclusion of prurient businesses from the first-draw loan program, because there is no final SBA action

19  pursuant to that regulation, and limit Plaintiffs' remaining claims to those that Gold Club can raise based

20  on SBA's decisions to deny forgiveness on its second-draw loan.

21  **IV.    Plaintiffs Fail to Plausibly Allege that the Exclusion of Prurient Businesses from the PPP**
        **Violates the First Amendment.**

22
23  Plaintiffs list a number of purported ways that excluding prurient businesses from the PPP program

24  supposedly violated the First Amendment. *See* FAC ¶ 629(a)-(q).[13] No matter how Plaintiffs frame their

25  ───────────────────

26  [12] The same deficiencies also render Plaintiffs' requests for attorneys' fees and injunctive relief
     unripe (though, as explained below, neither a request for attorneys' fees nor a request for injunctive
     relief is an independent cause of action).

27  [13] For example, Plaintiffs claim that the prurience exclusion is an impermissible content- and

28  viewpoint-based regulation of speech, FAC ¶¶ 629(a)–(d), an unconstitutional condition on a

challenge, however, Plaintiffs fail to plausibly allege any violation of the First Amendment. The fundamental problem with Plaintiffs' allegations is that Congress, in deciding not to extend PPP loans to businesses of a prurient sexual nature, was not "trying to regulate or suppress . . . adult entertainment. It has simply chosen not to subsidize it." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 24 F.4th 640, 646 (7th Cir. 2022). "Such selective, categorical exclusions from a government subsidy do not offend the First Amendment." *Id.*

### A.   The Prurient Business Exclusion Is Not a Content- or Viewpoint-Based Regulation of Speech.  It Is a Permissible Limit on The Scope of a Government Subsidy.

Plaintiffs begin by asserting that the exclusion of prurient businesses from the PPP is an impermissible content- and viewpoint-based regulation of speech.  FAC ¶ 629(a)-(d).  That is incorrect.

The First Amendment primarily applies to governmental restrictions on private speech. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (explaining First Amendment standards applicable to "government regulation of speech"); *Moody v. NetChoice, LLC*, 603 U.S. 707, 718 (2024) (looking to whether challenged laws "regulate speech when applied to the parties below"). But the statutory exclusion of prurient businesses from the second-draw loan program is not a prohibition or restriction on speech.  It simply embodies Congress's decision not to subsidize businesses of a prurient sexual nature. *Camelot Banquet Rooms*, 24 F.4th at 646; *see also Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 229 (2d Cir. 2021) (concluding, in the context of a challenge to the regulatory exclusion of prurient businesses from the first-draw loan program, that the "prurience restriction is . . . part of a selective subsidy program" and that plaintiffs were unlikely to succeed on the permits of their First Amendment claim).

"[A]lthough government may not place obstacles in the path of a person's exercise" of constitutional freedoms, "it need not remove those not of its own creation." *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549–50 (1983) (cleaned up).  The Government is thus "not required by the First Amendment to subsidize lobbying"—or any other form of speech—and does not restrict or penalize speech simply because it has "chosen not to pay for [it]." *Id.* at 546 (citing *Cammarano*

---

government benefit, *id.* ¶ 629(g), an unlawful prior restraint, *id,* ¶ 626(g), and unconstitutional because it does not conform to the constitutional definition of obscenity, *id.* ¶ 629(j).

*v. United States*, 358 U.S. 498, 513 (1959)); *see also Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (explaining that government "is not required to assist others in funding the expression of particular ideas"); *United States v. Am. Library Ass'n*, 539 U.S. 194, 212 (2003) (plurality) (a "decision not to subsidize the exercise of a fundamental right does not infringe the right.") (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)); *Leathers v. Medlock*, 499 U.S. 439, 450 (1991) (government "is not required to subsidize First Amendment rights[.]").  Government does not penalize, prohibit, restrict, or otherwise infringe on speech simply because it chooses not to pay for it.

The controlling principle is that "government can make content-based distinctions when it subsidizes," rather than regulates, speech. *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188–89 (2007). It has "broad discretion" "to make content-based judgments in deciding what private speech to make available to the public." *Am. Library Ass'n*, 539 U.S. at 204–05; *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587–88 (1998) ("[I]n the subsidy context," the Government may allocate funding "according to criteria that would be impermissible were direct regulation of speech . . . at stake[.]"). Though content-based, the Government's funding choices will be upheld unless they are shown to be "the product of invidious viewpoint discrimination," or "aim[ed] at the suppression of dangerous ideas." *Id.* at 586–87; *Regan*, 461 U.S. at 543–49; *see also Leathers*, 499 U.S. at 447, 450–51 ("[D]ifferential taxation . . . is constitutionally suspect [only] when it threatens to suppress the expression of particular ideas or viewpoints.").

