YAAKOV M. ROTH
Acting Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C. 20530
Tel: (202) 514-4469
Email: david.glass@usdoj.gov
Attorneys for Defendants

### UNITED STATES DISTRICT COURT
### NOTRHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLD CLUB SF, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>Defendants. | No. 3:24-cv-04241-LJC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND TO STRIKE JURY DEMAND**<br><br>Hearing Date: May 6, 2025<br>Time: 10:30 a.m.<br>Place: San Francisco Courthouse, Courtroom G<br><br>Hon. Lisa J. Cisneros |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

LEGAL BACKGROUND ......................................................................................................2

ARGUMENT ..........................................................................................................................3

I.    PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIM CONCERNING
      THE POSSIBLE APPLICATION OF THE AFFILIATION RULES TO THEIR
      LOANS UNDER PPP IS RIPE.................................................................................3

II.   PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIM CONCERNING
      THE POSSIBLE APPLICATION OF THE AFFILIATION RULES TO THEIR
      LOANS UNDER PPP IS REVIEWABLE, EVEN ASSUMING, *ARGUENDO*,
      THAT THE CLAIM IS RIPE .................................................................................8

III.  PLAINTIFFS HAVE NOT SHOWN THAT PPP IS A BENEFIT PROGRAM ...............9

IV.   PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(P) IS A PRIOR
      RESTRAINT ON SPEECH.....................................................................................11

V.    PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(P) IS A
      CONTENT-BASED OR VIEWPOINT-BASED RESTRICTION ON SPEECH............12

VI.   PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(P) IS TOO
      VAGUE TO BE CONSTITUTIONAL ..................................................................13

VII.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT DEFENDANTS
      ARE COMMITTING ACTS OF RETALIATION AGAINST THEM...........................15

VIII. PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE ENTITLED TO A JURY
      IN THIS ACTION .................................................................................................17

CONCLUSION.....................................................................................................................18

# TABLE OF CASES

Page

*Alexander v. United States*, 509 U.S. 544 (1993) ....................................................11, 12

*Camelot Banquet Rooms v. SBA*, 458 F. Supp. 3d 1044 (E.D. Wis. 2020) ...........................11, 13

*Camelot Banquet Rooms v. SBA*, 24 F.4th 640 (7th Cir. 2022)..............................9, 10, 11, 13, 16

*D. Houston Inc. v. SBA*, 579 F. Supp. 3d 959 (S.D. Tex. 2020)..............................10, 13

*Deja Vu-SF v. SBA*, 2020 WL 6260010 (N.D. Cal. Sept. 11, 2020).......................2, 10, 15

*DiManni v. R.I. Army Nat'l Guard*, 62 F. App'x 937 (Fed. Cir. 2003) ........................16

*FDA v. Wages & White Lion Invs.*, 2025 WL 978101 (S. Ct. Apr. 2, 2025)......................17, 18

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ......................................7, 9

*Jet Inv., Inc. v. Dep't of the Army*, 84 F.3d 1137 (9th Cir. 1996) ..........................8, 9, 18

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ...........................................1

*Kim v. Kang*, 154 F.3d 996 (9th Cir. 1998) .................................................9

*Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018)......................................15

*Miller v. California*, 413 U.S. 15 (1973) ...............................................15

*Mt. Healthy City. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .....................15

*Multistar Indus. v. Dep't of Transp.*, 707 F.3d 1045 (9th Cir. 2013) ...........................8

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ................................15

*N.B. v. United Stat1es*, 552 F. Supp. 3d 387 (E.D.N.Y. 2021)...............................17, 18

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ................................................16, 17

*Oksner v. Blakey*, 347 F. App'x 290 (9th Cir. 2009).........................................8

*Pharaohs GC, Inc. v. SBA*, 990 F.3d 217 (2nd Cir. 2021)...............................3, 9, 12

*Rizzo v. City of Phoenix*, 2016 WL 11602424 (D. Ariz. Apr. 11, 2016) ........................16

*Seattle Pacific Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) ...............................8

*Shop Rite, Inc. v. SBA*, 2024 WL 5183329 (W.D. La. Dec. 19, 2024) ............................................2

*Sokol World Entertainment v. SBA*, 2025 WL 870323 (D.D.C. Mar. 20, 2025) ......................3, 14

*Stavrianoudakis v. Fish & Wildlife Serv.*, 108 F.4th 1138 (9th Cir. 2024)....................................4

*United States v. Am. Library Ass'n*, 539 U.S. 194 (2003) ............................................................10

*W. Radio Servs. v. Forest Serv.*, 578 F.3d 1116 (9th Cir. 2009)...........................................17, 18

**INTRODUCTION**

Plaintiffs are 15 corporations or limited liability companies, eleven of which present adult performance dance entertainment.[1]  Plaintiffs make two basic claims in this action.  First, plaintiffs challenge the possible application of the affiliation rules of the Small Business Administration (SBA), which limit the ability of certain related enterprises to secure certain loan benefits, to the first or second draw loans plaintiffs have obtained under the Paycheck Protection Program (PPP).[2]  Second, plaintiffs challenge the constitutionality of 13 C.F.R. § 120.110(p), a long-established regulation of SBA that prohibits "prurient" enterprises from receiving SBA loans.[3]  Defendants are SBA, its Administrator, its Office of Hearings and Appeals (OHA), its Assistant Administrator for OHA, and the United States.[4]

