DOUGLAS J. MELTON, Bar No. 161353
SHANE M. CAHILL, Bar No. 227972
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        dmelton@longlevit.com
              scahill@longlevit.com

BRADLEY J. SHAFER (MI P36604)*
ZACHARY M. YOUNGSMA (MI P84148)*
SHAFER & ASSOCIATES, P.C.
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
Telephone:    (517) 886-6560
Facsimile:    (517) 886-6565
Email:        Brad@BradShaferLaw.com
              Zack@BradShaferLaw.com

*Admitted Pro Hac Vice

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD CLUB - SF, LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION, et al.,<br><br>    Defendants. | Case No.: 3:24-cv-04241-LJC<br><br>**PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 12, 2026<br>Time: 10:30 a.m.<br>Place: San Francisco Courthouse, Courtroom G<br><br>Hon. Lisa J. Cisneros |

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiffs, by and through undersigned counsel, hereby move for an order pursuant to Fed. R. Civ. P. 65 preliminarily enjoining Defendants from enforcing 13 C.F.R., Ch. I, Pt. 134, Subpart L (13 C.F.R. §§ 134.1201-17, the "Special OHA Rules" or "SORs"), which govern appeals before the Small Business Administration's ("SBA") Office of Hearings and Appeals ("OHA") relating to Paycheck Protection Program ("PPP") loan forgiveness determinations. A hearing on this Motion is set for May 12, 2026, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom G of the United States District Court for the Northern District of California. Plaintiffs respectfully request that the Court enter an order *either*:

A.    preliminarily enjoining Defendants, as well as their employees, agents, and representatives, from enforcing the SORs in any OHA appeals brought by the Plaintiffs or by any businesses that the SBA contends are "affiliated" with them; *or*

B.    preliminarily enjoining Defendants, as well as their employees, agents, and representatives, from requiring the Plaintiffs, or any businesses that the SBA contends are "affiliated" with them, to have to undergo OHA proceedings as a prerequisite to being able to litigate their constitutional challenges in this Court.

Moreover, Plaintiffs request this Court to grant such other and further relief as it deems just and proper in the circumstances.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations and exhibits filed herewith, the record in this matter, and any argument the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

STATEMENT OF ISSUES ................................................................................................................ 5

STATEMENT OF FACTS ............................................................................................................... 5

ARGUMENT ............................................................................................................................... 12

    I.    PRELIMINARY INJUNCTION STANDARDS .......................................................................... 12

    II.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ........................................... 12

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

A.  Plaintiffs' constitutional challenges to the SOR are properly before this Court ......... 13

B.  The SORs violates the Due Process Clause because they permit the government to control the evidentiary record while preventing "appellants" from developing contrary evidence ................................................................................................................. 14

    *i.*  *The private interests affected are substantial.* ................................................ 14

    *ii.*  *The SORs create a high risk of erroneous deprivation* ................................. 16

    *iii.*  *An interest in administrative efficiency cannot justify procedures that prevent borrowers from developing and presenting evidence to rebut SBA's determinations or to constitutionally challenge the laws under which those decisions are made* ................................................................................ 17

C.  The SORs are contrary to law under the Administrative Procedure Act .................... 19

D.  The SORs deny borrowers a neutral adjudicator .......................................................... 19

E.  The SORs impose unconstitutional conditions ............................................................. 20

III.  PLAINTIFFS HAVE SUFFERED, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF ................................................................................................... 21

IV.  AN INJUNCTION WOULD CAUSE NO HARM TO OTHERS, AND THE PUBLIC INTEREST WEIGHS IN FAVOR OF AN INJUNCTION ................................................................................. 23

V.  NO BOND SHOULD BE REQUIRED ................................................................................ 24

CONCLUSION ................................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

Abbott Labs v. Gardner, 387 U.S. 136 (1967) ................................................................. 13

All. for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011) .............................. 12

Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470 (9th Cir. 1985) ....... 21

Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046 (9th Cir. 2009) ............................................................................................................................ 21

Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053 (9th Cir. 2014) ............................. 24

Armstrong v. Manzo, 380 U.S. 545 (1965) ..................................................................... 15

ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059 (9th Cir. 2015) ............................................... 16

Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175 (2023) ..................................... 13

Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991) ....................................................... 22

Bennett v. Spear, 520 U.S. 154 (1997) ........................................................................... 13

Brockett v. Spokane Arcades, Inc., 472 U.S. 491 (1985) ............................................... 10

Califano v. Sanders, 430 U.S. 99 (1977) ....................................................................... 13

California v. Azar, 911 F.3d 558 (9th Cir. 2018) ............................................................ 23

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)........................................................20

Carr v. Saul, 593 U.S. 83 (2021) ..............................................................................................13

Cnty. of Santa Clara v. Trump, 250 F. Supp. 3d 497 (N.D. Cal. 2017)...................................21

Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878 (9th
    Cir. 2003) .........................................................................................................................24

Cuviello v. City of Vallejo, 944 F.3d 816 (9th Cir. 2019) .........................................................23

Diamond Sands Apartments, LLC v. Clark Cnty. Nevada, 164 F.4th 759 (9th Cir.
    2026)..................................................................................................................................12

Diaz v. Brewer, 656 F.3d 1008 (9th Cir. 2011) ........................................................................24

Doe v. Horne, 115 F.4th 1083 (9th Cir. 2024) ..........................................................................23

Elrod v. Burns, 427 U.S. 347 (1976).................................................................................21, 22

Gilmore v. Wells Fargo Bank N.A., No. C 14-2389 CW, 2014 WL 3749984 (N.D.
    Cal. July 29, 2014) ...........................................................................................................24

Goldberg v. Kelly, 397 U.S. 254 (1970) .......................................................................14, 15, 16

Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466 (9th Cir.
    1984)..................................................................................................................................22

Grayned v. City of Rockford, 408 U.S. 104 (1972) ...................................................................10

Greene v. McElroy, 360 U.S. 474 (1959) ............................................................................14, 16

Iancu v. Brunetti, 588 U.S. 388 (2019) ....................................................................................10

Kendrick v. Sullivan, 784 F. Supp. 94 (S.D.N.Y. 1992)...........................................................19

Klein v. City of San Clemente, 584 F.3d 1196 (9th Cir. 2009) .................................................24

Kolender v. Lawson, 461 U.S. 352 (1983).................................................................................10

Lands Council v. Powell, 395 F.3d 1019 (9th Cir. 2005) .........................................................12

Lewis v. Continental Bank Corp., 494 U.S. 472 (1990) ..............................................................9

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).............................................................15

Lopez-Valenzuela v. Arpaio, 770 F.3d 772 (9th Cir. 2014) ......................................................17

Mathews v. Eldridge, 424 U.S. 319 (1976)........................................................................14, 15

McCarthy v. Madigan, 503 U.S. 140 (1992)........................................................................20, 23

Melendres v. Arpaio, 695 F.3d 990 (9th Cir. 2012)...........................................................21, 23

