DOUGLAS J. MELTON, Bar No. 161353
SHANE M. CAHILL, Bar No. 227972
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        dmelton@longlevit.com
              scahill@longlevit.com

BRADLEY J. SHAFER (MI P36604)*
ZACHARY M. YOUNGSMA (MI P84148)*
SHAFER & ASSOCIATES, P.C.
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
Telephone:    (517) 886-6560
Facsimile:    (517) 886-6565
Email:        Brad@BradShaferLaw.com
              Zack@BradShaferLaw.com

*Admitted Pro Hac Vice

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD CLUB - SF, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., <br><br> Defendants. | Case No.: 3:24-cv-04241-LJC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]** <br><br> Date: May 12, 2026 <br> Time: 10:30 a.m. <br> Place: San Francisco Courthouse, Courtroom G <br><br> Hon. Lisa J. Cisneros |

**INTRODUCTION**[1]

Faced with defending the indefensible, in their opposition, [Doc. 53 ("Opp.")], Defendants: a) simply recast a number of Plaintiffs' critical claims to forms never argued; b) present facially indefensible arguments that collapse under cursory scrutiny; c) actually *confirm* Plaintiffs' claims of suffering irreparable harm; and d) repeatedly attempt to defend the SORs by invoking the doctrine of *noblesse oblige* (just trust the OHA in its discretion to do the right thing)—a retort that has been soundly rejected by the Supreme Court. Most importantly, however, Defendants do not even attempt to address the virtual elephant in the room; that being that if Plaintiffs can't obtain discovery on their constitutional claims in the OHA, and can't obtain discovery in a "judicial review" proceeding in court, the Plaintiffs have no ability whatsoever (let alone the constitutionally requisite "meaningful opportunity") to challenge the basis or bases for adverse decisions.

Plaintiffs' motion should be granted.

**ARGUMENT**

**I.    DEFENDANTS DO NOT ANSWER THE CONSTITUTIONAL QUESTION.**

Due process requires balancing (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976) Defendants do not dispute the first factor nor meaningfully engage the second. Instead, they defend discrete features of the SORs and invoke efficiency as justification for these special and unique rules. [*E.g.*, Opp. at 10-13; 18:7-19:6; Doc. 53-2 ("Benderson Decl.") at ¶¶ 7-10, 15-16]. The governing question, however, is whether the procedures, taken together, provide a meaningful opportunity to avoid erroneous deprivation. They do not and the defects are structural. They give SBA control over the evidentiary record that defines both the administrative decision and any judicial review. Because judicial review is generally confined to that same record, the SORs do not merely affect process within OHA; they determine the scope of Article III review as well.

---

[1] This Reply adopts the abbreviations and defined terms set forth in Plaintiffs' Motion for Preliminary Injunction, [Doc. 50 ("Mot.")]. All citations to the record are to the CM/ECF stamped page number.

**A. Defendants apply the wrong analytical lens.**

Due process does not evaluate procedural features in isolation. It evaluates "the procedures used"—plural—and asks whether they operate together to provide a meaningful opportunity to be heard. Mathews, 424 U.S. at 335. Defendants do the opposite. They isolate particular features of the SORs (no discovery, no hearing, no reply as of right, brief your position before record creation, agency control of the record, etc.) and then attempt to defend each separately; then summarily concluding that no due process violations exist. [Opp. at 14:20 ("None of those aspects [of the SORs]" denies due process.)]. They also gesture at a system-level defense through abstract assertions about administrative burden, program scale, and that the process allows "participation." [Opp. at 18-19, 20, 24; Benderson Decl. at ¶ 16-17]. But they do not actually analyze how the procedures, operating together, affect the risk of erroneous deprivation.

Defendants' own submissions confirm why that omission is fatal. The SORs were not designed to maximize accuracy of decision. They were designed to manage volume. [Benderson Decl. at ¶¶ 7-10, 15-16; Opp. at 10-13]. That reflects a deliberate tradeoff: the agency adopted procedures that constrain record development, eliminate discovery and hearings, and compress the borrower's opportunity to respond to a stacked deck administrative appellate process. Due process does not forbid administrative efficiency, but it does not permit procedures that predictably increase the risk of erroneous deprivation in order to achieve it. *See* fn. 4, *infra*. Where, as here, the challenged procedures are the product of that tradeoff, the government's asserted interest does not justify them; it underscores the constitutional problem.