Plaintiffs present no nonconclusory allegations that the statutory exclusion of prurient businesses from the second-draw loan programs is subject to invalidation under these standards.  The policy against loans to businesses of a prurient sexual nature is entirely viewpoint-neutral and singles out no particular ideas for disfavorable treatment.  The rule prohibits federally subsidized loans to these businesses without regard to any ideas they wish to convey, promote, or oppose through the live performances they present.[14]

---

[14] Plaintiffs' reliance on *D. Houston Inc. v. U.S. Small Bus. Admin.*, 579 F. Supp. 3d 959, 967 (S.D. Tex. 2020), *see* FAC ¶ 629(c), is misplaced.  There, the court applied strict scrutiny after concluding that "PPP loans are not a subsidy" but rather "a benefit the Government confers upon small businesses." 579 F. Supp. 3d at 967.  This distinction is illusory and immaterial.  A subsidy clearly confers a benefit on the recipient, and the Supreme Court's cases have used the terms interchangeably.  *See Regan*, 461 U.S. at 545, 550 (describing tax exemptions at issue as both a "subsidy" and "benefit"); *Am. Libr. Ass'n*, 539 U.S.

Plaintiffs do not allege what viewpoint they believe the prurient business exclusion discriminates against, but insofar as they assert that prurience or lasciviousness is itself a viewpoint, that argument is foreclosed by binding Ninth Circuit precedent. In *PMG Int'l Div. L.L.C. v. Rumsfeld*, 303 F.3d 1163 (9th Cir. 2002), the Ninth Circuit explicitly rejected the argument that a prohibition on the sale of lascivious material on government property represented viewpoint discrimination, warning that viewing "lascivious" materials as inherently expressing a viewpoint would "risk eviscerating altogether the line between content and viewpoint." *Id.* at 1171; *accord General Media Commc'ns v. Cohen*, 131 F.3d 273, 282 (2d Cir. 1997). As the Seventh Circuit recently explained in rejecting an identical challenge, "it would be a category mistake to think that prurience or lasciviousness reflects a 'viewpoint' that the government may not discriminate against. The terms instead identify a category or subject matter of expressive conduct that may be subject to some forms of government regulation." *Camelot Banquet Room.*, 24 F.4th at 649.

The decision to exclude prurient businesses from the second-draw loan program was a permissible choice in defining "a selective subsidy, not impermissible viewpoint discrimination aimed at the suppression of dangerous ideas." *Deja Vu-San Francisco LLC v. U.S. Small Bus. Admin.*, No. 20-CV-03982-LB, 2020 WL 6260010, at *10 (N.D. Cal. Sept. 11, 2020). Accordingly, Plaintiffs allegations to not plausibly state a First Amendment violation.

## B.     The Prurient Business Exclusion Is Not an Unconstitutional Condition.

Plaintiffs' effort to recast their arguments as a challenge to unconstitutional conditions (FAC ¶ 629(f)) fares no better. Congress's "broad discretion" under the Spending Clause "to tax and spend for the 'general Welfare'" includes the authority "to impose limits on the use of [the] funds" it appropriates for particular programs, "to ensure they are used in the manner Congress intends." *Agency for Int'l Dev.*

---

at 210–12 (discussing federal financial assistance to public libraries to provide Internet access as a "benefit" and "subsid[y]"). Moreover, as explained in *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013), the difference in this context between permissible and impermissible conditions on the receipt of federal funding is the difference "between conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself[.]" *Id.* at 213–15. That is so without regard to whether the underlying spending program is labeled a "subsidy" or a "benefit." *See id.*

*v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).  As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds," even where the condition "may affect the recipient's exercise of its First Amendment rights." *Id.* at 214. "At the same time . . . the Government may not deny a benefit to a [party] on a basis that infringes [its] constitutionally protected . . . freedom of speech[.]" *Id.*  The relevant distinction is between conditions that merely "define the limits of [a] government spending program" by "specify[ing] the activities the [government] wants [or not] to subsidize"—which are permissible—and conditions that "leverage[ ] federal funding to regulate [recipients'] speech outside the scope of the program"—which are not. *Id.* at 214–17; *see also Rust*, 500 U.S. at 194, 197.