Defendants have moved to dismiss this action and to strike plaintiff's jury demand.  The Court should grant defendants' motion.  None of plaintiffs' PPP loans, except one, has received a final SBA determination and that determination did not involve application of the affiliation rules.  SBA, accordingly, may never apply the affiliation rules to any of plaintiffs' loans, and even if it will, it will do so under factual circumstances not yet established.  Plaintiffs' challenge

---

[1] Verified First Am. Compl. for Decl. & Inj. Rel. [etc.] (Oct. 10, 2024) (1st Am. Compl.), ECF No. 18, ¶¶ 38-52, 61, 112, 130, 160, 176, 203, 217, 286. 302, 318, 330, 573.  *But see id.* ¶ 272 (stating that one plaintiff, Pole Position at Tacoma, "permanently closed its door in March of 2023").

Plaintiffs tout the fact that the first amended complaint consists of "160 pages and 745 paragraphs," Pl. Opp'n Def. Mot. Dis. (Pl. Opp'n) (Mar. 12, 2025), ECF No. 32, at 1, but plaintiffs ignore the fact that "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)).

[2] *See* 1st Am. Compl. ¶ 604.

[3] *See id.* ¶ 22.

[4] *Id.* ¶¶ 53-54, 56-58.  Kelly Loeffler, the current Administrator of SBA, is substituted for her predecessor pursuant to Fed. R. Civ. P. 25(d).

to the possible application of the affiliation rules to their loans thus is unripe.  Nor would the

challenge be reviewable assuming, *arguendo*, that it was ripe, because SBA has not taken any

final agency action with respect to any of plaintiffs' loans as to which SBA might apply the

affiliation rules.

Plaintiffs' challenge to the constitutionality of 13 C.F.R. § 120.110(p), the prurient

establishment rule, should also be dismissed and their jury demand be stricken.  Multiple courts

have upheld § 120.110(p) against First Amendment challenge on the ground that the government

is entitled to condition the uses to which federal funds used as subsidies are put.  Plaintiffs thus

have not shown that PPP is a benefit program, as opposed to what it really is: a subsidy program.

Plaintiffs have also failed to show that § 120.110(p) is a prior restraint on speech, a content-

based or viewpoint-based restriction on speech, or too vague to be constitutional.  Plaintiffs

likewise have failed to state a claim that defendants are committing acts of retaliation against

them.  SBA, to the contrary, would have taken the actions involving plaintiffs that it has taken –

applying well established law – regardless.  Plaintiffs have failed to show, finally, that they are

entitled to a jury in this action.  This action involves APA claims for non-monetary relief that the

caselaw uniformly establishes are not subject to a jury right.

## LEGAL BACKGROUND

SBA has issued "size standards [to] define whether a business entity is small and, thus,

eligible for Government programs and preferences reserved for 'small business' concerns."  13

C.F.R. § 121.101.  "The SBA's regulations . . . include 'affiliation' rules governing when related

businesses are grouped together for purposes of applying the size limits."  *Shop Rite, Inc. v. SBA*,

2024 WL 5183329, at *1 (W.D. La. Dec. 19, 2024).  "Affiliation exists [under the affiliation

rules] when an entity can control another entity."  *Deja Vu-SF v. SBA*, 2020 WL 6260010, at *3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(N.D. Cal. Sept. 11, 2020) (citing 13 C.F.R. § 121.103(a)).  The Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. § 631 *et seq.*), waives the affiliation rules for certain businesses obtaining first draw loans under PPP, 15 U.S.C. § 636(a)(36)(D)(iv), and for certain businesses obtaining second draw loans under PPP.  *Id.* § 636(a)(37)(E).

The Small Business Act authorizes the Administrator of SBA, "[i]n the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter," to "sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court." *Id.* § 634(b)(1).  Section 634(b)(1) confers jurisdiction on federal district courts to determine controversies to which § 634(b)(1) applies, "without regard to the amount in controversy," but specifies that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property."

The Small Business Act prohibits SBA, "[n]otwithstanding any other provision of law . . . from providing any financial or other assistance to any business concern or other person engaged in the production or distribution of any product or service that has been determined to be obscene by a court of competent jurisdiction."  15 U.S.C. § 633(e).  13 C.F.R. § 120.110(p), which SBA issued in 1996, *see Sokol World Ent. v. SBA*, 2025 870323, at *7 (D.D.C. Mar. 20, 2025), provides that a business that "[p]resent[s] live performances of a prurient sexual nature" shall be ineligible for an SBA business loan, § 120.110(p)(1), and also provides that a business that "[d]erive[s] directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of prurient sexual nature" shall be ineligible for an SBA business loan.  Sec. 120.110(p)(2).  Section 120.110(p) has been held applicable to first draw loans under PPP, *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 226 (2nd

Cir. 2021), and Congress made § 120.110(p) applicable to second draw loans under PPP by adding 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa) to the Small Business Act.