Miller v. California, 413 U.S. 15 (1973) .............................................................................10, 11

Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992)....................................................21

Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut.
    Auto. Ins. Co., 463 U.S. 29 (1983)....................................................................................19

Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178 (9th Cir. 2015) ..........................15

Pacito v. Trump, --- F.4th ---, 2026 WL 620449 (9th Cir. Mar. 5, 2026)................................12

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Perry v. Sindermann, 408 U.S. 593 (1972) ...............................................................................20

Preminger v. Principi, 422 F.3d 815 (9th Cir. 2005) ..............................................................23

Reno v. Flores, 507 U.S. 292 (1993)........................................................................................17

Republic of the Philippines v. Marcos, 862 F.2d 1355 (9th Cir. 1988) ..................................12

Roth v. United States, 354 U.S. 476 (1957)..............................................................................10

Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City, 303 F.3d 959 (9th
    Cir. 2002) .........................................................................................................................24

Santopietro v. Howell, 857 F.3d 980 (9th Cir. 2017)................................................................22

Schad v. Borough of Mount Ephraim, 452 U.S. 61 (1981).......................................................22

Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281 (9th Cir. 2013) ...............................12

Stanley v. Illinois, 405 U.S. 645 (1972)....................................................................................17

The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).........................................14

Valle del Sol Inc. v. Whiting, 732 F.3d 1006 (9th Cir. 2013)...................................................22

Viacom Int'l Inc. v. F.C.C., 828 F. Supp. 741 (N.D. Cal. 1993) .............................................22

Ward v. Rock Against Racism, 491 U.S. 781 (1989) ................................................................22

Winters v. New York, 333 U.S. 507 (1947)................................................................................22

Withrow v. Larkin, 421 U.S. 35 (1975) ...............................................................................19, 20

**Statutes**

15 U.S.C. § 633 ........................................................................................................................10

15 U.S.C. § 636 ............................................................................................................5, 7, 14, 15

28 U.S.C. § 2412 .........................................................................................................................8

31 U.S.C. § 3729, *et seq.* ..........................................................................................................6

5 U.S.C.§ 706 ............................................................................................................................19

**Other Authorities**

H.R. Conf. Rep. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455 (Section 611)................................10

SBA Website, www.sba.gov/about-sba/oversight-advocacy/office-inspector-
    general/about-office-inspector-general (last visited Mar. 9, 2026)..............................................6

**Rules**

Fed. R. Civ. P. 65 .....................................................................................................................24

**Regulations**

13 C.F.R. § 120.110 ....................................................................................................................7

13 C.F.R. §§ 134.1201- 134.1217 ....................................................................................... *passim*

13 C.F.R. § 134.211 ...............................................................................................................9, 20

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

13 C.F.R. § 134.213 .................................................................................................18

13 C.F.R. § 134.214 .................................................................................................18

13 C.F.R. § 134.222 .................................................................................................18

13 C.F.R. § 134.223 .................................................................................................18

5 C.F.R. § 504 ...........................................................................................................8

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether the Due Process Clause of the Fifth Amendment permits the SBA to require PPP borrowers to litigate loan-review decisions in an administrative adjudication system where, among other things: a) the government controls the evidentiary record; b) "appellants" cannot obtain any discovery, develop contrary evidence, or confront the evidence against them; c) "appellants" must submit their "appellate brief" before being able to review the government's "record" upon which the appeal will be decided; d) "appellants" have no right to a hearing or argument subsequent to the submission of the administrative record; e) there is no right to a fair and unbiased decisionmaker; and f) judicial review is limited to the government-created and controlled record.

## STATEMENT OF FACTS[1]

As a result of the COVID 19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which created, among other things, 15 U.S.C. § 636(a)(36) (2020), the PPP. This proceeding involves loans granted, and some *already forgiven*, under the PPP. The Verified First Amended Complaint, Doc. 18 ("Complaint," or "C."), is a detailed factual recitation of the procedural quagmire that these Plaintiffs have had to suffer through not only with the SBA, but also with its administrative appellate body, the OHA, which vividly demonstrates the unconstitutionality of the procedural rules challenged in this Motion.

Plaintiffs are small businesses, most licensed to sell alcohol, running the gamut from karaoke bars, non-entertainment bars, restaurants, and indeed adult entertainment facilities. [C. at ¶¶ 61-342]. All of their PPP loans at issue were approved and funds dispersed. Nevertheless, the SBA has *now*

---

[1] All citations to the record are to the CM/ECF stamped page number.

(depending on the specific Plaintiff), among other things, denied *forgiveness* of the loan through the issuance of a Final Loan Review Decision ("FLRD"), thereby triggering the requirement for an OHA appeal; denied forgiveness, and after the Plaintiff filed an appeal in the OHA, withdrew that determination (thereby rendering the initial appeal moot), then issued a "new and improved" FLRD triggering the requirement that the Plaintiff file yet a *second appeal* in the OHA (for one Plaintiff the SBA then *withdrawing the second FLRD and thereby rendering the second OHA appeal moot as well* in order to permit the SBA to have a *third* bite of the apple in trying to come up with a reason to deny forgiveness that will "stick"), [*e.g.*, C. at ¶¶ 186-201; 402]; and for some of the Plaintiffs that have actually had their loans *forgiven*, the SBA has initiated audits ("Post-Payment Reviews") to purportedly re-examine whether the Plaintiff was eligible for its loan in the first place. Moreover, the SBA has, in writing, threatened to refer some of the Plaintiffs *and their lending banks* to the Office of Credit Management and/or the Office of Inspector General if the loan proceeds are not immediately returned, [id. at ¶ 11], which could result in, among other things, criminal prosecution and treble damages under the False Claims Act (31 U.S.C. §§ 3729-3733).[2] And based on such threats but irrespective of this ongoing litigation, several of Plaintiffs' have had their lending bank demand repayment of the loans.[3] If forced to repay their loans, many of the Plaintiffs face business ruination. [*E.g.* C. at ¶¶ 111, 129, 159, 175, 202]. Plaintiffs and their lending banks therefore need the relief and protection that only this Court can provide. [*See, generally*, id. at ¶¶ 61-342].

---

[2] [*See, e.g.*, C. ¶¶ 4, 346, and 734; Memo, Doc. 32, p. 47 n.20 (citing online SBA documents that list possible *criminal* penalties associated with making a false statement on a PPP loan application, such as the applicant's certification that it is *qualified* to obtain the loan and/or forgiveness); Supp. Memo, Doc. 41, pp. 5-6 (citing potential *civil* penalties under the False Claims Act for fraudulent statements made in PPP applications)]; www.sba.gov/about-sba/oversight-advocacy/office-inspector-general/about-office-inspector-general (last visited Mar. 9, 2026) (emphasis added) ("OIG investigates allegations of *possible criminal violations*. . . ," and reports such violations to the U.S. Attorney General).