Plaintiffs must proceed through this process, incurring unrecoverable costs and unable to address the very issues they rely on in response to the SBA's various actions against them. Defendants' component-by-component defense does not respond to that undeniable reality.

**B. Under the governing framework, Defendants' position fails.**

Defendants' position fails under the governing three-factor Mathews analysis.

  *i. The SORs create an unacceptable risk of erroneous deprivation.*

Mathews asks whether the procedures used adequately mitigate "the risk of erroneous

deprivation[.]" 424 U.S. at 335. That inquiry is outcome oriented: whether the system reliably produces decisions based on "verified facts" and "accurate knowledge," Morrissey v. Brewer, 408 U.S. 471, 484 (1972); *see also* 13 C.F.R. 134.1210 (OHA's standard of review), not on whether a specific component can be defended in isolation.

The SORs' system operates in a sequence that precludes meaningful error detection and correction. The SBA produces the AR only after the borrower has filed its appeal,[2] with no *right* of reply to SBA's opposition, forcing the borrower to define its challenge without access to the agency's evidentiary basis while the agency controls what is produced, how it is presented, and whether it is supplemented. The SBA may then respond and supplement the record in ways the borrower cannot anticipate or test,[3] and no reply is guaranteed as of right. The result is a one-sided process in which the agency controls both the record and the borrower's ability to respond.

This is not a heightened risk of error; it is a structural constraint on accuracy. The agency defines the record after the borrower has committed arguments; may supplement it without meaningful adversarial testing; and limits any reply. Because that same record constrains judicial review, the SORs ensure that both administrative and judicial decisions rest on a curated record without meaningful borrower participation and therefore testing.

The system's operation in practice confirms the defect. An ALJ applying the SORs that Mr. Benderson declares "provide[s] borrowers with a review procedure that satisfie[s] due process requirements," [Benderson Decl. at ¶ 7], recognized that *they do not*, and that the record produced under the SORs fails to permit meaningful factual testing and instead forces borrowers to litigate

---

[2] That AR may contain redactions that borrowers are assured are limited to "privileged, confidential, or prohibited" matters from disclosure under the Privacy Act, [Benderson Decl. at ¶ 21], but which are in practice not subject to in camera review for verification. [*E.g.* C. at ¶¶ 98, 150, 152-53, 428-29 (describing redactions in various Plaintiffs' ARs); Ex. F to FAC, Doc. 18-1 at PgID.72-74 (Gold Club objecting to the redactions in its AR); Ex. E to FAC, Doc. 18-1 at PgID.57, 59 (redactions in Gold Club's AR); Ex. L, Doc. 18-1 at PgID.1854-55, 1860-61 (redactions in Plaintiff Meacham's AR (SBA later produced a version with only *some* redactions removed, *see* JSR, Doc. 18-1 at PgID.1924]))].

[3] [Ex. R to FAC, Doc. 18-1 at PgID.1929-30 (ALJ noting that SBA relied on materials "not found in the administrative record" and that "that no one has a way of knowing what the affiant reviewed prior to" issuance of the FLRD)].

without access to the evidence on which the agency relied. In granting Meacham's appeal, the ALJ explained:

> While SBA regulations required me to deny Appellant's motion for discovery, *I think that Appellant is correct*, on some level, *that due process requires* that "the administrative record here must contain the materials and information . . . necessary for proper judicial review and adjudication of its constitutional and factual claims." (Mot'n for Discovery at 3). This administrative record lacks factual information pertaining to the borrower. *I do not think it is reasonable to force Appellant to speculate as to what factual data SBA reviewed or to create arguments against a strawman*.

[Ex. R to FAC, Doc. 18-1 at PgID.1929 (emphasis added)]. That is precisely the risk the SORs create: borrowers must challenge agency action on an ever-moving and often redacted record without access to the underlying factual basis, and without any meaningful mechanism to test it.