To illustrate the difference, *Alliance for Open Society* pointed to *Regan*. 570 U.S. at 215.  There the IRS had denied tax-exempt status to the plaintiff, a non-profit organization, because its intended use of tax-deductible contributions to support its lobbying activities was prohibited by § 501(c)(3) of the Internal Revenue Code. *Regan*, 461 U.S. at 542. The plaintiff challenged this prohibition as an unconstitutional condition imposed on its receipt of tax-deductible contributions from donors. *Id.*  The Court rejected this claim. *See id.* at 545–46. Treating the tax-deductibility of contributions as "similar to cash grants," the Court concluded that the plaintiff could continue to receive tax-deductible contributions for its non-lobbying activities by forming an affiliated tax-exempt entity, under § 501(c)(4) of the Code, that could conduct lobbying activities using sources of funds other than tax-deductible (that is, federally subsidized) contributions. *Id.* at 544–46.  Thus, the plaintiff was not prohibited from using non-subsidized contributions to engage in lobbying, nor denied other government benefits because of its intent to lobby; "Congress ha[d] merely refused to pay for the lobbying out of public monies." *Id.* at 545.

So too here. "The Paycheck Protection Program limits [on subsidizing loans to prurient businesses] fit comfortably on the permissible *Regan*, *Rust*, and *Ysursa* side of the line as conditions that limit the scope of the subsidy/loan program." *Camelot Banquet Rooms*, 24 F.4th at 651.  To be forgiven, PPP loans had to be spent on payroll costs or other covered business expenses. *See* 15 U.S.C. § 636m(b).  Accordingly, in declining to extend forgivable PPP loans to these businesses Congress was making a permissible choice about what it "want[ed] to subsidize." *All. for Open Soc'y Int'*, 570 U.S. at 213.

1    Plaintiffs remained free to operate prurient businesses, just not on the Government's dime. "Just as

2    Congress was not trying to require lobbyists to stop lobbying [by excluding them from the PPP], it was

3    not trying to pressure plaintiffs to change their adult entertainment." *Camelot Banquet Rooms.*, 24 F.4th

4    at 651 (7th Cir. 2022); *Déjà Vu,* 2020 WL 6260010, at *11-12 (concluding that a similar prurient

5    businesses exclusion "falls in the *Regan* and *American Library* category").

6        Plaintiffs fail to plausibly allege that the statutory exclusion of prurient businesses from the

7    second-draw loan program "improperly leverages the subsidy to regulate speech" beyond the scope of the

8    program itself. *Pharaohs*, 990 F.3d at 229–30.

9        **C.    The Prurient Business Exclusion Is Not a Prior Restraint.**

10        Plaintiffs' invocation of the "prior restraint" doctrine (FAC ¶ 629(h)) is also mistaken. The "term

11    prior restraint is used to describe administrative and judicial orders forbidding certain communications

12    when issued in advance of the time that such communications are to occur." *Alexander v. United States*,

13    509 U.S. 544, 550 (1993) (citation omitted).  But in restricting access to subsidized PPP second-draw

14    loans, Congress "d[id] not forbid" Plaintiffs to "engage in any expressive activities in the future, nor d[id]

15    [Congress] require [them] to obtain prior approval for any expressive activities." *Id.* at 550–51. Plaintiffs'

16    performers may dance as provocatively as Plaintiffs would like "without any risk" that the prurient

17    business exclusion would "impose[ ]" a "legal impediment to . . . [their] ability to engage in any expressive

18    activity [they] choose[ ]." *Alexander*, 509 U.S. at 551.  Accordingly, the prurient business exclusions do

19    not impose a prior restraint on Plaintiffs' speech.

20        **D.    Congress Had a Rational Basis for the Prurient Business Exclusion.**

21        Plaintiffs also assert that the statute and regulation violate the First Amendment because "they do

22    not further any permissible and important governmental interest."  FAC ¶ 629(i); *see also id.* ¶ 629(m);(n).

23    But that is not the pertinent legal standard.  Because the exclusion of prurient businesses from the PPP

24    does not infringe on Plaintiffs' First Amendment rights, as explained above, the government "need only

25    demonstrate a rational basis to justify" the exclusion.  *Ysursa*, 555 U.S. at 359 (citing *Regan*, 461 U.S. at

26    546–51); *see also Camelot Banquet Rooms*, 24 F.4th at 646–47; *Pharaohs*, 990 F.3d at 230; *Deja Vu*, No.

27    20-CV-03982-LB, 2020 WL 6260010, at *13 (N.D. Cal. Sept. 11, 2020).  As the Seventh Circuit put it,

28

1    "[a] government spending program, especially one responding to an economic emergency, is subject to

2    the least rigorous form of judicial review." *Camelot Banquet Rooms*, 24 F.4th at 647.