## ARGUMENT

Plaintiffs have filed an opposition to defendants' motion to dismiss and to strike plaintiffs' jury demand.  Plaintiffs have not shown, however, that their claim concerning the possible application of the affiliation rules to their loans under PPP is ripe; that the above claim is reviewable even assuming, *arguendo*, that the claim is ripe; that PPP is a benefit program; that 13 C.F.R. § 120.110(p) is a prior restraint on speech; that § 120.110(p) is a content-based or viewpoint-based restriction on speech; that § 120.110(p) is too vague to be constitutional; that plaintiffs have stated a claim that defendants are committing acts of retaliation against them; and that plaintiffs are entitled to a jury in this action.  Defendants' motion should therefore be granted.

## I.    PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIM CONCERNING THE POSSIBLE APPLICATION OF THE AFFILIATION RULES TO THEIR LOANS UNDER PPP IS RIPE.

Article III of the Constitution "requires . . . a plaintiff's claim [to] be ripe for adjudication."  *Stavrianoudakis v. Fish & Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024).  "There are two ripeness considerations: constitutional and prudential."  *Id.* at 1139.  "Constitutional ripeness overlaps with the injury-in-fact element of Article III standing, and 'therefore the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract.'"  *Id.* (quoting *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021)).  "Prudential ripeness concerns 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Id.*  "'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the

challenged action is final.'" *Id.* (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)).  "As to hardship, 'a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Id.* (quoting *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 2000)).

The sole action that SBA has taken with respect to any of plaintiffs' loans under PPP that is final and ripe for review is the final action that SBA has taken with respect to the second draw loan of plaintiff Gold Club SF, LLC (Gold Club).  SBA found by final loan review decision (FLRD) dated January 30, 2024, that Gold Club was ineligible for that loan under 13 C.F.R. § 120.110(p)(1) because "[o]pen-source research confirms" that "[Gold Club] operates as 'an upscale topless bar, adult entertainment spot, and gentleman's club featuring live girls'" and because the LinkedIn profile that Gold Club maintains states that Gold Club was the  "'Winner of the 2015 Niteys Award [for] 'Best Adult Entertainment and Gold Club will offer you the ultimate strip club experience you won't soon forget!'"[5]  SBA also found by the above FLRD that Gold Club was ineligible under § 120.110(p)(2) for its second draw loan under PPP because Gold Club's interim financial statement for the period ending June 30, 2019, "report[ed] total revenues of [redacted] with income from Dances being reported of [redacted] with additional revenues from door admissions of [redacted]."[6]  OHA affirmed the FLRD by decision dated May 14, 2024.[7]

---

[5] 1st Am. Compl., Ex. C at 1-2.  Plaintiffs contend that the FLRD based its finding that Gold Club was a business within the purview of § 120.110(p)(1) on *Google Earth photos of the outside of [Gold Club's] building*," Pl. Mem. P. & A. Opp'n Def. Mot. Dis. [etc.] (Mar. 12, 2025) (Pl. Opp'n), ECF No. 32, at 2, but plaintiffs are mistaken, as explained above.

[6] 1st Am. Compl., Ex. C at 1-2.  The redacted material showed that Gold Club's "full-year 2019 'dance' revenues were about 48.2% of [Gold Club's] total revenues for that year, and [Gold Club's] full-year 2020 'dance' revenues were about 46.7% of [Gold Club's] 2020 revenues." *Id.*, Ex. K at 8.

[7] *Id.* at 1.

1

2

3

4

5

6

7

8

9

Neither the above FLRD nor the decision of OHA affirming the FLRD discusses the affiliation rules, much less finds that Gold Club was ineligible pursuant to the affiliation rules for its second draw loan.  Nor has SBA made a final determination as to any of plaintiffs' other loans, much less a final decision invoking the affiliation rules as to those plaintiffs.[8]  Fourteen plaintiffs allege, nonetheless, that SBA may find them ineligible for their first or second draw loans pursuant to the affiliation rules[9]; that SBA may do so because of their alleged affiliation with two individuals "associated" with "'adult' businesses," Harry and Jason Mohney[10]; and that SBA is precluded by the statutory waivers to the affiliation rules from doing so.[11]

10

11

12

13

14

15

16

17

18

19

20

21

One of the grounds upon which defendants base their motion to dismiss this action is that plaintiffs' claim concerning the possible application of the affiliation rules to their loans under PPP is unripe under the prudential ripeness doctrine.[12]  Opposing dismissal, plaintiffs contend that the prudential ripeness doctrine is inapplicable to their claim because the issues that the claim raises "are purely legal" and do not require any "further factual development."[13]  Plaintiffs are mistaken.  The affiliation rules require SBA to determine whether a loan applicant is too large to qualify as a small business because the applicant is controlled by another concern or entity.  *See* 13 C.F.R. § 121.103(a)(1).  The extent, if any, to which the Mohneys control any plaintiff is a question of fact appropriate for resolution in the first instance at the agency level, as

22

23

24

25

26

27

28

---

[8] *See* Not. Mot., Def. Mot. Dis. Pl. First Am. Compl. [etc.] (Jan. 29, 2025) (Def. Mem.), ECF No. 28, at 10-13 (discussing the status of SBA's determinations as to each of plaintiffs' loans).