[3] Exhibit A to the Declaration of Zachary M. Youngsma (Y.Decl.), is a letter received on April 28, 2025, just eight days prior to the hearing on Defendants' Motion to Dismiss, from SAW's lending bank demanding *full repayment* of SAW's First Draw PPP loan that SAW. Similarly, shortly after the OHA denied Gold Club's appeal of its Second Draw loan, it received the same type of letter on the same day demanding repayment of its loan *in full*. [Exhibit B to Y.Decl.; Y.Decl. at ¶¶ 3-4].

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The SBA is using two sets of laws (depending on which Plaintiff is involved) to claim that Plaintiffs were ineligible for the loans and/or for loan forgiveness. First is the regulation found at 13 C.F.R. § 120.110(p), which denies traditional 7(a) loan eligibility for businesses that present live performances, depictions, or displays of a "prurient sexual nature" (the "PSNR"). As documented in the Complaint, Defendants are making this determination for a number of the Plaintiffs based solely upon Google Earth photos of the outside of their building and calculations of income categories on a profit and loss statement as "dances" or "door admissions." In regard to Plaintiff Gold Club - SF, LLC ("Gold Club"), the OHA *upheld* SBA's determination of non-eligibility on these bases. [C. at ¶¶ 535-543; Exhibit K to C. Doc. 18-1 at pp. 1839, 1845].

Second, it is using its "Affiliation Rules," [C. at ¶ 13 (defining this phrase)], to assert that these businesses, *combined and in combination with yet other entities,* exceed the numerical employee threshold to be considered to be "small businesses" entitled to funding by the SBA, even though the Plaintiffs are specifically *exempt* from those Affiliation Rules. This issue centers on the question of whether Plaintiffs are what the PPP refers to as "NAICS code 72" businesses (which include food and alcohol beverage establishments, such as bars, taverns, restaurants, nightclubs and discotheques); all Plaintiffs being such businesses. [C. at ¶¶ 18, 591, 596-97]. For PPP loans, such companies are exempt from the Affiliation Rules pursuant to 15 U.S.C. § 636(a)(36)(D)(iii)(I) and 15 U.S.C. § 636(a)(36)(D)(iv)(I) for "first draw" loans, and 15 U.S.C. § 636(a)(37)(D) and (E) for "second draw" loans (collectively, the "Affiliation Exception Provisions").

Business identifiers similar to NAICS codes are used on a company's federal tax returns (referred to as "business activity codes"). Various SBA publications instruct PPP loan and forgiveness applicants to use the business activity code found on their tax returns for their PPP loan and forgiveness applications in order to determine whether they fall within the Affiliation Exception Provisions. [*E.g.* C. at ¶¶ 583, 585; Exhibits CCC (Doc. 18-3 at p. 1731) and DDD (Doc. 18-3 at p. 1740) to C. (PPP loan applications' instructions); C. at ¶¶ 590 and Exhibit EEE to C., Doc. 18-3 at p. 1748. (PPP loan forgiveness instructions)]. In fact, numerous Plaintiffs properly listed themselves as code 72 businesses on their tax returns *well-prior to the Pandemic*. Yet, the SBA believes, without

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

any supporting statutory or regulatory authority, that it can unilaterally substitute another NAICS code of its own choosing (including some that *don't even exist*) so that a business can be excluded from the Affiliation Exception Provisions and must—because it is then too "large" to qualify for PPP loans—return all of its loan proceeds. [C. at ¶¶ 67, 73, 85, 136, 141, 182, 187, 247, 256, 264, 269-270, 561-85, 600-01]. The SBA does not, however, tell anyone (including the courts) under what authority it is making such a determination; how it makes this determination; or the criteria it uses in making such a "switch."

**NONE OF THOSE STATUTES OR REGULATIONS ARE, HOWEVER, THE SUBJECT OF THIS VERY LIMITED MOTION FOR PRELIMINARY INJUNCTION**. Rather, Plaintiffs seek to enjoin those "special" OHA administrative rules adopted by the SBA *solely and specifically for PPP loans* (the SORs) that make it virtually impossible for Plaintiffs to be able to effectively challenge the validity, legality, and/or constitutionality of the PSNR, the Affiliation Rules, and (the application of) the Affiliation Exemption Provisions. These rules contain such stellar pillars of due process as: *denying any discovery whatsoever* (13 C.F.R. § 134.1209(b)); requiring appellants to file appeal briefs *before* they have an opportunity to review the administrative record ("AR"), with no reply brief permitted as of right (13 C.F.R. §§ 134.1202, 1207, 1208); allowing SBA to supplement the AR at any time (by actual experience); precluding hearings or oral argument, especially problematic given the file-before-the-AR-is-produced requirement (13 C.F.R § 134.1209(b)); permitting the SBA to appoint literally *anyone* to decide an OHA appeal, and not even requiring that the adjudicator be an Administrative Law Judge ("ALJ") (13 C.F.R §§ 134.1213, 603); precluding attorneys' fees under the Equal Access to Justice Act (5 C.F.R. § 504; 28 U.S.C. § 2412 ("EAJA")) (13 C.F.R § 134.1213), even if the appellant otherwise qualifies; providing only 10 calendar days to review thousands of pages of the AR, which need *not* contain all relevant documents (13 C.F.R. § 134.1207); allowing the SBA to submit evidence outside of the AR with its response, [C. at ¶ 428; Exhibit I to C. at pp. 1811-29]; and submitting heavily redacted ARs that obstruct the appellant's ability to understand and adequately respond to the FLRD's rationale and thereby limiting the ability

of an "appellant" to litigate in court. [C. at. ¶¶ 428-429]. All of the foregoing are either found in the SORs or are well-illustrated by the extensive factual record set forth in the verified Complaint.

Subject to intervention by this Court, once the SBA issues a FLRD denying loan forgiveness, or concludes a Post Payment Review (where the SBA basically revokes the forgiveness it already granted), Plaintiffs are required (for the latter, presumably) to first appeal to the OHA before repairing to a federal court. Accordingly, in addition to facially challenging these SORs, Plaintiffs challenge the SBA's and OHA's application of those rules to them based upon factual record in the verified Complaint.