The absence of meaningful testing is dispositive. Due process requires not simply an opportunity to submit materials or appeal to the administrative judge's discretion, [Opp. at 19:12-20], but a meaningful opportunity to confront and rebut the evidence on which the government relies. *See* Goldberg v. Kelly, 397 U.S. 254, 269-70 (1970); Greene v. McElroy, 360 U.S. 474, 496-97 (1959). The SORs do not provide that. Submission is not participation where the borrower lacks access to the full record at a *meaningful time*, cannot obtain agency-held materials, and cannot definitively respond to the agency's evidence or supplementation.

Defendants' reliance on "participation" underscores the defect. They seek to justify the SORs in part on the expectation that "many borrowers would be filing without the assistance of an attorney." [Benderson Decl., at ¶ 7]. But that premise heightens, not excuses, the need for procedures that provide a meaningful opportunity to be heard. The High Court has rejected reliance on written participation alone where parties may "lack the educational attainment necessary to write effectively and cannot obtain professional assistance," explaining that it is "not enough" to permit a claimant to proceed "in writing," because "written submissions do not afford the flexibility of oral presentations" and "do not permit the [party] to mold [its] argument to the issues the decision maker appears to regard as important." Goldberg, 397 U.S. at 269. That principle applies here. The SORs confine borrowers, many of whom SBA anticipated would proceed without counsel, to a single submission paper process without any mechanism to obtain or test agency-held evidence. Such constraints do

not facilitate participation; they render it illusory.

And Defendants' suggestion that borrowers "should be familiar" with the record is fundamentally flawed. [Opp. at 20:8-12]. Familiarity with one's *own* submissions is not knowledge of the agency's evidentiary basis, including, for example, its interpretation of the pivotal phrase "prurient sexual nature" or internal NAICS guidelines. [Mot. at 9:11-13, pp. 6-8]. And, certainly, no borrower will be familiar with materials the government added to the record and therefore relied on, but later redacted. The relevant record is not what Plaintiffs submitted; it is what the agency relied on. Borrowers lack access to the agency's full evidentiary basis, including internal criteria, redacted materials, and extra-record inputs, and have no mechanism to obtain them to challenge and SBA decision. Familiarity with one's own minimal submissions is no substitute for confronting the government's often voluminous record. [Y.Decl., Doc. 50-2, at ¶ 12 (Jamme's AR is 16,446 pages)].

Taken together, the SORs do not merely omit individual safeguards; they fail to provide a reliable mechanism for meaningful testing. Because the system restricts both access to the record and the ability to challenge it in a meaningful way, it does not reduce the risk of error; it entrenches it. That failure is dispositive under Mathews.

   ii. *Defendants' justifications do not satisfy* Mathews.

Administrative efficiency is relevant under Mathews, but it does not permit procedures that materially *increase* the risk of erroneous deprivation, particularly where additional safeguards would materially *reduce* that risk. The same is true of cost: administrative burden, whether framed as speed, efficiency, or financial expense, cannot justify the absence of basic procedural safeguards. As the Supreme Court has made clear, "[f]inanical cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision," Mathews, 424 U.S. at 348, and "'[t]he Constitution recognizes higher values than speed and efficiency.'" Fuentes v. Shevin, 407 U.S. 67, 92 n.22 (1972) (quoting Stanley v. Illinois, 405

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]

U.S. 645, 656 (1972)).[4] Administrative convenience, standing alone, cannot substitute for constitutionally adequate procedure.

Defendants invoke scale, volume, and resource constraints. [Opp. at 10-13; Benderson Decl. at ¶¶ 7-10, 15]. But they do so at a high level of abstraction and do not explain why the elimination of basic procedural safeguards is necessary to manage those constraints, especially when the SBA anticipated the volume that this temporary program would bring and staffed up accordingly. [Benderson Decl. at ¶¶ 8, 11-13]. Nor do they identify any feature-specific necessity for requiring the filing of an appeal brief before seeing the evidentiary basis for the government's decision, the categorical absence of discovery, lack of reply as of right, the SBA's unilateral control over the record, or the lack of hearing.