3        Rational-basis review "is a paradigm of judicial restraint." *FCC v. Beach Commc'ns, Inc.*, 508

4    U.S. 307, 314 (1993). Under the rational-basis test, a court is required to uphold the classification "'if

5    there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"

6    *Gallinger v. Becerra*, 898 F.3d  1012, 1017 (9th Cir. 2018) (quoting *Heller v. Doe*, 509 U.S. 312, 320

7    (1993)) (emphasis omitted); *see also Beach Communc'ns*, 508 U.S. at 313. "[I]t is entirely irrelevant for

8    constitutional purposes," moreover, "whether the conceived reason for the challenged distinction actually

9    motivated" the adoption of the regulation.  *Beach Communc'ns*, 508 U.S. at 315; *see also Jackson Water*

10   *Works, Inc. v. Pub. Utilities Comm'n of State of Cal.*, 793 F.2d 1090, 1094 (9th Cir. 1986).

11       The prurient business exclusion clearly satisfies that standard.  The adverse "secondary effects"

12   associated with sexually oriented adult-entertainment establishments are well known. They include

13   negative impacts on "crime rates, property values, and the quality of [a] city's neighborhoods," as well as

14   "unlawful public sexual activity, prostitution, and drug trafficking." *Ctr. for Fair Pub. Policy v. Maricopa*

15   *Cnty.*, 336 F.3d 1153, 1164–65, 1166 (9th Cir. 2003) (quotation omitted); *see also Gammoh v. City of La*

16   *Habra*, 395 F.3d 1114, 1124 (9th Cir. 2005) (discussing object of city ordinance to protect the public

17   welfare against the negative secondary effects of "adult businesses," including "the protection of the city's

18   retail trade, the prevention of blight in neighborhoods and . . . protecting and preserving the quality of the

19   city's neighborhoods and the city's commercial districts").  "If those secondary effects can support time,

20   place, and manner regulations [subject to intermediate security], they surely provide a rational basis for

21   Congress to choose not to subsidize this group of businesses." *Camelot Banquet Rooms*, 24 F.4th at 648;

22   *see also Pharaoh*s, 990 F.3d at 230 (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–49,

23   (1986) and *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 63 (1973) for the proposition that "legitimate

24   interests may be served by the government's decision not to subsidize adult-entertainment venues.").

25   Plaintiffs fail to plausibly allege that there is no rational basis for the prurient business exclusion.

26

27

28

### E.     The Prurient Business Exclusion Need Not Conform to The Constitutional Standard for Obscenity.

Plaintiffs also allege that the prurient business exclusion violates the First Amendment because the standard by which it identifies the type of performances, products, services, and presentations that the SBA will not finance—that is, material of a "prurient sexual nature"—does not "conform to the constitutional standards regarding obscenity." FAC ¶ 629(j). But *Miller v. California*, 413 U.S. 15 (1973) merely sets "the standards which must be used to identify obscene material that [government] may *regulate* without infringing on the First Amendment." *Id.* (emphasis added). As shown above, the decision not to extend second-draw loans to prurient businesses does not "prohibit[ ]" or "regulate" speech in any fashion. It simply embodies a determination by Congress that it would not offer federal financial support for certain "sexually oriented" products, services, and activities—a decision that does not "infring[e] on the First Amendment," *Miller*, 413 U.S. at 20; *see Library Ass'n,* 539 U.S. at 212; *Rust*, 500 U.S. at 193. Accordingly, the Constitution did not require Congress to adopt the *Miller* test when deciding, and describing, which products, services, and activities it will not finance. *See Deja Vu*, 2020 WL 6260010, at *11 (rejecting this argument). Plaintiffs' allegations to the contrary do not state a claim.

### F.     The Prurient Business Exclusion Is Not Unconstitutionally Vague.

Plaintiffs also allege that the prurient business exclusion is "unconstitutionally vague on their face and as applied by SBA. ¶ 629(o). These allegations are also implausible. The void-for-vagueness doctrine is a due-process doctrine requiring that a law "give the person of ordinary intelligence a reasonable opportunity to know what is *prohibited*, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "[T]he vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier,* 520 U.S. 259, 266 (1997). The doctrine requires greater "precision of *regulation*" in areas touching on First Amendment rights. *Keyishian v. Bd. of Regents Univ.*, 385 U.S. 603–04 (1967) (emphasis added).