[9] 1st Am. Compl. ¶ 604.  The plaintiff that does not so allege is 2345 Meacham, LLC.  *Id.*

[10] *Id.* ¶¶ 604, 607.

[11] Pl. Opp'n at 2.

[12] Def. Mem. at 15.

[13] Pl. Opp'n at 23.

1    is the extent, if any, to which plaintiffs qualify for the protection of the statutory waivers to the

2    affiliation rules.

3           Plaintiffs also contend that the prudential ripeness doctrine is inapplicable to their claim

4    concerning the possible application of the affiliation rules to their loans under PPP because

5    plaintiffs will experience "hardship" if the doctrine is applied to that claim.[14]  The sole allegation

6    of concrete hardship that plaintiffs make, however, is that SBA has

7
           caused them economic damages in the form of the exorbitant professional fees
8          incurred as a result of . . . having to comply with SBA's incessant demands for
           more documentation . . . and . . . having to serially appeal FLRDs, because SBA
9          withdraws them on specious grounds to be replaced at a later date with a new
           reason for denial, after having made payments on the loan.[15]
10

11          The above allegation is insufficient to render the prudential ripeness doctrine inapplicable

12   to plaintiffs' claim concerning the possible application of the affiliation rules to their loans under

13   PPP because "the expense and disruption of defending [oneself] in protracted adjudicatory

14   proceedings [does not] constitute[] irreparable harm."  *FTC v. Standard Oil Co. of Cal.*, 449 U.S.

15   232, 244 (1980).  "'[T]he expense and annoyance of litigation," to the contrary, "is part of the

16   social burden of living under government,'" *id.* (quoting *Petroleum Expl., Inc. v. Pub. Serv.*

17   *Comm'n*, 304 U.S. 209, 222 (1938)), and "'[m]ere litigation expense, even substantial and

18   unrecoupable cost, does not constitute irreparable injury.'"  *Id.* (quoting *Renegotiation Bd. v.*

19   *Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

20
21          Plaintiffs also contend that the prudential ripeness doctrine is inapplicable to their claim

22   concerning the possible application of the affiliation rules to their loans under PPP because the

23   doctrine is "disfavored."[16]  Any disfavor from which the doctrine suffers does not preclude its

24

25

26

27   [14] *Id.* at 25.
     [15] *Id.* at 18 (emphasis omitted).
28   [16] *Id.* at 8.

application, however.  The Ninth Circuit has recently said with respect to the doctrine that the

Supreme Court "appears to have walked up to the line but stopped short of abrogating it."

*Seattle Pacific Univ. v. Ferguson*, 104 F.4th 50, 66 (2024) (discussing *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 167 (2014)).  The prudential ripeness doctrine thus remains a viable

doctrine that merits application in an appropriate case, like this one, where SBA has never made

a final determination that any plaintiff is ineligible under the affiliation rules for any loan the

plaintiff has obtained.  Plaintiffs' claim concerning the possible application of the affiliation

rules to their loans under PPP thus requests an advisory opinion on an issue that may never arise.

## II. PLAINTIFFS HAVE NOT SHOWN THAT THEIR CLAIM CONCERNING THE POSSIBLE APPLICATION OF THE AFFILIATION RULES TO THEIR LOANS UNDER PPP IS REVIEWABLE, EVEN ASSUMING, *ARGUENDO*, THAT THE CLAIM IS RIPE.

"Judicial review of the actions of [SBA] is governed by the Administrative Procedure Act

(APA), 5 U.S.C. §§ 701 *et seq*."  *Jet Inv., Inc. v. Dep't of the Army*, 84 F.3d 1137, 1139 (9th Cir.

1996).  Constitutional claims, like the ones that plaintiffs make with respect to 13 C.F.R.

§ 120.110(p), are reviewable under the APA because "the [APA] "creates a remedy for seeking

judicial redress of alleged constitutional violations."  *Oksner v. Blakey*, 347 F. App'x 290, 292

(9th Cir. 2009); *see* 5 U.S.C. § 706(2)(B).[17]  Courts are limited under the APA "to reviewing

only the 'final' action taken by the agency."  *Multistar Indus. v. Dep't of Transp.*, 707 F.3d 1045,

1052 (9th Cir. 2013) (citing 5 U.S.C. § 704).  "'Generally, administrative orders are final and

appealable if they impose an obligation, deny a right, or fix some legal relationship as a

consummation of the administrative process.'"  *Id.* (quoting *Sierra Club v. Nuclear Regul.*

*Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)).  Administrative action that is "not 'final agency

---

[17] Section 706(2)(B), a provision of the APA, directs reviewing courts to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity."