For example: A) even though requested in numerous OHA appeals through formal motions, *all* of Plaintiffs' discovery requests were denied, [C. at ¶¶ 61-342, 409-10, 430-36, 457-58]; B) the OHA, in violation of its own regulation, 13 C.F.R. § 134.211(c), has *repeatedly* i) ruled on critical motions *before any response had been or could be filed*, [C.at ¶¶ 404-416, 425-27, 432-39, 444, 446, 451-455, 458, 462-63],[4] with the OHA normally not even waiting until receipt of the SBA's response to a Plaintiff's motion before ruling against it, and with some motions being denied *within hours* of filing—sometimes with the denial being filed *by an attorney representing the OHA*, [Exhibit W, Doc. 18-2 at pp. 119-20, to C. at ¶ 405; *e.g.*, id. at ¶¶ 8, 194, 401, 458]—and ii) granted (sometimes, <u>*within minutes of filing*</u>) *contested* motions filed by the SBA without permitting the Plaintiff any right to submit any response, [*e.g.*, C. at ¶¶ 8, 438, 444, 446, 453-55, 458]; and C) with the exception of motions to extend deadlines, all contested motions filed by the Plaintiffs have been *denied* and all contested motions filed by the SBA have been *granted*. And then there is the simple fact that constitutional claims cannot be adjudicated by the OHA. [C. at ¶¶ 418-20]; *see* Sec. II.A, *infra*. Those include Plaintiffs' challenges to the SORs that are the very subject of this motion. *See* discussion, *infra*. Consequently, none of the substantive claims in this lawsuit can even be considered (let alone decided) by the OHA. As discussed below, the Supreme Court has been clear that Plaintiffs need not

---

[4] Moreover, given SBA's habit of withdrawing FLRDs while OHA appeals were pending, [*e.g.* C. at ¶¶ 82, 91, 144, 156, 345, 401, 403, 439, 445], many of the matters raised by Plaintiffs are capable of repetition yet evading review. *See, e.g.,* <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 481 (1990).

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

undergo an unconstitutional process in order to be able to challenge that process in court.

## THE SORs MATTER TO THE ADJUDICATION OF THE CONSTITUTIONALITY, LEGALITY, AND APPLICATION OF THE PNSR, THE AFFILIATION RULES, AND THE AFFILIATION EXCEPTION PROVISIONS

Essential in regard to the constitutionality of the PSNR is *how the SBA defines or operationalizes the term "prurient*." Prior to the pandemic, that word had appeared *exclusively* in the realm of obscenity jurisprudence, Miller v. California, 413 U.S. 15, 24 (1973) ("prurient appeal")), where the Court defined it to mean a "shameful or morbid," and "unhealthy" interest in sex, as opposed to merely "lustful thoughts" or normal, healthy, sexual desire. *See* Roth v. United States, 354 U.S. 476, 487 n.20 (1957); Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 498-99 (1985). Such a definition would, however, render the PSNR to be viewpoint-based and therefore unconstitutional. *See, e.g.*, Iancu v. Brunetti, 588 U.S. 388, 393-94 (2019) (holding that the Lanham Act's bar on registration of "immoral" or "scandalous" trademarks was unconstitutional viewpoint discrimination). Consequently, in CARES Act litigation the SBA has been trying to define "prurient" as anything but that. Rather, it has invoked other and often contradictory definitions of what the term "prurient"—at least in regard to the PSNR—means.[5] [C. at ¶¶ 474, 490-98]. And of course, there is also Plaintiffs' claim that the PSNR is unconstitutionally vague.[6] [C. at ¶ 629].

Critically here in regard to this limited motion is the fact that in none of the cases where the SBA has been sued for Pandemic funding decisions has it produced *even one single document* demonstrating either how it internally applies the term "prurient," or how it conveyed to borrowers

---

[5] Ironically, the SBA IS required to apply the *obscenity* understanding of the term "prurient" when enforcing the STATUTORY provision found in 15 U.S.C. § 633(e), which prohibits the SBA from providing loans to any business "engaged in the production or distribution of any product or service that has been determined to be obscene by a court of competent jurisdiction." (emphasis added). The legislative history of this provision notes that "any materials in question must have been *judicially determined, in either a civil or criminal action, to be legally obscene under prevailing constitutional standards in order for the ban to apply*." H.R. Conf. Rep. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455 (Section 611) (emphasis added).

[6] Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and must provide clear guidance to officials so that there is not ad hoc, arbitrary, or discriminatory enforcement of the law." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); Kolender v. Lawson, 461 U.S. 352, 358 (1983). The SBA/DOJ frequently change the purported definition of the term "prurient" depending on the needs of a particular lawsuit, and with one AUSA actually acknowledging in open court that it was indeed vague. [C at ¶ 488].

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

how they were supposed to understand what that term meant with regard to loan eligibility and forgiveness certifications that they were required to make in their various applications. [C. at ¶ 504]. Nevertheless, Plaintiffs have established that the SBA published Standard Operating Procedures ("SOPs") where it provided glimpses to lending banks as to how the term "prurient" is to be operationalized; a number of them specifically applying the <u>same terminology used by the Supreme Court under obscenity law</u>, which would render the PSNR viewpoint specific and therefore blatantly unconstitutional. However, the SBA's website contains SOPs going back only so many years. [*See, e.g.*, C. at ¶¶ 509-26].

Nevertheless, for example, SOP 50-10 (5) states that the "lender must consider whether the *nature and extent* of the sexual component causes it, *in view of community standards*, to be prurient." [Exhibit TT to C., Doc. 18-3 at p. 151 (emphasis added)]. This is almost identical to what is required in obscenity law. *Cf.* <u>Miller</u>, 413 U.S. at 24 (emphasis added) (requiring a determination of whether "the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest"). Accordingly, Plaintiffs need discovery from the SBA on, for example, what the *previous* SOPs contain (those predating the ones found of the SBA's website), and which community standards are to be applied (the state, the county, what?). And, Plaintiffs need to see what SBA documents, if any, were available to the public at the time the loan applications were submitted that describe how the SBA was applying the PSNR *then*.[7]

Nothing is different in regard to the Affiliation Rules and the Affiliation Exception Provisions. Plaintiffs allege that the Affiliation Rules are vague and are being applied against them in a retaliatory fashion, and that the SBA is applying the Affiliation Exception Provisions to these Plaintiffs arbitrarily and without legal basis. [C. at Counts V-XI]. But there are no statutes, regulations, or even published SBA memoranda of which Plaintiffs are aware that: a) purport to allow the SBA to "reassign" a NAICS code to any business besides a federal contractor (which is not the case here),

---

[7] Because "prurient" had only previously been used in obscenity jurisprudence, Plaintiffs Las Vegas Bistro, LLC, Stockton Enterprises, LLC, Dallas Food and Beverage, LLC, Smithville Bistro, LLC, Deja Vu Showgirls of Las Vegas, LLC, and Jamme Holdings, LLC, included correspondence from the undersigned in their loan applications explaining why the PSNR did not preclude the loans at issue. [Exhibits A-C to the Declaration of Nicole Turnwald, at ¶¶ 3-11].

or b) govern how the SBA analyzes sources of income or other data in order to "reassign" a NAICS code. Only discovery from the SBA can provide such information, which the SORs preclude.

Given that judicial review of an OHA decision is generally limited to a review of the administrative record compiled below, Lands Council v. Powell, 395 F.3d 1019, 1029-30 (9th Cir. 2005), Plaintiffs must obtain discovery *in the OHA,* which is literally impossible in light of the SORs. Consequently, the only way for Plaintiffs to be able to develop the factual record (though discovery) necessary to be able to effectively mount their constitutional challenges to the PSNR, the Affiliation Rules, and the Affiliation Exception Provisions, is for either the SORs to be enjoined or for Plaintiffs to be relieved of the obligation to first proceed through the OHA. This motion seeks just that.