That is a failure of fit. Mathews does not permit eliminating safeguards based on generalized assertions of burden. It requires a showing that the procedures adopted are justified in light of the risk of error and that less restrictive alternatives are inadequate. Defendants make no such showing. That omission is particularly significant given that modest protections (permitting discovery, requiring the filing of an appeal brief *after* having the opportunity to review the government's "case," access to the full AR, a meaningful opportunity to respond to supplementation and the SBA's opposition, mechanisms to obtain agency-held evidence, etc.) would directly address the system's core defects. Defendants' own regulatory framework confirms that these modest protections are neither novel nor administratively unworkable. In other OHA proceedings, the agency employs at least some of these protections, *see, e.g.*, 13 C.F.R. §§ 134.213-14, 134.223 (ability to compel production of evidence and issue subpoenas), *including* in subparts related to "specific subtypes of OHA proceedings," [Opp. at fn. 3], such as discovery mechanisms, 13 C.F.R. § 134.407 (subpart D);

---

[4] *Accord, e.g.*, Rigoberto S. J. v. Bondi, No. 26-CV-957, 2026 WL 490104, at *3 (D. Minn. Feb. 20, 2026) (cleaned up) ("Administrative burden has never been a reason to sacrifice the constitutional and statutory rights of individuals[.]"); Urquilla-Ramos v. Trump, No. 2:26-cv-00066, 2026 WL 475069, *17 (S.D. W. Va. Feb. 19, 2026) ("The Constitution does not yield to efficiency."); Suri v. Trump, No. 25-1560, 2025 WL 1806692, *10 n. 1 (4th Cir. July 1, 2025) ("The Constitution does not yield to administrative convenience[.]"); Lavan v. City of Los Angeles, 797 F.Supp.2d 1005, 1018 (C.D. Cal. 2011) ("[O]ften efficiency must take a backseat to constitutionally protected interests[.]").

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]

oral hearings with witness testimony and evidentiary development, 13 C.F.R. § 134.912 (subpart I) and § 134.1009 (subpart J); and EAJA applicability, 13 C.F.R. §§ 134.603, 134.102(j)(1), and 13 C.F.R. § 134.401(a) (subpart D). Their absence here is a design choice, not administrative necessity for a temporary program. Defendants do not contend that such safeguards would be ineffective or explain why they are provided in other appeals; they simply omit them here.

The temporary nature of the program underscores this failure of fit. The PPP was a finite, pandemic-era program, and the administrative burden Defendants invoke was therefore both foreseeable and bounded from the outset. Yet Defendants do not explain why a time-limited program required procedures that categorically foreclose basic safeguards, rather than accommodate more robust procedures in a targeted manner. SBA also controls the timing of the FLRD—the event triggering an OHA appeal—and may, apparently, undertake such review "at any time in SBA's discretion." [Benderson Decl. at ¶ 24]. The volume and timing of appeals thus reflect, at least in part, the agency's chosen implementation rather than an unavoidable external constraint. Against that backdrop, Defendants' reliance on administrative burden, without tying that burden to the necessity of eliminating specific safeguards, does not justify a system that categorically forecloses meaningful procedural protections.

Defendants also argue that because the SORs give OHA judges some discretion to permit a reply brief, [Opp. at 19:12-16], or grant extensions of time, [id. at 9:7-12-14; 20:13-16], this alchemically makes the SORs constitutionally compliant. It does not. A process is not "meaningful" simply because it affords a potential opportunity to speak; it must provide a meaningful opportunity to test the evidence on which the government relies. Goldberg, 397 U.S. at 269-70; Greene, 360 U.S. at 496-97. Due process does not turn on the possibility that an adjudicator may permit procedures that edge towards proper process *as a matter of discretion.* "[T]he right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Arnett v. Kennedy, 416 U.S. 134, 167 (1974) (Powell, J. concurring in part). As stated somewhat differently, constitutional protections do not depend on the government's assurance that it will exercise its discretion responsibly: the Constitution "does not

leave us at the mercy of noblesse oblige." <u>United States v. Stevens</u>, 559 U.S. 460, 480 (2010). Accordingly, Defendants' reliance on *some* discretionary practices does not cure the SORs' structural defects; it confirms them.