The prurient business exclusion, however, is not a prohibition or regulation of speech that forbids or requires Plaintiffs to do anything. Rather, it merely sets the terms on which the Government will

1    exercise its broad discretion to subsidize activities, or not. *All. for Open Soc'y*, 570 U.S. at 215; *Rust*, 500

2    U.S. at 192–94. Accordingly, the controlling standard comes from *National Endowment for the Arts v.*

3    *Finley*, 524 U.S. 569 (1998). In *Finley,* four performance artists and an artists' association brought suit

4    contesting the validity of a federal law that required the NEA to "tak[e] into consideration general

5    standards of decency and respect for the diverse beliefs and values of the American public" when making

6    grant determinations. 524 U.S. at 572, 576–78. Congress enacted this "decency and respect" provision

7    following the public controversy that erupted after an NEA grant was used to fund an exhibition of

8    homoerotic photographs by Robert Mapplethorpe, and another was awarded to photographer Andres

9    Serrano, whose work, entitled "Piss Christ," depicted a crucifix immersed in urine. *Id.* at 574–76. The

10   district court agreed with the plaintiffs' contention that the "decency and respect" criteria were

11   unconstitutionally vague, stating that they "fail[ed] adequately to notify applicants of what is required of

12   them or to circumscribe NEA discretion." *Id.* at 578. The court of appeals agreed with the district court,

13   "[c]oncluding that the decency and respect criteria [were] not susceptible to objective definition." *Id.* at

14   579. The Supreme Court reversed.

15          The Court acknowledged that "[u]nder the First and Fifth Amendments, speakers are protected

16   from arbitrary and discriminatory enforcement of vague standards," and that the terms of the "decency

17   and respect" provision were "undeniably opaque." *Id.* at 588. "[I]f they appeared in a criminal statute or

18   regulatory scheme," the Court allowed, "they could raise substantial vagueness concerns." *Id.*

19   Nevertheless, the Court sustained the validity of the "decency and respect" provision because, in the

20   context of a grant program, "[i]t [was] unlikely . . . that speakers [would] be compelled to steer too far

21   clear of any 'forbidden area.'" *Id.* And even if some artists "conform[ed] their speech to what they

22   believe[d] to be the decisionmaking criteria in order to acquire funding," "when the Government is acting

23   as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id.*

24   *Finley* thus establishes that "the standard set in evaluating statutes related to subsidies for speech is less

25   demanding than the standard for statutes that impose penalties for speech." *Ostrom v. O'Hare*, 160 F.

26   Supp. 2d 486, 496 (E.D.N.Y. 2001); *see also Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 94 (1st Cir.

27   2004); *United States v. Nat'l Training & Info. Ctr., Inc.*, 532 F. Supp. 2d 946, 953-54 (N.D. Ill. 2007)

28

("[B]ecause there is no right to government subsidization of free speech, regulations relating to entitlement programs are entitled to greater leniency in their construction.").

Under *Finley*, the prurient business exclusion is plainly constitutional. As a standard by which the Government makes funding decisions, "prurient sexual nature" is far less opaque than criteria like "general standards of decency," and "respect for the diverse beliefs and values of the American public," which the Court readily upheld in *Finley*. The prurient business exclusion n has governed SBA lending decisions under the Section 7(a)program for nearly a quarter-century, and Plaintiffs do not allege that they or other speakers like them have steered clear of "forbidden area[s]," or "conform[ed] their speech to what they believe to be the decisionmaking criteria" in order to obtain SBA loans. *See Finley*, 524 U.S. at 588-89.

The Second Circuit's decision in *General Media* reinforces the conclusion that the prurient business exclusion is not impermissibly vague. There, the plaintiffs also maintained that the Act barring sales or rental of "lascivious" sexually explicit material on military bases was unconstitutionally vague. *General Media*, 131 F.3d at 286. Rejecting that argument, the Second Circuit observed that the "degree of linguistic precision" required of a statute "varies with the nature—and in particular, with the consequences of enforcement—of the statutory provision." *Id.* "[A]bsolute linguistic precision" was not required of the Act, therefore, because the sole "penalty" it applied to the plaintiffs was "losing the government's assistance in (re)selling their wares." *Id.* Noting the flexibility accorded to Congress in prescribing rules for the governance and regulation of the armed forces, the court held that many of the terms used in the Act, including "lascivious," had been found to be sufficiently clear for constitutional purposes in the past, and that any remaining ambiguity or subjectivity was constitutionally tolerable under applicable vagueness standards. *Id.* at 286–87. That reasoning is just as apt, if not more so, when applied to a subsidy provision such as the prurience exclusion.

### G.    Plaintiffs Have Not Plausibly Alleged that the Prurient Business Exclusion Is Being Applied to Plaintiffs in a Retaliatory Manner.