1
2
action' under [§ 704] . . . is not judicially reviewable before administrative adjudication

concludes." *Standard Oil*, 449 U.S. at 246.

3
4
5
6
7
Plaintiffs' claim concerning the possible application of the affiliation rules to their loans

under PPP does not involve final agency action because SBA has not finished reviewing any

loan that plaintiffs have obtained as to which SBA might apply the rules.  Plaintiffs claim thus is

not reviewable under the APA even assuming, *arguendo*, that the claim is ripe.

8
9
10
11
12
13
14
Plaintiffs contend, notwithstanding the foregoing, that their claim is reviewable under 5

U.S.C. § 634(b)(1).[18]  Plaintiffs are mistaken.  Section 634(b)(1) permits a district court to

entertain a claim against SBA "for damages . . . regardless of the amount sought," *Jet Inv.*, 84

F.3d at 1143 n.12, and "vests jurisdiction in [the] district courts over contract claims against

[SBA]." *Kim v. Kang*, 154 F.3d 996, 999 (9th Cir. 1998).  Plaintiffs do not seek an award of

damages in this case or assert a contract claim – they seek relief under the APA.[19]

15
## III.    PLAINTIFFS HAVE NOT SHOWN THAT PPP IS A BENEFIT PROGRAM.

16
17
18
19
20
21
22
23
24
25
26
"The Supreme Court has repeatedly drawn a line between government regulation of

speech, on one hand, and government subsidy of speech, on the other." *Camelot Banquet Rooms

v. SBA*, 24 F.4th 640, 646 (7th Cir. 2022) (*Camelot II*).  The limitations on government subsidies

thus are much more limited than government regulation of private speech.  Plaintiffs concede

that "the Government . . . is under no obligation to subsidize speech" but ask the Court to refrain

from "view[ing] the PPP as a mere subsidy program."  The Court should deny plaintiffs' request

because numerous courts have properly held that PPP is a subsidy program and thus is valid

under the First Amendment.  *See, e.g.*, *Pharaohs*, 990 F.3d at 229 (holding that § 120.110(p) is

"part of a selective subsidy program" because it "excludes certain types of businesses from

27
28
---
[18] Pl. Opp'n at 10.

[19] *See* 1st Am. Compl. ¶¶ 22, 604 & Prayer for Relief, ¶¶ A-Z.

eligibility for PPP loans – it does not directly regulate speech"); *Camelot II*, 24 F.4th at 646 (holding that the problem with the plaintiffs' challenge under the First Amendment to § 120.110(p) was that "Congress [was] not trying to regulate or suppress plaintiffs' adult entertainment" when it made § 120.110(p) applicable to second draw loans under PPP; Congress "simply chose[] not to subsidize it"; *Deja Vu-SF*, 2020 WL 6260010, at *10 (holding that "[t]he SBA's decision not to fund prurient businesses" is "a selective subsidy, not impermissible viewpoint discrimination aimed at the suppression of dangerous ideas"). *See also United States v. Am. Library Ass'n*, 539 U.S. 194, 212 (2003) (stating that "[a] refusal to fund protected activity, without more, cannot be equated with the imposition of a penalty on that activity'" and that "'[a] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right'") (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)).

Plaintiffs contend on the strength of *D. Houston Inc. v. SBA*, 579 F. Supp. 3d 959 (S.D. Tex. 2020), that PPP is a benefit program, not a subsidy program.[20]  *D. Houston* states:

> Federal district courts are split as to whether the PPP is a subsidy or a benefit.  *Compare Pharaohs GC, Inc. v. [SBA]*, 20-CV-665, 2020 WL 3489404 (W.D.N.Y. June 26, 2020) (Vilardo, J.) (denying preliminary injunction) *with Camelot Banquet Rooms v. [SBA]*, 458 F. Supp. 3d 1044 (E.D. Wis. 2020) (Adelman, J.) (granting preliminary injunction) [(*Camelot I*)]; *see also Am. Ass'n. of Political Consultants v. [SBA]*, 810 F. App'x 8, 9 (D.C. Cir. 2020) (per curiam) (affirming the determination that the PPP is a subsidy in the context of a different restriction, specifically, a small business loan limitation concerning political lobbying.
>       . . . .
> Considering the basic purpose of the PPP loans, the SBA restrictions on businesses that can receive business loans, and the waived restrictions, the court determines the PPP loans are not a subsidy.  [Citations omitted.]  Rather, the PPP loans are a benefit the Government confers upon small business.

*Id.* at 967-68 (cleaned up).

---

[20] Pl. Opp'n at 29.