## ARGUMENT

### I.    PRELIMINARY INJUNCTION STANDARDS.

To obtain preliminary injunctive relief, a movant must demonstrate "that it is likely to succeed on the merits, that it is likely to suffer irreparable harm absent preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." Diamond Sands Apartments, LLC v. Clark Cnty. Nevada, 164 F.4th 759, 762 (9th Cir. 2026). The Ninth Circuit applies a sliding-scale approach under which "'a stronger showing of one element may offset a weaker showing of another.'" Pacito v. Trump, --- F.4th ---, 2026 WL 620449, at *13 (9th Cir. Mar. 5, 2026) (quoting All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011)). Thus, where a movant raises "'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the [movant's] favor'" and the remaining factors are satisfied. Id. (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). Serious questions exist where the claims present substantial and difficult issues raising a fair ground for litigation and a "fair chance of success on the merits," even if they do "not promise a certainty of success" or "even present a probability of success[.]" Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc).

### II.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS.

Plaintiffs are likely to succeed on the merits because the SORs create an adjudicatory system in

which the government controls the evidentiary record and where the "appellant" has no mechanism to obtain discovery or develop contrary evidence, to confront the evidence against it, to even have a hearing on the merits of its "appeal." That structural asymmetry creates an unacceptable risk of erroneous deprivation and violates the Fifth Amendment's guarantee of due process. The SORs also undermine the neutrality of the adjudicatory process, condition access to loan forgiveness on submission to unconstitutional procedures, and prevent the development of a full and complete record upon which meaningful judicial review can be obtained.

**A. Plaintiffs' constitutional challenges to the SOR are properly before this Court.**

The constitutional validity of the SORs is properly before this Court, which has already held that "Plaintiffs' facial challenges to the [SOR] are ripe, as are Plaintiffs Dallas, Meacham, S.A.W., and Gold Club's as-applied challenges to the [SORs]." [Doc. 45 at p. 38:4-6]. That resolves any ripeness concerns.

The SORs also constitute final agency action, which marks the "consummation" of the agency's decision-making process and is one from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 178 (1997) (cleaned up). The SORs satisfy both conditions. They establish the SBA's definitive procedural framework governing PPP loan review appeals, and determine how those appeals must be adjudicated. The questions presented are therefore purely legal ones arising from a binding regulatory scheme. *See* Abbott Labs v. Gardner, 387 U.S. 136, 149-50 (1967).

Finally, structural constitutional challenges to administrative adjudicatory procedures are presumptively resolved by Article III courts. *See, e.g.*, Carr v. Saul, 593 U.S. 83, 92 (2021); Califano v. Sanders, 430 U.S. 99, 109 (1977); [Ex. I to C., Doc. 18-1 at p. 1790 (ALJ's order denying discovery request in Gold Club's OHA appeal explaining "[n]othing . . . gives OHA the ability to consider the validity of an SBA regulation")]. In any event, Plaintiffs are not required to submit to an allegedly unconstitutional adjudicative process in order to challenge the legality of that process in federal court. Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175, 191-92 (2023). Plaintiffs' challenges here therefore present the type of constitutional question that is appropriately decided in this Court.

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**B. The SORs violate the Due Process Clause because they permit the government to control the evidentiary record while preventing "appellants" from challenging such "record" or developing contrary evidence.**

The Fifth Amendment requires procedures that meaningfully reduce the risk of erroneous deprivation when the government adjudicates private rights. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Whether administrative procedures satisfy due process depends on three factors: (1) the private interest affected, (2) the risk of erroneous deprivation under the existing procedures and the probable value of additional safeguards, and (3) the government's interest. Id. Due process is violated where the structure of the adjudicatory system creates an unacceptable risk that decisions will be made on an incomplete or one-sided record. *See* Goldberg v. Kelly, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); Greene v. McElroy, 360 U.S. 474, 496 (1959) ("[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."); *see also* 13 C.F.R. § 134.1210 (emphasis added) (noting the SORs call for a "clear error of *fact* or law" standard of review). Application of the Mathews factors demonstrates that the SORs fail these standards.

i. *The private interests affected are substantial.*

Two protected property interests are implicated here: (1) Plaintiffs' entitlement to seek PPP loan forgiveness under the statutory framework enacted by Congress, and (2) Plaintiffs' ability to pursue that entitlement through a meaningful and fair adjudicatory process. Property interests arise where statutes create "legitimate claim[s] of entitlement" rather than a purely discretionary benefit. The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). When a statutory program establishes objective eligibility criteria governing the receipt of benefits, individuals who satisfy those criteria possess a protected property interest in the adjudication of their claims. Goldberg, 397 U.S. at 262.

The PPP establishes such a framework. The statute provides that "eligible recipient[s] shall be eligible for forgiveness of indebtedness on a covered loan" for qualifying expenditures made during the covered period. 15 U.S.C. § 636m(b). Borrowers therefore possess a legally protected interest in

the adjudication of their statutory eligibility for loan forgiveness.

Once the government creates a statutory adjudication process governing entitlement to such benefits, that process itself becomes a protected property interest. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). As the Court there explained, "[t]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Id. at 434. Thus, where the government creates a statutory mechanism for adjudicating entitlement to benefits, the Due Process Clause protects the claimant's ability to *meaningfully* pursue that claim. *See, e.g.*, Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (noting due process requires a party be heard "at a meaningful time and in a meaningful manner"); Mathews, 424 U.S. at 349 (". . . to ensure they are given a meaningful opportunity to present their case.").

The financial stakes involved in PPP forgiveness determinations are substantial. Loans commonly involve hundreds of thousands, if not millions, of dollars. [*E.g.* C. at ¶¶ 84, 127, 140, 186]. For example, Gold Club sought forgiveness of $1,993,233.75. [Ex. I to C., Doc. 18-1 at p. 1794]. Courts have long recognized that the deprivation of significant economic entitlements triggers meaningful procedural protections. *See, e.g.*, Goldberg, 397 U.S. at 262-63 (welfare benefits); Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1191-92 (9th Cir. 2015) (involving Section 8 housing benefits). The deprivation of PPP forgiveness involving millions of dollars therefore implicates a substantial property interest.

The structure of the PPP further heightens the importance of accurate adjudication. Forgivable PPP funds were required by statute to be spent on payroll, rent, and other operating expenses during the COVID-19 emergency. 15 U.S.C. § 636(a)(36)(F); 15 U.S.C. § 636m(b). Plaintiffs therefore distributed the loan proceeds to employees, landlords, and vendors in reliance on the statutory forgiveness framework. [C. at ¶¶ 10, 391-98]. Forgiveness denial not only denies a discretionary benefit; it converts funds already *spent* in accordance with the statute into immediate debt obligations of the borrower.