Nor can Defendants justify forcing Plaintiffs through this process on exhaustion grounds. The OHA cannot adjudicate Plaintiffs' constitutional claims, [Opp. at 16:11-22], yet the SORs both gatekeep access to Article III review and shape the record on which that review must proceed. A process that cannot resolve the core claims presented by these Plaintiffs, but constrains the record for later judicial review to only the government's side of the case, is not merely futile; it is affirmatively prejudicial. And here, the question must be asked. When the process does not permit the "appellant" to create a record tailored to *its* arguments (regardless of whether they ultimately have merit or not), just what is exhaustion supposed to accomplish?

    *iii. Defendants do not dispute the protected interests.*

Defendants' opposition is void of any dispute as to <u>Mathews</u>' first factor. The "Court may consider any arguments unaddressed by the non-moving party as waived." <u>Hartranft v. Encore Cap. Grp., Inc.</u>, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021); <u>Cobarrubia v. Edwards</u>, No. 4:19-CV-07899-KAW, 2021 WL 4846948, at *2 (N.D. Cal. June 4, 2021) (noting "the court need not consider arguments made for the first time at hearing" either). Thus, the battleground here is the other two factors discussed, *supra*. The SORs simply do not conform to constitutional due process dictates and must therefore be enjoined.

    **C. Several of Defendants' arguments do not address Plaintiffs' actual claims.**

Defendants' opposition rests in part on mischaracterizing Plaintiffs' arguments. For example, Defendants cite to Plaintiffs' statement of facts to assert that Plaintiffs claim the SORs "deny them due process facially because" they require borrowers to first appeal to the OHA. [Opp. at 14:24-25]. That is not Plaintiffs' argument. Plaintiffs challenge the requirement that constitutional claims be funneled through an administrative process that cannot adjudicate those claims, does not permit discovery in regard to them, and improperly and one-sidedly shapes the AR that will generally govern Article III review. [Mot. at 14:19-26; <u>Id</u>. at 2:13-16 (noting the alternative remedy Plaintiffs seek is

to avoid that for their constitutional claims)]. Defendants respond to a phantom argument.

Defendants do the same thing in their footnote 8. There, they assert that Plaintiffs "contend that 13 C.F.R. § 134.211(c) . . . requires OHA judges to permit borrowers to file responses to motions" citing the Motion at p. 21. But Plaintiffs' point was not to litigate the scope of § 134.211(c) in the abstract. Rather, as Plaintiffs' pointed out in vivid record detail, that *in actual practice* the OHA *repeatedly* ruled *against* the Plaintiffs on motions where they were NOT permitted to respond (sometimes within minutes of the filing of an SBA motion), in clear violation of 13 C.F.R. § 134.211(c); thereby creating a probability of unfairness and signaling predetermined outcomes. [Mot. at 20:9-13]. Defendants recast the argument and then refute a position of their own making. But the more bizarre part of Defendants' fn. 8 is its "superseding" reliance argument on 13 C.F.R. § 134.1208(e), which, as its titles states, governs the "Response to an *appeal petition*" (emphasis added); not responses to *motions* not 134.211(c). That argument is simply inexplicable, and Defendants' own position concedes that a borrower has no right to respond to SBA's motions; only the possibility of permission.

Again, Defendants simply do not engage with how the SORs operate as a system. Instead, they misstate Plaintiffs' claims and dismantle strawmen. That approach does not answer the governing Mathews inquiry.

## II.    DEFENDANTS' FACTUAL PREDICATE CANNOT BE CREDITED.

Defendants' opposition rests on the theory that, in practice, the SOR framework operates in a manner that affords borrowers meaningful participation and fair consideration. That premise is not grounded in the SORs, nor in the *actual experience* of these Plaintiffs, but only in Mr. Benderson's self-serving declaration. And the problem is not that the declaration is thin or opinionated; it is that it substitutes generalized, discretionary descriptions of what the agency says it "typically" or "frequently" allows for evidence for what the system fails to guaranty or produces in practice. At this stage, Defendants must support their assertion that the challenged procedures, as implemented, satisfy constitutional requirements with facts; not generalized platitudes of what the agency may allow or intend. Courts routinely reject such unsupported and conclusory declarations: "'conclusory

and self-serving'" declarations are "weak evidence when considering a preliminary injunction." HydroFLOW USA, LLC v. ECO Integrated Techs., Inc., No. 2:23-CV-01317-TL, 2024 WL 988951, at *1 n.1 (W.D. Wash. Mar. 7, 2024) (quoting Kiva Health Brands LLC v. Kiva Brands Inc., 402 F. Supp. 3d 877, 896 (N.D. Cal. 2019)).