Plaintiffs also assert that the prurient business exclusion has been applied "in a discriminatory fashion in retaliation for the nature of the speech and expression engaged in by some of these Plaintiffs and for some of them and/or their principals having participated in other litigation against SBA arising out of Pandemic funding programs." FAC ¶ 629(e). This allegation is both conclusory and implausible.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398, (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To state a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022). Plaintiffs must also show that the defendant "'intended to interfere' with [Plaintiffs'] First Amendment rights and that [they] suffered some injury as a result." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Of course, the retaliation analysis must account for the reality that the Government's "decision not to subsidize the exercise of a fundamental right does not infringe the right." *Regan*, 461 U.S. at 549. Where, as here, Congress "has simply chosen not to subsidize" certain expressive activities, *Camelot*, 24 F.4th at 646, merely examining whether an applicant engaged in those activities is not evidence of retaliation. *Cf. Nieves*, 587 U.S. at 403 (noting that "protected speech is often a legitimate consideration when deciding whether to make an arrest"); *accord Reichle v. Howards*, 566 U.S. 658, 668 (2012). *Regan* illustrates this point. In upholding a statute that forbid the use of tax-deductible funds for political lobbying, the Court distinguished *Perry v. Sindermann*, 408 U.S. 593 (1972), a First Amendment retaliation case, by explaining that, in the case before it, Congress had not denied "Plaintiffs any *independent* benefit on account of its intention to lobby," it "merely refused to pay for the lobbying out of public monies." *Regan*, 461 U.S. at 545 (emphasis added). Plaintiffs cannot show that SBA "'intended to interfere' with [their] First Amendment rights," simply by alleging that SBA has concluded that (or merely investigated whether) Plaintiffs are businesses of a prurient sexual nature. Plaintiffs must show that SBA retaliated against them for some expression "independent" of the basis on which Congress chose not to subsidize its activities.

1    They have not done so.  Indeed, despite its length (and Plaintiffs' many issues with SBA's

2    application of the prurient business exclusion) the First Amended Complaint lacks any nonconclusory

3    allegation that the statutory exclusion was applied to Gold Club "in a discriminatory fashion" with the

4    desire to retaliate against Plaintiffs for their expressive activities.  To the contrary, Plaintiffs allege that

5    "SBA . . . has selected any business the SBA alleges to be an adult entertainment business for additional

6    scrutiny."  FAC ¶ 655.  That scrutiny is "wholly legitimate," *Nieves* 587 U.S. at 392, because, under SBA

7    regulations (for first-draw loans) and by statute (for second-draw loans), such businesses may not have

8    been eligible for PPP funding.

9    Plaintiffs' other asserted basis for this retaliation claim is also conclusory and underdeveloped.

10    Plaintiffs allege that SBA may have applied the prurient business exclusion in retaliation for the

11    participation of some unidentified subset of Plaintiffs "and/or their principals . . . in other litigation against

12    SBA arising out of Pandemic funding programs."  FAC ¶ 629(e).  But Plaintiffs do not plausibly allege a

13    "substantial causal relationship between the constitutionally protected activity and the adverse action."

14    *Boquist*, 32 F.4th at 775.  The lawsuits discussed in the First Amendment Complaint involving Gold Club

15    and other similarly situated entities took place years before the denial of Gold Club's loan, *see* FAC ¶¶

16    85, 651–655; ¶ 655(a), and Plaintiffs lack nonconclusory allegations that the decision to deny Gold Club's

17    second-draw loan on prurience grounds was based on this earlier litigation concerning other pandemic

18    relief programs or other plaintiffs.  *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 752

19    n.4 (9th Cir. 2001) (finding that a lapse of one-and-a-half years between the protected activity and the

20    alleged retaliation was too long to suggest a causal connection).  Moreover, the fact that SBA initially

21    forgave the majority of Plaintiffs' loans during the same period severely undercuts the plausibility of any

22    link between the litigation and SBA's later decision to deny Gold Club's loan on prurience grounds.  In

23    any event, this conclusory allegation has nothing to do with whether the *prurient business exclusion* itself

24    violates the First Amendment, which is the allegation in Count I.

25    Plaintiffs have not plausibly alleged that prurient business exclusion violates the First Amendment.

26    Count I should be dismissed.

27

28

1

## V.    Plaintiffs Have Not Plausibly Alleged the Prurient Business Exclusion Violates the Fifth Amendment.

2

Plaintiffs Fifth Amendment challenge to the prurient business exclusion fares no better.  Plaintiffs

3

contend that the prurient business exclusion violates the Fifth Amendment guarantees of equal protection

4

and "occupational liberty." [15] FAC ¶ 634.  Neither contention has met.