*D. Houston*, which occurred in an emergency context, did not engage in significant analysis of the relevant precedent. As the above excerpt shows, moreover, *Camelot I* was the predicate for the holding of *D. Houston* that PPP is a benefit program, not a subsidy program. *Camelot I* is no longer persuasive authority because the Seventh Circuit vacated and remanded *Camelot I* in *Camelot II,* 24 F.4th at 651, and found that § 120.110(p) comported fully with the First Amendment. *See id.* (stating that "[i]n the words of *Regan*, Congress 'has not infringed any First Amendment rights or excluded any First Amendment activity' by excluding prurient businesses from receiving Program funding") (quoting *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 546 (1983)). The reliance that plaintiffs place on *D. Houston* to show that PPP is a benefit program thus is misplaced.

## IV.    PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(p) IS A PRIOR RESTRAINT ON SPEECH.

"The term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time such communications occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 403, p. 4-14 (1984)). "[C]ourt orders that actually forbid speech activities . . . are classic examples of prior restraints." *Id.*

*Alexander* delt with an order under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, requiring the owner of certain stores and theaters dealing in sexually explicit materials to forfeit his businesses and to forfeit the money he had acquired through the operation of those businesses. Holding that the order was not a prior restraint, the Court said:

> [T]he forfeiture order in this case imposes no legal impediment to – no prior restraint on – [the owner's] ability to engage in any expressive activity he chooses. He is perfectly free to open an adult bookstore or otherwise engage in

the production and distribution of erotic materials; he just cannot finance those enterprises with assets derived from his prior racketeering offenses.

*Id.* at 551.

Plaintiffs contend that 13 C.F.R. § 120.110(p) is a prior restraint and, therefore, unconstitutional.[21]  Plaintiffs are mistaken because the application of § 120.110(p) to plaintiffs' first or second draw loans under PPP would not impose any "legal impediment to . . . [plaintiffs'] ability to engage in any expressive activity [they] choose[]," *see Alexander*, 509 U.S. at 551; it merely would not subsidize that activity with taxpayer dollars.  Plaintiffs' contention is thus without merit.[22]

## V.    PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(p) IS A CONTENT-BASED OR VIEWPOINT-BASED RESTRICTION ON SPEECH.

Plaintiffs contend that 13 C.F.R. § 120.110(p), violates the First Amendment because § 120.110(p) is a content-based and viewpoint-based restriction on speech.[23]  Here, too, plaintiffs ignore the decisions holding otherwise.  *See, e.g., Pharaohs*, 990 F.3d at 231 (holding that "[t]he word 'prurient' operates in [13 C.F.R. § 120.110(p)] to describe the subject matter – or content – of businesses excluded from SBA loans"; that "[b]usinesses that present live performances are excluded if the *nature* of those performances is prurient."; and that "[t]he restriction does not describe a viewpoint; one could not have a prurient view of American policy in the Middle East

---

[21] *Id.* at 32.

[22] Plaintiffs contend that "fully nude dancing is expression under the Constitution," *id.* at 27 (citing *Barnes v. Glen Theater, Inc.*, 501 U.S. 560, 565 (1991)), but the law is far more nuanced than plaintiffs suggest.  Nude dancing "'falls only within the outer ambit of the First Amendment's protections,'" *Pharaohs*, 990 F.3d at 228-29 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 227, 289 (2000)), and "thus involves 'only the barest minimum of protected expression." *Id.* at 229 (quoting *Doran v. Salem Inn*, 422 U.S. 922, 932 (1975)).

[23] Pl. Opp'n at 32-33.

1
2
3

or antitrust regulation"); *Camelot II*, 24 F.3d at 649 (holding that "[t]he statutory exclusion from [PPP] of businesses with prurient live entertainment is better understood not as viewpoint discrimination but as a permissible classification based on subject matter")

4
5
6
7
8
9
10
11
12
13
14

Plaintiffs rely on *Camelot I* and *D. Houston* to show that § 120.110(p) is a content-based or viewpoint-based restriction on speech.[24]  The reliance that plaintiffs place on both cases is misplaced.  The reliance that plaintiffs place on *Camelot I* is misplaced because the Seventh Circuit vacated and remanded *Camelot I* in *Camelot II* and held in *Camelot II* that § 120.110(p) is not a viewpoint-based restriction on speech.  24 F.4th at 649, 651.  The reliance that plaintiffs place on *D. Houston* is likewise misplaced because "[b]oth parties agree[d]" in *D. Houston* that § 120.110(p) was "a content-based restriction."  579 F. Supp. at 968.  *Camelot II* and *Pharaohs*, decided since *D. Houston*, make it clear that the defendants in *D. Houston* ought not to have so agreed.

15
16

**VI.    PLAINTIFFS HAVE NOT SHOWN THAT 13 C.F.R. § 120.110(p) IS TOO VAGUE TO BE CONSTITUTIONAL.**

17
18
19
20
21
22
23

Dictionary definitions of the term "prurient" abound.  *See, e.g.,* 2 New Shorter Oxford English Dictionary 2396 (1993) ("Having or characterized by an unhealthy concern with sexual matters; encouraging such a concern"); Webster's New College Dictionary 1156 (4th Ed. 2010) ("[T]ending to excite lust; lascivious; lewd"); Black's Law Dictionary (12th Ed. 2024) ("Characterized by, exhibiting, or arousing inappropriate, inordinate, or unusual sexual desire; having or showing too much interest in sex < films appealing to prurient interests >").