These interests are substantially burdened by the SORs, which govern the only mechanism through which borrowers may challenge SBA forgiveness determinations. Yet, they limit the

evidentiary record largely to materials selected by SBA; prohibiting discovery that would allow borrowers to obtain contrary evidence from the agency and to challenge SBA's "record," permitting SBA to demand documents from appellants while withholding its own internal materials, and ultimately fixing that one-sided submission as the sole evidentiary record for judicial review.

ii. *The SORs create a high risk of erroneous deprivation.*

When procedures governing adjudication prevent claimants from meaningfully presenting evidence necessary to prove their entitlement, the risk of erroneous deprivation is substantial.

The Supreme Court has long recognized that accurate factfinding requires procedures that permit meaningful testing of the government's evidence. In Goldberg, for example, the Court explained that where the resolution of important decisions—such as imposing $1,993,233.75 of debt on a business—turns on questions of fact, due process requires procedures that allow claimants to challenge the government's evidence through adversarial presentation. 397 U.S. at 269. Similarly, in Greene, the Court held that fundamental fairness is compromised when the government relies on evidence that the affected party has no meaningful opportunity to confront or rebut, explaining that where governmental action seriously injures an individual, "the evidence used to prove the Government's case must be disclosed . . . so that he has an opportunity to show that it is untrue." 360 U.S. at 496. Thus, due process demands that procedures be structured to reduce the risk that the government decision-making will rest on an incomplete or one-sided factual record. *See also* ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059, 1077 (9th Cir. 2015) (due process is compromised when the government relies on evidence that affected parties are not given a meaningful opportunity to rebut).

The SORs depart sharply from these principles. Under them (and as SBA applies them) the evidentiary record consists largely of materials compiled by SBA, at its discretion, and produced only after the borrower has filed its appeal, with no right of reply or hearing. At the same time, the SORs prohibit discovery that would allow appellants to obtain evidence from SBA necessary to assert substantive constitutional claims, or to rebut the agency's factual assertions, in this Court (such as, again, how SBA defines "prurient" or what authority and how or what data SBA analyzes to "reassign" NAICS codes for PPP loan forgiveness applicants). In practice, SBA demands extensive

documentation from borrowers during the loan review process and again during the OHA appeal (after, of course, having seen the appellant's appeal petition), while borrowers have no reciprocal mechanism to obtain internal SBA materials relevant to the agency's decision-making. Indeed, as reflected in the OHA proceedings involving Plaintiff Jamme Holdings, LLC ("Jamme"), SBA routinely denies forgiveness based on borrowers' alleged failure to produce irrelevant documents demanded by the agency, while the SORs simultaneously prevent borrowers from obtaining internal SBA materials necessary to challenge the denial determinations. [*See* Exhibits C - H to the Y.Decl., at ¶¶ 5-10; Exhibits G & H (Gold Club's discovery motion and the OHA's order denying it), to C., Doc. 18-1 at pp. 80-102, 1789-90].

This structure creates a significant risk of erroneous deprivation of Plaintiffs' protected property interests because SBA controls the materials that form the administrative record and borrowers lack any meaningful mechanism to obtain contrary evidence from the agency; appellants then being forced to challenge SBA determinations without access to the very information necessary to demonstrate their statutory eligibility to forgiveness. The result is a system in which SBA determines what evidence exists, what evidence is disclosed, and what evidence a reviewing court will see. The risk of erroneous deprivation is particularly acute because PPP forgiveness determinations frequently turn on fact-intensive questions such as borrower eligibility, affiliation, or SBA's application of the PSNR; much of which depend on documentation and internal agency materials unavailable to borrowers *or the courts* under the SORs.

        iii. *An interest in administrative efficiency cannot justify procedures that prevent borrowers from developing and presenting evidence to rebut SBA's determinations or to constitutionally challenge the laws under which those decisions are made.*

While agencies have a legitimate interest in efficient administration, that interest does not permit procedures that materially increase the risk of erroneous decision-making. "[T]he Constitution recognizes higher values than speed and efficiency." <u>Stanley v. Illinois</u>, 405 U.S. 645, 656 (1972); <u>Lopez-Valenzuela v. Arpaio</u>, 770 F.3d 772, 785 (9th Cir. 2014) (quoting <u>Reno v. Flores</u>, 507 U.S. 292, 346 (1993) (Stevens, J., dissenting)) ("'[A]dministrative convenience is a thoroughly inadequate basis for the deprivation of core constitutional rights.").

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Here, the government could only assert administrative efficiency as the basis for adopting the SORs. But the modest procedural safeguards necessary to reduce the risk of erroneous deprivation would impose only a minimal burden on the agency. Allowing borrowers discovery, permitting supplementation of the administrative record where necessary to resolve factual disputes, requiring SBA to disclose materials upon which it relies, requiring production of the administrative record *before* an appellant must draft its appeal brief, and granting a hearing, would not meaningfully interfere with OHA's adjudicatory function; they would enhance the process and make it fair. Administrative tribunals routinely incorporate such procedures without impairing agency efficiency. In fact, *OHA itself has such non-draconian procedures for other adjudicatory matters outside of PPP loan forgiveness appeals* (hence the "*Special* OHA Rules" moniker). *See, e.g.*, 13 C.F.R. §§ 134.213, 214, 222, 223.

Indeed, such procedures are not novel but are the basic features of fair adjudicative processes designed to ensure reliable factfinding when government actions turn on disputed facts. Procedural safeguards that permit parties to meaningfully challenge the government's evidence (such as the OHA rules for other appeals) serve not only private interests, but also the government's own interest in accurate decision-making.

Moreover, a government's efficiency interest carries less weight where the challenged procedures systematically skew the evidentiary record in favor of the agency whose decision is under review. The SORs do precisely that. By allowing SBA to rely on its own selection of internal materials while preventing borrowers from obtaining other evidence from the agency, and by permitting SBA to supplement the record through declarations submitted with its briefing after the administrative record has already been produced and finalized, the rules create a structural imbalance that heightens the risk of erroneous decisions without meaningfully advancing administrative efficiency. [Exhibit I (SBA's response to Gold Club's OHA Appeal) to C. at pp. 1792-1829 (noting it includes the Pannu Declaration, *see* C. at ¶ 102, which included numerous exhibits that were not included in the administrative record); *see also* Exhibit K to C. at pp. 1843-44]. Although the ALJ ultimately declined to consider the declaration, he refused to strike it; thus, it is included in the record

for judicial review.

Modest procedural safeguards allowing borrowers to obtain relevant evidence (such as the SBA's internal guidance and policies regarding the PNSR and related eligibility determinations), to present such evidence necessary to rebut SBA's assertions, and to be meaningly heard, would impose little administrative burden while substantially improving the reliability of OHA adjudications *and* the judicial review that follows. The balance of interests therefore decisively favors Plaintiffs.