Mr. Benderson's declaration is, at bottom, conclusory. It offers no data (save for the data relating to the size and scope of the PPP, which confirms that it is more akin to a broad benefits program like Medicaid, as opposed to a narrow subsidy program like the National Endowment for the Arts, [see ECF 32 at 40:10-19], as well as data related to hiring), no identified actual cases, and no criteria governing when asserted practices apply or not. Assertions that applicants are "permitted" to do certain things or that the agency "considers" certain materials do not establish that such opportunities are consistently afforded, are meaningfully available, or are capable of affecting the outcome (with Plaintiffs actual experience—and we mean evidence—being quite to the contrary). Nor do they address the controlling question: whether those opportunities exist as a matter of right rather than agency grace. [Benderson Decl., at ¶¶ 17-18, 21-24 (noting repeated use of discretionary language such as "may" withdraw an FLRD or may work with a borrower, a borrower "can" seek leave to file a reply or supplemental pleading or a motion, SBA "occasionally" redacts or supplements the AR, etc.)] The regulations define the process; a declaration describing discretionary deviations from that process does not establish that such protections exist as a matter of right or are consistently applied. A system cannot be defended by reference to what the agency may allow in some cases; it must be assessed based on what it requires and guarantees in all cases of the same ilk.

Finally, as Plaintiffs' Verified Complaint explains, in previous litigation Mr. Benderson executed a declaration that stated: "SBA has never interpreted 13 C.F.R. § 120.110(p)'s 'prurient sexual nature' standard as equivalent to prurience as that term is defined for purposes of the obscenity test under Miller v. California, 413 U.S. 15 (1973)." [C. at ¶¶ 496-97, 505; Doc. 18-3 at PgID.34, ¶ 10]. As the Complaint demonstrates, however, from the earliest SOP available on SBA's website, SOP 50 10 (5) effective August 1, 2008, the SBA has tied the concept of prurience to the Miller test. [C. at ¶¶ 513-520]. Using that SOP as an example, it directs that when applying 13 C.F.R. § 120.110(p),

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]

"[t]he lender must consider whether the *nature and extent* of the sexual component causes it, in view of *community standards*, to be prurient." [Doc. 18-3 at PgID.151 (emphasis added)]. The phrases "community standards," "nature," and "extent" (which applies the "taken as a whole" concept"), are lifted *straight* from the prurient interest and patent offensiveness prongs of the <u>Miller</u> test. [C. at ¶¶ 468, 514-15; *see also* Mot. at 11:4-9]. Simply put, Mr. Benderson was less than candid with that other federal court.[5]

That inconsistency is not academic; it underscores that Defendants' factual premise rests on the assertions of a declarant whose prior statements regarding SBA policy have not tracked the agency's own governing materials. The Court is not required to accept such assertions. "A credibility determination is well within the court's province when ruling on a preliminary injunction motion." <u>Fonseca v. Kaiser Permanente Med. Ctr. Roseville</u>, 222 F. Supp. 3d 850, 866 (E.D. Cal. 2016). And while declarations are often accepted as true absent contrary evidence, the presumption does not hold where the record demonstrates material inconsistency or unreliability. *See* <u>DeBell Windows Sys., Inc. v. Dabella Exteriors, LLC</u>, No. 320CV00420MMDWGC, 2020 WL 5632958, at *6 n.5 (D. Nev. Sept. 21, 2020). Where a declarant's account conflicts with the agency's own materials, and the detailed and voluminous factual record here, the Court should discount it.

Because Defendants' factual premise rests on discretionary, unsupported, and conclusory assertions drawn from a declarant that does not reliably track the governing procedures or the agency's own representations or actions, and who has been shown to have submitted testimony contradicted by the agency's own materials in the past, Mr. Benderson's declaration cannot support their contention that the SORs provide constitutional due process. The Court therefore should not credit Defendants' description of how the SORs operate in practice, and their opposition fails on its own factual basis.