5

First, Plaintiffs' equal protection argument is foreclosed by *Regan* and *Ysursa*.  In *Regan* the

6

plaintiff, in addition to raising a First Amendment challenge, also "contend[ed] that the equal protection

7

component of the Fifth Amendment render[ed] the [section 501(c)(3)] prohibition against substantial

8

lobbying invalid."  461 U.S. at 546.  The Supreme Court disagreed.  Because prohibiting the use of

9

federally subsidized contributions for lobbying purposes did not violate the First Amendment rights of

10

non-profit organizations, and because the law was not evidently aimed at suppressing particular ideas, the

11

Court concluded that it was subject only to rational-basis review, not strict scrutiny, under the Fifth

12

Amendment.  *Id.* at 548-49.  The lobbying restriction easily withstood review under this standard, because

13

it was "not irrational" of Congress to decide that the public interest in promoting additional lobbying by

14

charities would not be worth the taxpayer expense.  *Id.* at 550; *see also Ysursa*, 555 U.S. at 359–60 ("Given

15

that the State has not infringed the unions' First Amendment rights" by refusing to make public employee

16

payroll deductions for union political activities, "the State need only demonstrate a rational basis to justify

17

[its decision].").

18

The prurient business exclusion must be upheld on the same grounds, largely for the reasons

19

discussed above. Because the exclusion restricts only the use of federally subsidized funds, not a firm's

20

own monies, to engage in business of a prurient sexual nature, and because the rule is neither viewpoint-

21

based nor aimed at suppressing particular ideas, the rule is subject only to rational-basis review under the

22

Fifth Amendment.  *Regan*, 461 U.S. at 550; *see Gallinger*, 898 F.3d at 1016 ("[R]ational-basis review is

23

the appropriate standard" of review when a law "implicates neither a suspect classification nor a

24

fundamental right."); *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279–80 (9th Cir. 2004) ("If the

25

classification at issue does not involve fundamental rights or suspect classes, it must be upheld 'if there is

26

27

28

---

[15] Plaintiffs also assert in passing that the prurience exclusion violates *procedural* due process, FAC ¶ 635(d), but allege no facts to support this assertion.

a rational relationship between the disparity of treatment and some legitimate governmental purpose.'") (quoting *Heller v. Doe,* 509 U.S. 312, 319–20 (1993)).   As explained above, the prurient business exclusion easily satisfies this standard.

Plaintiffs' "occupational liberty" argument also lacks merit. To state an occupational liberty claim in the Ninth Circuit, a plaintiff must show that she is "is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, (2008).   Put another way, occupational liberty claims are subject only to rational basis review, which the prurient business exclusion clearly survives. *See Deja Vu-San Francisco*, 2020 WL 6260010, at *14.   Plaintiffs' due process claim should be dismissed.

## VI. Plaintiffs' Challenge to the Statutory Bar on Injunctive Relief Against SBA Is Not Ripe.

Count XVI alleges that 15 U.S.C. § 634(b)(1), which bars injunctive relief against SBA, is unconstitutional if interpreted as "an absolute bar to the issuance of any injunction against the SBA." FAC ¶ 723.   But any challenge to § 634(b)(1) is not ripe, because "the existence of the dispute itself hangs on future contingencies that may or may not occur." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996).   Courts may only "pass upon the constitutionality of acts of Congress . . . when the interests of litigants require the use of this judicial authority for their protection against *actual* interference." *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) (quoting *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 89–90 (1947)).   That is not the case here.

Whether Plaintiffs will be ever be injured by the statutory bar on injunctive relief depends on (1) SBA issuing a final decision denying loan forgiveness to Plaintiffs that (2) the Court finds to have been unlawful, but (3) cannot be remedied because of the statute's bar on injunctive relief against SBA.   As explained above, only one Plaintiff, Gold Club, has a reviewable decision denying it forgiveness on a PPP loan, and the Court has not yet considered the merits of Gold Club's challenges to that decision. Until this Court determines that SBA's denial of forgiveness to Gold Club was unlawful and that the statutory bar on injunctive relief prohibits any remedy, any possible injury from the bar on injunctive relief remains "conjectural [and] hypothetical," not "actual or imminent." *Twitter*, 56 F.4th at 1174 (9th

Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  This is especially true because other relief—including remand to the agency—may be sufficient to address any material errors SBA's review of Plaintiffs' loans.  "The possibility of some future unconstitutional application" of the bar on injunctive relief does not "entitle Plaintiffs to dispositive judgments on the provision's constitutionality." *City & Cnty. of San Francisco*, 42 F.4th at 1086–87.  The Court should therefore dismiss Plaintiffs' claim challenging § 634(b)(1) for lack of subject matter jurisdiction.[16]

**VII.    Counts XV and XVIII Should be Dismissed Because Requests for Attorneys' Fees and Injunctive Relief Are Not Causes of Action.**