24
25
26

Plaintiffs contend that the term "prurient" as used in 13 C.F.R. § 120.110(p) is "unconstitutionally vague under the First and Fifth Amendments" because the term "does not

27
28

---

[24]*Id.* at 33-34.

provide common persons with notice as to what [§ 120.110(p)] prohibits" and "does not provide clear standards to govern the actions of enforcement officials."[25]  That contention is baseless in view of the number of definitions of the term "prurient" that dictionaries provide and the fundamental similarity among those definitions.

Plaintiffs also contend that § 120.110(p) is unconstitutional because SBA does not interpret the term "prurient" for purposes of § 120.110(p) as the Supreme Court has defined the term "obscene."[26]  Rejecting the same contention in a case involving 15 U.S.C. § 9009a(1)(B), a provision having the same text and purpose as § 120.110(p), the court in *Sokol World Entertainment. v. SBA*, 2025 WL 870323 (D.D.C. Mar. 20, 2025), said:

> The court first considers what "prurient" means under § 9009a, which does not provide a definition.  Merriam-Webster Dictionary defines "prurient" as "marked by or arousing an immoderate or unwholesome interest or desire; especially, marked by, arousing, or appealing to sexual desire" – the same definition the SBA cited in its December 14, 2022, denial decision.

> It is true that, in obscenity jurisprudence, "prurient" is generally defined as involving an unhealthy or abnormal interest in sex or nudity.  In *Roth v. United States*, the Supreme Court defined "prurient" as "having itching, morbid, or lascivious longings," similar to [the plaintiff's] interpretation of "prurient," but it also defined "prurient" as "uneasy with desire or longing," which is more akin to the SBA's interpretation of "prurient" as lascivious, lustful, or erotic.  *See* 354 U.S. at 487 n.20.  "Prurient" is also not exclusively a term of art.  *Cf. Miller v. California*, 413 U.S. at 18 n.2 (noting how the definition of "obscene," as used in that case, has a specific judicial meaning derived from *Roth* and "does not reflect the precise meaning of 'obscene' as traditionally used in the English language").  Like "obscene," "prurient" has a broader meaning outside of legal contexts, such as the one Merriam-Webster.

*Id.* at *7 (citations omitted & cleaned up).

*Sokol* makes clear that 13 C.F.R. § 120.110(p) is not unconstitutional because SBA does not interpret the term "prurient" for purposes of § 120.110(p) as the Supreme Court has defined

---

[25] *Id.* at 36-37.
[26] *Id.* at 36.

the term "obscene."  Plaintiffs' contention to the contrary should therefore be rejected.  *See also Deja Vu-SF*, 2020 WL 6260010, at *6 (rejecting the contention that plaintiffs make here, *see* Pl. Opp'n at 3, that 15 U.S.C. § 633(e) speaks to "the only type of sexual expression that the SBA can exclude from its programs"; holding that "the overall statutory scheme – with its delegation of authority to the SBA to make loans, considering the public interest – does not compel the conclusion that the SBA cannot prohibit loans to businesses that are prurient but not obscene"); *Miller*, 413 U.S. at 20 (stating that "the key" to the Court's holding in *Roth* "was the Court's rejection of the claim that obscene materials were protected by the First Amendment").  Indeed, the fact that this is a government subsidy program is itself dispositive: the Supreme Court has made clear that First Amendment vagueness concerns do not apply in such contexts.  *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998) (holding that, "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe.").

**VII.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT DEFENDANTS ARE COMMITTING ACTS OF RETALIATION AGAINST THEM.**

"The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech."  *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).  A plaintiff who alleges retaliation in violation of the First Amendment fails to state a claim, however, if the acts of alleged retaliation occurred "in a civil, not criminal, context," *id.* at 96, and the government can "show[] by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct."  *Mt. Healthy City. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  In such a case, accordingly, "[t]he First Amendment 'principle at stake is sufficiently vindicated if [the plaintiff] is placed in no worse a

position than if he had not engaged in the [protected speech].'" *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (quoting *Mt. Healthy*, 429 U.S. at 285-86).

Plaintiffs allege that Eric Benderson, Associate General Counsel for Litigation and Claims, SBA, stated during a settlement conference in 2023 that "clients of [plaintiffs' counsel] should not be receiving SBA monies because they are . . . merely 'fronts for prostitution'" and that, "with regard to second draw loans, SBA would not even negotiate with [clients of plaintiffs' counsel] that present 'adult' entertainment."[27]  Plaintiffs contend that these comments "explain the vindictive, harassing, discriminatory, and retaliatory" manner in which SBA allegedly is treating them.[28]  That contention fails to state a claim, however, because the comments that plaintiffs attribute to Mr. Benderson are not evidence of retaliatory animus even assuming, *arguendo*, that Mr. Benderson made those comments.  No party is "required to settle [a] case or even to make a settlement offer," *see Rizzo v. City of Phoenix*, 2016 WL 11602424, at *1 (D. Ariz. Apr. 11, 2016), and the "secondary effects of sex-oriented businesses" are so "well known and widely recognized in First Amendment litigation and doctrine" that "relying on those effects shows [no] animus toward any idea."  *Camelot II*, 24 F.3d at 648.