### C. The SORs are contrary to law under the Administrative Procedure Act.

The Administrative Procedure Act directs courts to "hold unlawful and set aside agency action" that is "contrary to constitutional right" or otherwise "not in accordance with law[.]" 5 U.S.C.§ 706(2)(A-B); Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). As demonstrated above, the SORs deprive borrowers of their basic and fundamental due process rights. Procedures that deny parties a meaningful opportunity to obtain and present evidence necessary to challenge government action, and to be meaningfully heard, are inconsistent with the Due Process Clause. Agency rules that operate in this manner are therefore "contrary to constitutional right" and "not in accordance with law" within the plain meaning of § 706(2). Because the SORs impose procedures that create a substantial risk of erroneous deprivation of protected property interests, they are unlawful and must be enjoined.

### D. The SORs deny borrowers a neutral adjudicator.

Due process requires that disputes affecting protected property interests be resolved by a neutral decisionmaker. "[A] fair trial in a fair tribunal is a basic requirement of due process," and that requirement "applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46-47 (1975) (cleaned up). Fair adjudication begins with fair procedures. Due process is violated not only where the decisionmaker is actually biased, but also, as here, where the structure of the proceeding creates a constitutionally intolerable probability of unfairness. Id.; Kendrick v. Sullivan, 784 F. Supp. 94, 102 (S.D.N.Y. 1992) ("The right to an impartial adjudication is a basic element of due process," including "in an administrative setting[.]").

The SORs create precisely such a structural imbalance. As described above, they permit SBA to

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

control the evidentiary record while preventing borrowers from obtaining evidence necessary to rebut the agency's assertions and preclude a hearing. The resulting framework places the adjudicator, who can be a fellow SBA employee, *see* 13 C.F.R. §§ 134.1213 and 603, in the position of resolving disputes on a record effectively controlled by the very agency whose decision is under review.

The practical operation of this system, as discussed in the Statement of Facts, reinforces that structural imbalance. OHA routinely grants SBA's motions, sometimes within minutes of filing, and in some instances with the SBA's OHA attorney granting SBA's own motion, [Ex. W to C., Doc. 18-2 at p. 120; C. at ¶ 405], and violates its own regulation requiring 15 days for the non-moving party to be able to respond. 13 C.F.R § 134.211(c); [C. at ¶¶ 8, 194, 401, 458]. At minimum, this framework creates the probability of unfairness that due process will not tolerate and significantly heightens the risk of erroneous deprivation described above. <u>Withrow</u>, 421 U.S. at 47, 58. And the OHA record referenced in the Complaint truly shows a biased "appellate" body with predetermined outcomes. Such a system is constitutionally intolerable. *See, e.g.*, <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868, 883-84 (2009) (due process violated where circumstances pose a risk of actual bias or prejudgment); *see also* <u>McCarthy v. Madigan</u>, 503 U.S. 140, 148 (1992) ("[A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it").

### E.  The SORs impose unconstitutional conditions.

Plaintiffs are faced with a stark choice by the SORs: abandon their challenges to SBA's denials of loan forgiveness (and suffer the financial consequences) or submit to an adjudicatory process that deprives them of basic and fundamental procedural due process. The doctrine of unconstitutional conditions, however, prohibits the government from conditioning the receipt of a public benefit on the surrender of constitutional rights. Even where a person has no entitlement to a government benefit, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests[.]" <u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972). That is precisely what the SORs do. They require submission to a process that denies fundamental due process as discussed, *supra*, Sec. II.B-D., in order to obtain the benefit of PPP forgiveness. The

Constitution does not permit the government to impose such a choice.

**III.    PLAINTIFFS HAVE SUFFERED, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF.**

First, Plaintiffs face irreparable harm because they are being compelled to litigate high-stakes loan forgiveness determinations within an unconstitutional adjudicatory framework. Once OHA proceedings occur, the resulting administrative record created by the SBA is, as discussed above, incomplete, defective, and fixed. It can be neither challenged, confronted, nor rebutted by the "appellant," yet it forms the complete record for judicial review. The Ninth Circuit has repeatedly held that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)); Cnty. of Santa Clara v. Trump, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). Courts likewise recognize irreparable injury where plaintiffs must choose between surrendering legal rights or submitting to an unlawful regulatory scheme. *See* Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1057-58 (9th Cir. 2009); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 380-81 (1992).

Second, SBA's forgiveness denials threaten severe and unrecoverable financial harm. Plaintiffs collectively face millions of dollars in potential debt liability for PPP funds that were disbursed years ago and used for the precise purposes Congress required: payroll, rent, and other covered expenses necessary to float the economy during a once-in-a-lifetime pandemic. [C. at ¶¶ 10, 391-98]. If forgiveness is denied and repayment demanded, Plaintiffs will be required to "repay" funds that no longer exist, creating immediate and disastrous financial consequences for their businesses. [*See, e.g.*, C. at ¶¶ 111, 129, 159, 175, 202, 216, 230, 257, 271, 301, 317, 342 (alleging threat of bankruptcy); id. at ¶¶ 630, 636, 657, 663, 680, 696, 724 (alleging irreparable harm from Defendants' actions, including "financial collapse" and "business ruination")]. Economic injury threatening the viability of a business constitutes irreparable harm, especially when there is no prospect of recovering damages. *See* Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985) (noting "[t]he threat of being driven out of business is sufficient to establish irreparable harm"). *Cf.*

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 471 (9th Cir. 1984) ("if adequate compensatory relief will be available," then "mere financial injury [] does not constitute irreparable harm"). Moreover, unless the SBA represents to the contrary, Plaintiffs cannot recover monies already paid back on the loans.

Third, the SORs threaten to cause, as discussed immediately above, the cessation of constitutionally protected businesses. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." Elrod, 427 U.S. at 373. All Plaintiffs but Office and Pole Position engage in First Amendment protective entertainment.[8] [C. at ¶¶ 61, 112, 130, 160, 176, 203, 217, 242, 258, 286, 302, 318, 330; id. at ¶¶ 607, 611]. By threatening the continued operation of these expressive businesses through an unconstitutional adjudicatory process and potentially ruinous financial liability, the SORs impose an ongoing burden on protected expressive activity. See Viacom Int'l Inc. v. F.C.C., 828 F. Supp. 741, 744 (N.D. Cal. 1993) (noting when a "suit raises serious First Amendment questions, the Court has little difficulty finding the potential for irreparable injury, or [] at the very least [that] the balance of hardships tips sharply in Plaintiff[s'] favor").