---

[5] Accordingly, in order to complete the record before decision of this motion. Plaintiffs seek the ability to depose Mr. Benderson on the matters contain in his instant declaration and his credibility, and anticipate submitting a motion to compel the same in short order.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]

**III.    PLAINTIFFS FACE IMMEDIATE AND IRREPARABLE HARM, AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR.**

Defendants do not meaningfully rebut Plaintiffs' claims of being irreparable harmed. Instead, they circularly argue that no harm exists because the SOR's individual features are lawful. [Opp. at 26-28]. The question, however, is whether Plaintiffs face ongoing, irreparable injury. They do.

For example, Jamme is presently being forced to proceed under the SORs, expending significant and unrecoverable (per the SORs) resources in professional fees. Multiple Plaintiffs face imminent repayment exposure and threats of civil and criminal enforcement against themselves and their lending banks. [Mot. at 6, 22-23]. That risk is not speculative or limited just to Jamme, Gold Club, or SAW. [*See* Exs. A and B to Y.Decl. at ¶¶ 3-4].

In fact, SBA's own arguments confirm that enforcement risk is embedded in these proceedings. It has asserted that redacted "hold codes" in the ARs reflect "part of SBA's support for *law enforcement activities*"; that they "pertain to indicators for *law enforcement activity*"; and that they are withheld because disclosure "*would alert borrowers who may then seek to prevent the agency from taking enforcement or collection action.*" [Ex. N to FAC, Doc. 18-1 at PgID.1872 (emphasis added); Ex. L, Doc. 18-1 at PgID.1854-55, 1860-61 (hold code redactions in Meacham's AR); Ex. E to FAC, Doc. 18-1 at PgID.57, 59 (hold code redactions in Gold Club's AR); *see also* Ex. P to FAC, Doc. 18-1 at PgID.1918 (ALJ noting SBA "asserted a law enforcement privilege as to the hold codes redacted in this record")]. By SBA's own account, then, Plaintiffs' cases are being adjudicated using undisclosed, enforcement-linked criteria under circumstances where disclosure would interfere with anticipated or ongoing enforcement, collection, and/or law enforcement activity that has, apparently, been ongoing since at least Dec. 20, 2022. [Ex. E to FAC, Doc. 18-1 at PgID.57 (noting the redacted "HC" from the 3:18 p.m. entry)]. Consequently, not only are Plaintiffs' concerns of both civil and criminal enforcement actions undeniably valid, but Plaintiffs are also required to defend against adverse determinations, at least in part, on the basis of criteria they cannot see, access, or test. They have no reliable mechanism to obtain those materials, nor right to rebut them, and no way to determine why they are being applied. That is not simply a limitation on procedure; it is a coercive

condition in which enforcement-linked considerations are being applied without disclosure or adversarial challenge.

Plaintiffs also face business ruination if forced to repay the loans and the consequent cessation of being able to engage in constitutionally protected entertainment. [Mot. at 7, 22-23]. Those concerns are immediate and coercive; they are not speculative; and they exist *now*. And because the SORs restrict Plaintiffs' ability to obtain evidence, respond to the record, develop facts, or meaningfully challenge the decisions of the SBA, the ongoing harm here is not merely financial.

There is no adequate remedy; certainly Defendants identify none. They identify no guaranteed mechanism by which repaid funds or professional fees expended under an invalid process can be restored or by which the business consequences of imposing massive retroactive debt years after disbursement could be undone. Their "ill-gotten gains" argument, [Opp. at 27:3-8], puts the cart before the horse by *assuming* Plaintiffs' claims lack any merit whatsoever (and we mean their constitutional claims that cannot be resolved in the OHA), and ignores the injuries being suffered here: deprivation through constitutionally deficient procedures as well as threats of business ruination, criminal exposure, and loss of First Amendment freedoms. The threat of being driven out of business alone constitutes irreparable harm, [Mot. at 22:24-27], as does the loss of First Amendment freedoms, [id. at 23:5-15],—which Defendants do not address—and so do threats of criminal prosecution. [Id. at 23:18-24:3].

The harm is also structural. Plaintiffs, and every other PPP borrower forced to appeal to the OHA, are required to proceed through a system that is devoid of the most basic tenets of due process.

The balance of hardships thus tips sharply toward Plaintiffs; they face immediate and unrecoverable injury as described above and in the Motion. [Mot. at 6, 21-24]. Those harms are permanent. Defendants have identified no mechanism by which Plaintiffs will be able to obtain the discovery they need in order to be able to successfully mount their constitutional challenges to the PSNR, the Affiliation Rules, and the Affiliation Exception Provisions. Moreover, forced repayment, business collapse, and loss of constitutional rights cannot be undone. Defendants, by contrast, identify only administrative burden and an interest in uniform enforcement. Yet, even accepting

Defendants' premise that claims must be processed at scale, administrative efficiency does not permit the government to adopt procedures that materially increase the risk of erroneous deprivation. And Mr. Benderson's recitation of the staff added to meet these increased administrative burdens undercuts any such arguments.

In any event, Defendants' own conduct undermines the argued premise: SBA took more than three years to issue Jamme's FLRD after its forgiveness application,[6] demonstrating that the challenged procedures are not driven by any need for any contemporaneous, high-speed adjudication. Defendants' reliance on "uniform enforcement" does not alter that conclusion. An injunction here would not prevent enforcement of the loan forgiveness aspect of the PPP; it would simply require that enforcement proceed through *constitutional* procedures. In addition, uniformity in administering a deficient process does not mitigate the constitutional problem; rather it extends it across all OHA appeals. "[T]he public interest and the balance of equities favor 'preventing the violation of a party's constitutional rights.'" Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting Melendres v. Arpaio, 695 F3d 990, 1002 (9th Cir. 2012)).

At minimum, Plaintiffs satisfy the Ninth Circuit's serious-questions standard. Plaintiffs raise substantial questions going to the validity of the SORs. *See*, *supra*, Sec's. I & II. Coupled with the balance of hardships that tips sharply in their favor, Plaintiffs' showing independently warrants relief. Pacito v. Trump, 169 F.4th 895, 919 (9th Cir. 2026).

<b><u>CONCLUSION</u></b>

At bottom, this case turns on a straightforward point. Due process requires procedures that, taken together, provide an opportunity to be heard in a meaningful way, including procedures to avoid erroneous deprivation. The SORs do not provide that. They require borrowers to challenge agency decisions blindfolded, on a record curated by the agency, without access to the evidence that matters, and without a meaningful way to challenge it. Defendants simply do not confront that system-level failure.

---

[6] [C. at ¶ 298 ("On or about May 23, 2022," Jamme submitted its forgiveness application); Y.Decl. Doc. 50-2 at ¶ 5 and PgID.11-12 (Jamme's first FLRD)].

For the reasons stated herein and in the Plaintiff's Motion, [Doc. 50], the Court should grant the requested relief.

Dated: April 27, 2026                               Respectfully Submitted,

                                                    **SHAFER & ASSOCIATES, P.C.**


                                                    */s/ Bradley J. Shafer*
                                                    Bradley J. Shafer (MI P36604)*
                                                    Zachary M. Youngsma (MI P84148)*
                                                    **SHAFER & ASSOCIATES, P.C.**
                                                    3800 Capital City Blvd., Ste. 2
                                                    Lansing, Michigan 48906
                                                    T: 517-886-6560
                                                    F: 517-886-6565
                                                    E: Brad@BradShaferLaw.com
                                                    E: Zack@BradShaferLaw.com


                                                    **LONG & LEVIT LLP**


                                                    DOUGLAS J. MELTON, Bar No. 161353
                                                    SHANE M. CAHILL, Bar No. 227972
                                                    LONG & LEVIT LLP
                                                    465 California Street, Suite 500
                                                    San Francisco, California 94104
                                                    Telephone:    (415) 397-2222
                                                    Facsimile:    (415) 397-6392
                                                    Email: dmelton@longlevit.com
                                                           scahill@longlevit.com

                                                    *Admitted Pro Hac Vice*

                                                    *Attorneys for All Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION [Doc. 50]

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 27, 2026, I electronically filed the foregoing document, along with any accompanying declarations and exhibits, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Zachary M. Youngsma
Zachary M. Youngsma (MI P84148)
**SHAFER & ASSOCIATES, P.C.**