The Court should also dismiss "Count XV" and "Count XVIII" because neither a request for attorneys' fees under the Equal Access to Justice Act nor injunctive relief are independent causes of action. Count XV seeks attorneys' fees and costs under the Equal Access to Justice Act.  FAC ¶719.  But the "EAJA does not provide an independent cause of action for litigants in federal court; instead, it simply 'authorizes the payment of fees to the prevailing party in an action against the United States.'" *Pham v. Jaddou*, No. 23-CV-1058-W-KSC, 2024 WL 436351, at *7 (S.D. Cal. Feb. 5, 2024) (quoting *Thomas v. Paulson*, 507 F. Supp. 2d 59, 62 n.2 (D.D.C. 2007)); *accord Cota v. United States*, No. C 13-00576 JSW, 2013 WL 6234574, at *7 (N.D. Cal. Dec. 2, 2013), *aff'd*, 628 F. App'x 500 (9th Cir. 2015).  Accordingly, Count XV should be dismissed for failure to state a claim.

"Count XVIII – Injunctive Relief" should be dismissed for the same reason. "[A] claim for 'injunctive relief' standing alone is not a cause of action." *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011) (collecting cases); *accord EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 996 (D. Nev. 2023) ("[I]njunctive relief is not an independent, free-standing cause of action."); *Lorona v. Ariz. Summit L. Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015); *Cunningham Energy, LLC v. Vesta O&G Holdings, LLC*, 578 F. Supp. 3d 798, 819 (S.D.W. Va. 2022).  The Court may consider Plaintiffs' requests for injunctive relief "to the extent they are proper forms of relief for claims that survive

---

[16] Of course, Plaintiffs' arguments regarding the constitutionality of § 634(b)(1) may *become* ripe if the Court concludes that SBA's denial of Gold Club's second-draw loan was unlawful but that relief is barred by § 634(b)(1).  But the fact that Plaintiffs may have occasion to challenge the constitutionality of § 634(b)(1) later does not mean they can assert a claim challenging the statute now. Ripeness is, after all, "peculiarly a question of timing" *Thomas*, 220 F.3d at 1138 (quoting *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974)).

1  the motion to dismiss,"[17] but it should not entertain a separate count seeking that relief.  *Lorona*, 151 F.

2  Supp. 3d at 997.

3  **VIII.   The Court Should Strike Plaintiffs' Jury Demand.**

4          Plaintiffs demand a jury "for any issues so triable." FAC at 161.  But this case presents none.

5  "[S]overeign immunity precludes demands for jury trials on claims against the federal government unless

6  Congress has clearly waived that immunity and expressly granted a right to a jury trial." *Haynie v.*

7  *Veneman*, 272 F. Supp. 2d 10, 20 (D.D.C. 2003) (citing *Lehman v. Nakshian*, 453 U.S. 156, 164-65 &

8  n.13 (1981)).  In other words, "if Congress waives the Government's immunity from suit . . . the plaintiff

9  has a right to a trial by jury only where that right is one of the terms of the Government's consent to be

10  sued." *Lehman*, 453 U.S. at 160.  The APA does not "provide a right to a trial by jury," *Radio Servs. Co.*

11  *v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009), and Plaintiffs have identified no express right

12  to a jury on their constitutional or estoppel claims either.  Accordingly, the Court should strike Plaintiffs'

13  request for a jury trial.  *See Schultz v. Harry S. Truman Scholarship Found.*, No. 20-CV-04058-MMC,

14  2023 WL 2456714, at *7 (N.D. Cal. Mar. 10, 2023) (striking jury demand for APA and constitutional

15  claims).

16                                          **CONCLUSION**

17          For the forgoing reasons, the Court should decline to exercise jurisdiction over Counts IV through

18  XI and Count XVI because those claims are not ripe, limit further proceedings on Counts I–III, XII, XIII,

19  XIV, XV, and XVIII to only those claims that Gold Club can assert based on SBA's decision to deny it

20  forgiveness on its second-draw loan, dismiss Counts I, II, XV and XVIII with respect to Gold Club's

21  second-draw loan for failure to state a claim, and strike Plaintiffs' jury demand for any claims that survive

22  the motion to dismiss.

23  Dated:  January 29, 2025                    Respectfully Submitted,

24                                              BRETT A. SHUMATE
                                                Acting Assistant Attorney General
25                                              Civil Division

26  _____

27          [17] Plaintiffs have not moved for a preliminary injunction and would not be entitled to one if they
    did.  Defendants reserve all arguments and defenses they might raise to oppose such a motion, if one is
28  filed.

JOSEPH E. BORSON
Assistant Branch Director

 /s/ Ross Slaughter
ROSS SLAUGHTER
Trial Attorney
U.S. Department of Justice

*Counsel for Defendants*