Questions of animus aside, public employees have "a duty of preventing incidents of fraud, waste, and abuse of Government funds."  *DiManni v. R.I. Army Nat'l Guard*, 62 F. App'x 937, 938 (Fed. Cir. 2003) (involving National Guard technician).  The efforts of SBA to enforce 13 C.F.R. § 120.110(p), a duly-promulgated regulation, against businesses that obtained loans under PPP despite their ineligibility for those loans are not acts of retaliation in violation of the First Amendment, notwithstanding any comments about those businesses that Mr. Benderson

---

[27] 1st Am. Compl. ¶ 614.

[28] Id.

1   may have made, because SBA would be obligated to make those efforts, irrespective of the

2   personal views of Mr. Benderson.  The comments that plaintiffs attribute to Mr. Benderson thus

3   left plaintiffs "'in no worse position'" than they would have been if he had not made those

4   comments, *see Nieves*, 587 U.S. at 399 (quoting *Mt. Healthy*, 429 U.S. at 285-86), and are not

5   actionable as alleged acts of retaliation.[29]

6

7   **VIII.   PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE ENTITLED TO A JURY
            IN THIS ACTION.**

8

9         "The APA does not provide for monetary damages, though it does allow 'specific relief,'

10  including the payment of money to which a plaintiff is entitled."  *W. Radio Servs. v. Forest Serv.*,

11  578 F.3d 1116, 1123 (9th Cir. 2009) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 895

12  (1988)).  "Nor does the APA allow claims against individuals or provide a right to a trial by

13  jury."  *Id.*; *see N.B. v. United States*, 552 F. Supp. 3d 387, 396 (E.D.N.Y. 2021) (holding that

14  "[t]here is no right to trial by jury for APA claims, which are equitable in nature").  "Both the

15  Supreme Court and this court have concluded . . . that remedial schemes lacking such features

16  may be adequate alternatives, provided that the absence of such procedural protections was not

17  inadvertent on the part of Congress."  *W. Radio Servs.*, 578 F.3d at 1123.  "With respect to

18  agency action and inaction, we conclude that Congress 'has considered the universe of harms

19  that could be committed in the program's administration and has provided what Congress

20  believes to be adequate remedies.'"  *Id.* (quoting *Adams v. Johnson*, 355 F.3d 1179, 1185 (9th

21  Cir. 2004)).

22

23

24

25

26  _____

27  [29] Plaintiffs have made repeated attempts to depose Mr. Benderson.  *See* 1st Am. Compl. ¶¶ 76,
    87, 99, 150, 189.  Those attempts are inappropriate because "'[j]udicial inquiry into executive
28  motivation represents a substantial intrusion into the working of another branch of Government
    and should normally be avoided.'"  *FDA v. Wages & White Lion Invs.*, 2025 WL 978101, at * 18
    (S. Ct. Apr. 2, 2025) (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019)).

Plaintiffs do not identify any issues in this action that they consider suitable for a jury, saying only that "more jury-triable issues may emerge" as "the case progresses."[30]  Plaintiffs nonetheless request a jury in this action.[31]  "Judicial review of the actions of [SBA] is governed by the [APA]," however, *Jet Inv.*, 84 F.3d at 1139, and the APA does not "provide a right to a trial by jury."  *W. Radio*, 578 F.3d at 1123; *accord N.B.*, 552 F. Supp. 3d at 396.  Plaintiffs' jury demand should therefore be stricken.[32]

## CONCLUSION

Defendants' motion to dismiss and to strike plaintiffs' jury demand should be granted for the reasons set forth in the memorandum in support of the motion that defendants have filed and for the reasons set forth above.

Dated: April 5, 2025                    Respectfully Submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        JOSEPH E. BORSON
                                        Assistant Branch Director

---

[30] Pl. Opp'n at 40.

[31] 1st Am. Comp., Cover Page.

[32] Fed. R. Civ. P. 39(a)(2) provides that "[t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."  Plaintiffs complain that defendants moved to strike their jury demand pursuant to Fed. R. Civ. 12(b)(6) instead of Rule 39(a)(2).  Def. Opp'n at 39.  "'[T]he rule of prejudicial error . . . ordinarily applies in civil cases,'" however.  *Wages & White Lion*, 2025 WL 978101, at *22 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)).  Defendants therefore ask the Cout to deem their motion to strike plaintiffs' jury demand to be a motion under Rule 39(a)(2) or, in the alternative to find "on its own" that "there is no federal right to a jury trial" in this action.  *See id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C.  20530
Tel: (202) 514-4469
Email: david.glass@usdoj.gov
Attorneys for Defendants