Fourth, as noted in the Statement of Facts, while this unconstitutional OHA process drags on, Plaintiffs *and their lending banks* have been threatened with both civil and criminal exposure if they fail to comply with the SBA's draconian document requests. The SORs therefore place Plaintiffs in the untenable position of either submitting to an unlawful adjudicatory framework or risking civil and criminal exposure. The threat of criminal exposure likewise supports a finding of irreparable harm. See Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("credible threat" of

---

[8] Live performance entertainment, be it in the form of non-obscene female or male performance dance entertainment, karaoke, or otherwise, receive protection under both the Free Speech and Freedom of Association Clauses of the First Amendment. See, e.g., Schad v. Borough of Mount Ephraim, 452 U.S. 61, 66 (1981) ("Entertainment, . . . is protected"); Santopietro v. Howell, 857 F.3d 980, 989 (9th Cir. 2017) ("Association for the purpose of engaging in protected activity is itself protected by the First Amendment[.]"); Winters v. New York, 333 U.S. 507, 510 (1947) (mere entertainment, in-and-of itself, is considered protected expression under the First Amendment); Ward v. Rock Against Racism, 491 U.S. 781 (1989) (music without regard to words); Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565 (1991) (fully nude dance). But even Office and Pole Position, venues for people to congregate and talk, are imbued with freedom of association rights under the First Amendment.

prosecution establishes irreparable harm); Cuviello v. City of Vallejo, 944 F.3d 816, 833-34 (9th Cir. 2019) (finding an abuse of discretion for "failing to recognize a police officer's threat of criminal prosecution . . . as irreparable harm").

Finally, the harms imposed are irreparable because Plaintiffs cannot recover the costs required to defend themselves in this unlawful process, including those expended as a result of having to comply with SBA's incessant demands for ever-more documentation, [*e.g.*, C. at ¶¶ 4, 7, 345, 403, 441, 613, 655], and to serially appeal FLRDs because SBA withdrawals thereof and replacement with similarly specious reasoning, [*see* Exs. C & G (Jamme's FLRDs) to Y.Decl., at ¶¶ 5, 9], as a result of how SBA is applying the SORs. [Id. at ¶¶ 73-111, 144-159, 186-202, 345, 401, 403, 438-39, 443, 445, 447-48, 462, 695, 740]. Even if Plaintiffs prevail before the OHA, the SORs prevent them from recovering attorney fees. 13 C.F.R. § 134.1213. Moreover, due to sovereign immunity, *see* California v. Azar, 911 F.3d 558, 581 (9th Cir. 2018), Plaintiffs can recover neither the monies already paid back on the loans nor the costs of enduring the SORs' unconstitutional framework. *See* Madigan, 503 U.S. at 147 ("[A] particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim."). And, "repayment" of the loans is a misnomer since Plaintiffs have, as discussed, spent those proceeds for the precise purposes Congress required. Those are all losses that cannot later be recovered. Plaintiffs must therefore bear the substantial costs of undergoing the unconstitutional procedures imposed by the SORs without any possibility of reimbursement; further establishing irreparable injury. Azar, 911 F.3d at 581 (economic harm may constitute irreparable injury where monetary damages cannot be recovered).

## IV.    AN INJUNCTION WOULD CAUSE NO HARM TO OTHERS, AND THE PUBLIC INTEREST WEIGHS IN FAVOR OF AN INJUNCTION.

The third and fourth preliminary injunction factors merge when the government is the opposing party. Doe v. Horne, 115 F.4th 1083, 1098 (9th Cir. 2024). The Ninth Circuit has consistently recognized that "'it is always in the public interest to prevent the violation of a party's constitutional rights,' because 'all citizens have a stake in upholding the Constitution.'" Id. at 1098-99 (quoting Melendres, 695 F.3d at 1002 and Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005)). It

likewise recognizes that it is neither equitable nor in the public interest to permit the government to continue enforcing a policy that likely violates the Constitution. Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1069 (9th Cir. 2014). Moreover, "the 'ongoing enforcement of the potentially unconstitutional regulations would infringe not only the [constitutional rights] of plaintiffs, but also the interests of other people' subjected to the same restrictions." Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (clarification added; cleaned up; quoting Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City, 303 F.3d 959, 974 (9th Cir. 2002)). That applies here: allowing SBA to continue enforcing the SORs while this case proceeds perpetuates the unconstitutional adjudicatory framework challenged in this action.

Nor would an injunction meaningfully harm the government. The requested relief would simply relieve the Plaintiffs from being straightjacketed by the flagrantly unconstitutional SORs while they litigate their more substantive challenges. Consequently, the public interest heavily weighs in favor of granting the requested injunction.

## V.   NO BOND SHOULD BE REQUIRED.

The amount of security required under Rule 65(c) lies within the Court's discretion, and courts routinely waive the bond requirement where constitutional rights are implicated or there is no evidence that the enjoined party will suffer compensable damages.[9] Because Plaintiffs assert constitutional claims, because *they* are being irreparably financially damaged by the imposition of the SORs, and because there is no basis to conclude that enjoining the SORs would cause the government compensable damages, no bond should be required.

### CONCLUSION

Plaintiffs respectfully request that the Court enter a preliminary injunction either prohibiting Defendants from enforcing or applying the SORs against Plaintiffs in any PPP-related OHA appeals

---

[9] *See, e.g.*, Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (affirming no bond required where plaintiffs alleged constitutional violations); Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 (9th Cir. 2003) ("[T]he bond amount may be zero if there is no evidence the party will suffer damages from the injunction."); Gilmore v. Wells Fargo Bank N.A., No. C 14-2389 CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014) (noting the Court can waive the bond if "the requirement of a bond would negatively impact the movant's constitutional rights").

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

while this action is pending, or relieving Plaintiffs from having to proceed in the OHA as a predicate for them litigating their other challenges in this Court; and to grant such other and further relief as the Court deems just and proper. Finally, no bond should be required.

Dated: March 19, 2026                          Respectfully Submitted,

                                               SHAFER & ASSOCIATES, P.C.


                                               /s/ Bradley J. Shafer
                                               Bradley J. Shafer (MI P36604)*
                                               Zachary M. Youngsma (MI P84148)*
                                               SHAFER & ASSOCIATES, P.C.
                                               3800 Capital City Blvd., Ste. 2
                                               Lansing, Michigan 48906
                                               T: 517-886-6560
                                               F: 517-886-6565
                                               E: Brad@BradShaferLaw.com
                                               E: Zack@BradShaferLaw.com


                                               LONG & LEVIT LLP


                                               DOUGLAS J. MELTON, Bar No. 161353
                                               SHANE M. CAHILL, Bar No. 227972
                                               LONG & LEVIT LLP
                                               465 California Street, Suite 500
                                               San Francisco, California 94104
                                               Telephone:    (415) 397-2222
                                               Facsimile:    (415) 397-6392
                                               Email: dmelton@longlevit.com
                                                      scahill@longlevit.com

                                               *Admitted Pro Hac Vice

                                               Attorneys for All Plaintiffs

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**CERTIFICATE OF SERVICE**

I certify that on March 19, 2026, I electronically filed the foregoing document, along with any accompanying declarations and exhibits, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ *Zachary M. Youngsma*
Zachary M. Youngsma (MI P84148)
**SHAFER & ASSOCIATES, P.C.**

PLAINTIFFS' FIRST NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF